BRETT A. SHUMATE
Assistant Attorney General, Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General, Civil Division

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

BILAL A. ESSAYLI
First Assistant U.S. Attorney
Central District of California

ALEXANDER K. HAAS
Director
JACQUELINE COLEMAN SNEAD
Assistant Director

ELISABETH J. NEYLAN
CRISTEN C. HANDLEY
Trial Attorneys
Civil Division
Federal Programs Branch
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of California, in his Official Capacity; ROBERT BONTA, Attorney General of California, in his Official Capacity,<br><br>Defendants. | No. 2:25-cv-10999<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**PRELIMINARY STATEMENT**

1. When President Trump took office, "[o]ur southern border [was] overrun by cartels, criminal gangs, known terrorists, human traffickers, smugglers, unvetted military-age males from foreign adversaries, and illicit narcotics that harm Americans." Proclamation 10,866, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025).

2. Under his leadership—and in response to the electoral mandate—the Federal Government is employing its available legal measures to end that crisis in accordance with its well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding United States Supreme Court precedent. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 394–95 (2012).

3. California Governor Gavin Newsom has vowed to "push[] back"[1] against the President's commitment to enforcing our Nation's immigration laws. His latest resistance—imposing a mask ban and identification requirement on federal agents operating in California— violates the United States Constitution, as even Governor Newsom apparently appreciated when he acknowledged in discussing the mask ban that "[i]t appears we don't have the legal authority for federal agents."[2]

4. Nevertheless, Governor Newsom signed the "No Secret Police Act" (Senate Bill 627) into law on September 20, 2025. The Act, which takes effect on January 1, 2026, criminalizes federal law enforcement officers' wearing masks in the performance of their duties in California. The Act also requires federal law enforcement agencies operating in the State

---

[1] Ashleigh Fields, *Newsom signs legislation banning ICE agents from wearing masks in California*, The Hill (Sep. 20, 2025, 19:37 ET), https://perma.cc/CSY7-6HCA.

[2] Lindsey Holden, *California lawmakers pass bill to ban ICE agents from wearing masks*, Politico (Sep. 11, 2025, 21:15 ET), https://perma.cc/EAL3-ETZR.

to adopt and publicly post a written policy regarding the use of masks by July 1, 2026.

5. The same day, Governor Newsom signed the "No Vigilantes Act" (Senate Bill 805), which requires, as of January 1, 2026, that non-uniformed federal law enforcement officers in California visibly display identification that includes their agency and either a name or badge number, or both, when performing their enforcement duties. Like the No Secret Police Act, the No Vigilantes Act imposes criminal penalties on federal officers for noncompliance. It further requires federal law enforcement agencies operating in California to maintain and publicly post a written policy on the visible identification of sworn personnel by January 1, 2026.

6. Both laws violate long-settled principles of the Supremacy Clause, under which States have no power to "in any manner control[] the operations of" the Federal Government. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819); *see also Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state.").

7. The intergovernmental immunity doctrine is an outgrowth of this principle, and a state law violates intergovernmental immunity if it "regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *See North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion).

8. The No Secret Police Act and No Vigilantes Act directly regulate the Federal Government by dictating permissible uniforms for federal agents and forcing federal agencies to adopt specified policies. But the Federal Government, not California, has authority to control its own agents and activities. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the Department of Justice in the Attorney General); 8 U.S.C. § 1103(a)(2) (giving the Secretary of Homeland Security the power to "control,

1 direct[], and supervis[e]" all DHS employees).[3]

9. The No Secret Police Act also discriminates against the Federal Government by applying its requirements to federal law enforcement officers but not California State officers. *See United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) ("A state or local law discriminates against the Federal Government if 'it treats someone else better than it treats' the government." (quoting *North Dakota*, 495 U.S. at 438)).

10. Moreover, if enforced against the Federal Government, the laws would recklessly endanger the lives of federal agents and their family members and compromise the operational effectiveness of federal law enforcement activities.

11. Accordingly, the Federal Government does not intend to comply with the challenged laws.

12. Law enforcement officers thus face a real threat of criminal liability from state officials who have made clear their intent to target federal officers and disrupt federal law enforcement activities, including federal immigration enforcement.

13. The United States therefore brings this declaratory and injunctive action to enjoin Defendants from enforcing the unconstitutional No Secret Police Act and the No Vigilantes Act against the Federal Government.

## JURISDICTION AND VENUE

14. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

15. Because the Federal Government does not intend to comply with the challenged laws and because California officials have expressed their intent to target federal officials and subject them to criminal liability for any noncompliance, the United States has standing to bring this lawsuit in accordance with the pre-enforcement standing principles articulated by the Ninth Circuit in *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). *See also Susan B. Anthony List v. Driehaus*, 573

---

[3] *See also* 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees).

Complaint of the United States                               - 3 -

1  U.S. 149, 161–64 (2014).

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' acts or omissions giving rise to this Complaint concern and impact federal law enforcement activities in this District, and throughout the State of California.

17. The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

18. Plaintiff, the United States of America, enforces federal laws through its Executive agencies, including the Department of Justice and its component agencies—the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA)—as well as the Department of Homeland Security (DHS) and its component agencies—U.S. Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP).

19. Defendant State of California is a state of the United States.

20. Defendant Gavin Newsom is the Governor of California and is being sued in his official capacity.

21. Defendant Robert Bonta is the Attorney General of California and is being sued in his official capacity.

## THE SUPREMACY CLAUSE

22. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "regulat[es] the United States directly or discriminat[es] against the Federal

Government or those with whom it deals," *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted).

**FEDERAL LAW ENFORCEMENT**

23. The President has a constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II § 3.

24. Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

25. Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263.

26. Accordingly, federal law enforcement activities take place within the several States, including California.

27. For example, DHS, through ICE and CBP, is principally responsible for enforcing the nation's immigration laws.

28. Those laws are primarily contained in the Immigration and Nationality Act (INA), and, pursuant to Congress's power to "establish a uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona*, 567 U.S. at 395.

29. The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231.

30. As another example, the DEA enforces the nation's controlled substances laws. *See generally* The Controlled Substances Act (CSA), codified as amended at 21 U.S.C. §§ 801, *et seq*.

31. In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100–0.101.[4]

32. Finally, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. It carries out this mission through numerous operations throughout the country and in partnership with state and local officials. *See id.* § 0.85.[5]

33. The above federal agencies perform a significant portion of their law enforcement activities in the State of California.

## FACTUAL BACKGROUND

34. On a single day, Governor Newsom signed into law two bills that purport to regulate "federal law enforcement agenc[ies]" operating in the State. *See* No Secret Police Act §§ 2(d)(2)(C), 3(e); *see also* No Vigilantes Act §§ 2(c)(2)(C), 10(d)(2). The Acts prohibit officers of those agencies from wearing facial coverings in the performance of their duties, *see* No Secret Police Act § 3, require officers who are not in uniform to visibly display identification, *see* No Vigilantes Act § 10, and direct the agencies to adopt written policies on the use of facial coverings and identification, *see* No Secret Police Act § 2; *see also* No Vigilantes Act § 2. Governor Newsom called both laws a "direct response"[6] to recent immigration enforcement activities in California.

### The No Secret Police Act

35. The No Secret Police Act (Senate Bill 627), which was signed into law on September 20, 2025 and takes effect on January 1, 2026, bans certain law enforcement officers from "wear[ing] a facial covering that conceals or obscures their facial identity in the

---

[4] *See also* DEA Mission Statement, DEA, https://perma.cc/99W4-98GL.
[5] *See also* FBI, About, Mission and Priorities, https://www.fbi.gov/about/mission (last visited Nov. 14, 2025).
[6] Miranda Jeyaretnam, *California Bans ICE Agents From Wearing Masks to Conceal Identity*, TIME (Sep. 22, 2025, 5:00 ET), https://perma.cc/GS9L-EWT8.

performance of their duties," No Secret Police Act § 3, and requires law enforcement agencies operating in California to maintain and publicly post a written policy on the use of facial coverings by July 1, 2026, *id.* § 2.

36. The law broadly defines facial covering to mean "any opaque mask, garment, helmet, headgear, or other item that conceals or obscures the facial identity of an individual" but does not include translucent face shields, N95 or medical masks, head devices necessary for underwater use, motorcycle helmets, or eyewear necessary to protect from retinal weapons. *Id.* § 3.

37. For purposes of the policy requirement, "law enforcement agency" means any entity of a city, county, or other local agency that employs a peace officer[7]; any law enforcement agency of another state; or any federal law enforcement agency. *Id.* § 2(d)(2). This definition does not include any California State agency.

38. The policy must include a purpose statement affirming the agency's commitment to transparency, accountability, and public trust; a restriction on the use of facial coverings to specific, limited circumstances; and the principle that generalized and undifferentiated fear about officer safety shall not be sufficient to justify the use of facial coverings. *Id.* § 2(b)(1).

39. The policy must prohibit sworn personnel from using a facial covering when performing their duties, subject to "narrowly tailored exemptions" to include active undercover operations; tactical operations where protective gear is required for physical safety; applicable law governing occupational health and safety; protection of identity during prosecution; and applicable law governing reasonable accommodations. *Id.* § 2(b)(2)–(3).

40. The mask ban applies to any "law enforcement officer," meaning "a peace officer . . . employed by a city, county, or other local agency" and "any officer or agent of a federal law enforcement agency or any law enforcement agency of another state,"

---

[7] Under California law, peace officers are public servants who enforce the law and have arrest authority. *See* Cal. Penal Code § 830, *et seq.*

|  |  |
|---|---|
|  | including any person acting on behalf of a federal or out-of-state law enforcement agency. *Id.* § 3(e). As with the policy requirement, that definition excludes California State officers. *See id.* |
| 41. | The mask ban's "narrowly tailored exemptions" include the exemptions identified above, *see supra* ¶ 39, as well as active Special Weapons and Tactics (SWAT) team duties. *Id.* § 3(c). |
| 42. | Willful and knowing violations of the mask ban are "punishable as an infraction or a misdemeanor." *Id.* § 3(d). Those criminal penalties do not apply to law enforcement officers whose agency maintains and publicly posts a written policy on the use of face coverings compliant with the Act. *Id.* § 3(f). |
| 43. | Any law enforcement officer who commits an assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution while wearing a facial covering in violation of the Act "shall not be entitled to assert any privilege or immunity for their tortious conduct against a claim of civil liability, and shall be liable to that individual for the greater of actual damages or statutory damages of not less than ten thousand dollars ($10,000), whichever is greater." *Id.* § 3(g). |

**The No Vigilantes Act**

| | |
|---|---|
| 44. | The No Vigilantes Act, which was also signed into law on September 20, 2025, and in relevant part takes effect on January 1, 2026, requires non-uniformed law enforcement officers operating in California to visibly display identification—which must include their agency and either a name or badge number, or both a name and badge number—when performing enforcement duties. No Vigilantes Act § 10. |
| 45. | The Act also requires law enforcement agencies operating in the State to maintain and publicly post a written policy on the visible identification of sworn personnel. *Id.* § 2. |
| 46. | The policy requirement applies to any law enforcement agency, department, or other entity of the state or any political subdivision thereof that employs a peace officer; any law enforcement agency of another state; and any federal law enforcement agency. *Id.* |

§ 2(c)(2).

47. The policy must include a purpose statement affirming the agency's commitment to transparency, accountability, and public trust, *see id.* § 2(a)(1), and "[a] list of narrowly tailored exemptions" that includes undercover officers; officers engaged in plainclothes operations working with specified state agencies or the federal equivalents of those state agencies; officers wearing personal protective equipment (PPE) that prevents display; and exigent circumstances, *id.* § 2(a)(3)(A)–(D). An exemption is also permitted when there is a specific, articulable, and particularized reason to believe identification would pose a significant danger to the physical safety of the officer. *Id.* § 2(a)(3)(E).

48. The identification requirement applies to peace officers under California law and any federal law enforcement officer engaged in enforcement duties, meaning "active and planned operations involving the arrest or detention of an individual, or deployment for crowd control purposes." *Id.* § 10(d)(1)–(2).

49. The identification requirement contains exceptions, including for active undercover operations or investigative activities; plainclothes operations undertaken for certain state agencies and their federal equivalents; operations requiring PPE that prevents display; exigent circumstances; and active SWAT or tactical team duties. *Id.* § 10(b)(1)–(5).

50. A willful and knowing violation of the identification requirement is punishable as a misdemeanor under California law. *Id.* § 10(c). Criminal penalties for not displaying identification do not apply to personnel of an agency that maintains a written policy compliant with the Act. *Id.* § 10(e).

### The United States Will Not Comply with Either Law

51. Federal law enforcement agencies cannot and will not comply with the challenged Acts, which are unconstitutional and recklessly disregard officers' safety and federal operational needs.

52. Now is an extraordinarily dangerous time to serve in federal law enforcement.

53. ICE officers alone "are facing a more than 1000% increase in assaults against them"[8] and "an 8,000% increase in death threats against them."[9] These threats are coming from rioters, illegal aliens, as well as "highly sophisticated gangs like Tren de Aragua and MS-13, criminal rings, murderers, and rapists."[10]

54. The threats to federal officers are serious and potentially deadly. They range from taunting, online doxxing, and stalking, to "vehicles being used as weapons towards" officers[11] and even bounties being "placed on their heads for their murders."[12]

55. For instance, during ICE enforcement actions, individuals can be heard threatening to doxx and find out who officers and their family members are and where they live.

56. There are even public websites that seek and publish personal information about ICE and other federal officers to harass and threaten them and their families.

57. Officers are therefore facing an intensely hostile environment that jeopardizes their safety and that of their families. Indeed, there have been multiple instances where ICE officers have been followed, and their families have been contacted and threatened by individuals who uncovered their personal information.[13]

58. In October, a Halloween display in Houston included "a mock execution ground" with figures depicting ICE agents hanging by their necks "from homemade gallows with zip ties in their pockets" and "surrounded by coffins [and] barbed wire."[14]

---

[8] Press Release, DHS, Despite 1000% Increase in Assaults on ICE Officers, Governor Newsom Signs Unconstitutional Law to Ban Law Enforcement Officer Protections (Sep. 22, 2025), https://perma.cc/K3P9-K4H9 [hereinafter Press Release, 1,000% Increase in Assaults].
[9] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ [hereinafter Press Release, 8000% Increase in Death Threats].
[10] See Press Release, 1,000% Increase in Assaults, supra note 8.
[11] See id.
[12] See Press Release, 8000% Increase in Death Threats, supra note 9.
[13] See id.; see also Press Release, DHS, DHS Condemns Dangerous Doxxing and Escalating Threats Against Federal Law Enforcement Officers (Oct. 9, 2025), https://perma.cc/86TM-H9ZE [hereinafter Press Release, DHS Condemns Dangerous Doxxing].
[14] Press Release, DHS Condemns Dangerous Doxxing, supra note 13.

59. Also in October, an illegal alien was arrested by DHS "after he posted on TikTok in Spanish soliciting the murder of ICE agents."[15]

60. Some doxxing and harassment incidents in California have resulted in federal charges. A man was arrested in September for posting an ICE attorney's personal information online and urging others to harass her.[16] And three women were indicted by a federal grand jury that month for livestreaming their pursuit of an ICE agent to his home and then posting his home address on Instagram.[17]

61. Sadly, the violent rhetoric, doxxing, harassment, and threats have also led to direct violence against federal officers. Earlier this month, shots were fired at CBP agents while conducting immigration enforcement operations in Chicago.[18] And on September 24, a sniper fired indiscriminately at an ICE facility in Dallas, killing several detainees.[19] Bullet casings found at the scene read: "Anti-ICE."[20]

62. The Ninth Circuit in *Newsom v. Trump*, 141 F.4th 1032, 1041 (9th Cir. 2025) found that the violence against federal officers and attempts to impede federal law enforcement were so severe in Los Angeles to justify deploying the National Guard.

63. Given the personal threats and violence that agents face, federal law enforcement agencies allow their officers to choose whether to wear masks to protect their identities and provide an extra layer of security.

64. Denying federal agencies and officers that choice would chill federal law enforcement and deter applicants for law enforcement positions.

65. The challenged laws would also compromise federal agencies' operational effectiveness.

---

[15] *See* Press Release, 8000% Increase in Death Threats, *supra* note 9.
[16] *See* ICE, California man accused of doxxing ICE employee now in custody (Sep. 26, 2025), https://perma.cc/F9YE-EU73.
[17] Associated Press, *Federal prosecutors charge 3 activists with 'doxing' of ICE agent in Los Angeles*, PBS (Sep. 29, 2025 14:15 ET), https://perma.cc/55RN-PP5H; *see also* Press Release, DHS Condemns Dangerous Doxxing, *supra* note 13.
[18] Homeland Security (@DHSgov), X (Nov. 8, 2025, 14:27 ET), https://perma.cc/J35L-MJE3.
[19] *See* Press Release, DHS, DHS Issues Statement on Targeted Attack on Dallas ICE Facility (Sep. 24, 2025), https://www.dhs.gov/news/2025/09/24/dhs-issues-statement-targeted-attack-dallas-ice-facility.
[20] *Id.*

66. If federal agents were forced to comply with the challenged laws, the laws would thwart plainclothes surveillance—the whole point of which is not to reveal officers' identities to mitigate the risk of evasion by targets. The challenged provisions would also enable suspects to identify officers who may be involved in future enforcement actions, including undercover operations. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, masking is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent.

67. Finally, the threat of criminal liability for noncompliance will only further exacerbate the chilling effect of these laws.

68. The threat of prosecution is not merely hypothetical. Federal agencies will not comply with these unconstitutional and dangerous laws. As a result, individual officers face the risk of criminal prosecution by California officials: Representatives Nancy Pelosi and Kevin Mullin released an official statement declaring that "state and local authorities may arrest federal agents if they break California law" and federal officers will not have immunity.[21] And San Francisco District Attorney Brooke Jenkins said she was open to charging federal officers for violations of California law.[22]

69. California presumably would not have expressly included federal law enforcement in the Acts' coverage if the State intended otherwise.

70. Thus, the No Secret Police Act and No Vigilantes Act have the purpose and likely effect of impeding federal law enforcement in the State of California. Indeed, as the politicians that sponsored these laws made clear, undermining federal law enforcement of which they disapprove is the whole point.[23]

---

[21] Press Release, Congresswoman Nancy Pelosi, Pelosi, Mullin Statement on Reports of Planned Federal Immigration Operation in Bay Area (Oct. 22, 2025), https://perma.cc/FJX9-JY24.
[22] Heather Knight and Kellen Browning, *Pelosi Says Police May Arrest Federal Agents Who Violate California Law*, New York Times (Oct. 22, 2025), https://perma.cc/D2L5-3XVK.
[23] *See* Miranda Jeyaretnam, *supra* note 6; Press Release, Scott Wiener Representing Senate District 11, Governor Newsom Signs Senator Wiener's Ban On Extreme Masking By ICE & Other Law Enforcement (Sep. 20, 2025), https://perma.cc/W9LR-ZL84.

# CLAIMS FOR RELIEF

## COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE
### (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

71. Plaintiff hereby incorporates paragraphs 1 through 70 of the Complaint as if fully stated herein.

72. Defendants' enforcement of the challenged provisions of the No Secret Police Act and the No Vigilantes Act constitutes unlawful regulation of the Federal Government.

73. The No Secret Police Act purports to ban federal agents from wearing certain masks while performing their duties in California and subjects those agents to criminal liability for noncompliance.

74. The No Vigilantes Act purports to require non-uniformed federal agents to display visible identification while performing their duties in California, and it, too, carries criminal penalties for noncompliance.

75. The challenged laws also purport to require federal law enforcement agencies to issue a mask policy by July 1, 2026 and a visible identification policy by January 1, 2026.

76. The No Secret Police Act and the No Vigilantes Act therefore purport to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

77. The Federal Government would be harmed if forced to comply with either Act, and also faces harm from the real threat of criminal liability for noncompliance.

78. Accordingly, the challenged laws are invalid under the Supremacy Clause and their application to the Federal Government should be preliminarily and permanently enjoined.

## COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE
### (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

79. Plaintiff hereby incorporates paragraphs 1 through 78 of the Complaint as if fully stated herein.

80. The challenged provisions of the No Secret Police Act unlawfully discriminate against the Federal Government.

81. Those provisions apply to federal law enforcement officers and agencies but not California State officers or agencies.

82. The challenged provisions therefore subject federal officers to unfavorable and uncooperative treatment as compared to their State counterparts in California.

83. The No Secret Police Act thereby constitutes unlawful discrimination against the Federal Government in violation of the intergovernmental immunity doctrine.

84. The Federal Government would be harmed if forced to comply with the Act, and also faces harm from the real threat of criminal liability for noncompliance.

85. Accordingly, the challenged provisions of the No Secret Police Act are invalid under the Supremacy Clause and their application to the Federal Government should be preliminarily and permanently enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring that the challenged provisions of the No Secret Police Act and the No Vigilantes Act violate the Supremacy Clause and are therefore invalid as applied to federal agencies and officers;

2. That this Court issue preliminary and permanent injunctions that prohibit Defendants, as well as their successors, agents, and employees, from enforcing the challenged provisions of the No Secret Police Act and the No Vigilantes Act against federal agencies and officers;

3. That this Court award the United States its costs and fees in this action; and

4. That this Court award any other relief it deems just and proper.

DATED: November 17, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division
Federal Programs Branch

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

BILAL A. ESSAYLI
First Assistant U.S. Attorney
Central District of California

ALEXANDER K. HAAS
Director

JACQUELINE COLEMAN SNEAD
Assistant Director

*/s/   Elisabeth J. Neylan*
ELISABETH J. NEYLAN (N.Y. Bar Reg. No. 6125736)
CRISTEN C. HANDLEY (MO Bar No. 69114)
Trial Attorneys
United States Department of Justice
Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Phone: (202) 616-3519
Email: Elisabeth.J.Neylan@usdoj.gov

*Attorneys for the United States*