UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of California, in his Official Capacity; ROBERT BONTA, Attorney General of California, in his Official Capacity,<br><br>            Defendants. | No. 2:25-cv-10999 |

**DECLARATION OF MICHAEL R. VARGAS**

I, Michael R. Vargas, declare as follows:

1. I am employed by the U.S. Department of Homeland Security (DHS), U.S. Customs and Border Protection (CBP), U.S. Border Patrol (USBP), as a Division Chief within the Law Enforcement Operations Department. CBP is a component within DHS. CBP's central mission is to facilitate the flow of legal immigration and trade while preventing the illegal smuggling and trafficking of people and contraband. CBP has facilities and personnel throughout the State of California. The CBP Office of Field Operations (OFO) has Field Offices in San Francisco, Los Angeles, and San Diego. USBP has Sectors in San Diego and El Centro.

2. I entered on duty with USBP on December 7, 2003. I currently serve as the Acting Deputy Chief of the USBP El Centro Sector where I managed and directed a workforce of 1,100 professional staff and Border Patrol Agents. In my former role as a Division Chief with USBP, my responsibilities included direction and oversight of the

Law Enforcement Operations Department, which includes three USBP stations along with the Sector Intelligence Unit, Special Operations Detachment and Foreign Operations Branch. Prior to these roles, I served as Deputy Patrol Agent in Charge of the El Centro Station, managing the station's Mission Readiness Operations and Operations and Specialty Units from 2022 to 2024, and held other leadership positions in the El Centro Station. I have also served as an Assistant Chief at USBP Headquarters, Special Operations, and various attaché and advisor positions representing CBP in Panama, Estonia, Latvia, Lithuania, and the Dominican Republic.

3. The mission of USBP is to detect and apprehend all unauthorized entries, maintain situational awareness across all domains, and apply appropriate consequences to deter future violations. By impeding or denying unlawful entries between ports of entry and delivering timely, effective law enforcement responses, USBP contributes to DHS's overarching border security mission. To accomplish this mission, USBP uses a layered approach, which includes patrolling the border itself and nearby areas, including populated areas, where undocumented individuals can fade quickly into the general population. Additionally, CBP regularly conducts operations in coordination with Immigration and Customs Enforcement (ICE). On June 6, 2025, in support of ICE, CBP officers and agents were sent to Los Angeles, California as part of Operation At Large.

4. From October 28, 2025 to present, I have served as the Operations Commander for Operation At Large Los Angeles, and I operate out of the Border Patrol Incident Command Post (BP ICP). In this position, I oversee all USBP operations in the greater Los Angeles area. I ensure the Border Patrol agents have all the proper resources, not only in terms of material, but the requisite training needed to operate in such a complex and fluid environment. I oversee logistics, prosecutions, use of force events, personnel, and intelligence. I report directly to the Incident Commander or act as the Incident Commander in his absence. The BP ICP reports to the National Incident Command Center.

5. I make this declaration based upon my personal knowledge, consultation with colleagues, and my review of official CBP records. If called to testify regarding the information contained herein, I would and could do so competently.

6. The purpose of this declaration is to inform the Court regarding the current conditions on the ground in the State of California with respect to CBP operations. In particular, the declaration seeks to relay those conditions as they pertain to California's recently enacted "No Secret Police Act" (Senate Bill 627) and "No Vigilantes Act" (Senate Bill 805), both of which take effect on January 1, 2026, and the anticipated impact of these bills on CBP's operations in the State of California.

**California's No Secret Police Act and No Vigilantes Act Pose Serious Risks to CBP's Law Enforcement Activities and to CBP Officers and Agents**

7. It is my belief that the No Secret Police Act and No Vigilantes Act pose serious safety risks to the USBP agents under my command and to OFO personnel who operate in the State of California and pose operational risks to CBP's ability to carry out its law enforcement activities in the State. I understand that CBP will not require CBP agents or officers to comply with either law beyond what is required by applicable federal law, regulation, and DHS, CBP, and/or USBP policy.

8. Consistent with the requirements of federal law, in certain circumstances, CBP permits its officers or agents to wear facial masks or eyewear (or a combination of both) and remove their badges, nameplates, or unique identifiers. Specifically, officers or agents are authorized to wear their uniforms this way in circumstances where it is necessary to protect their individual safety and privacy interests, their safety as Agency personnel in the conduct of their assigned duties, and the operational efficacy of the organization in carrying out its mission.

9. Keeping officers and agents safe is a key priority for CBP, and it is my priority to protect the USBP agents under my command. If agents are not safe, USBP cannot accomplish its mission. Unfortunately, while conducting operations in California,

especially over the last several months, USBP agents and other CBP personnel have faced difficult conditions and dangers beyond those typically inherent in their law enforcement responsibilities.

10. Not only have these brave men and women experienced increased harassment and assaults—public data[1] shows that there were 290 reported assaults on officers and agents in California in FY2025 compared to 76 assaults in FY2024—but now they are increasingly concerned, with good reason, that these threats will follow them home. Modern technology and the current political environment have made it easier for bad actors to find and widely distribute personal information about officers and agents conducting their assigned duties, using this information or encouraging others to use it to target the individuals. These actors seek to intimidate officers and agents and interfere with their ability to carry out the Agency's mission and support the President's priorities.

11. Media and members of the public wait outside the location where USBP operates in Los Angeles seeking to identify agents and, at times, following their vehicles. USBP has to operate out of a secure location because of the threat posed by this activity. I am aware that, across the country, there are social media sites that post pictures of USBP agents seeking to identify them and obtain personal information about them. Nationwide, CBP personnel have had their photos posted online without their consent, some accompanied by their names and/or license plate numbers. Photos of CBP personnel have been posted to websites like ICEList.is.

12. DHS has credible intelligence indicating that criminal organizations have placed targeted bounties on ICE and CBP personnel in a tiered bounty system. Cartels are offering payouts to criminals based on rank of the targeted personnel and action taken: $2,000 for gathering intelligence or doxxing officers/agents (including photos and family details), $5,000–$10,000 for kidnapping or non-lethal assaults on standard ICE/CBP

---

[1] CBP Assault and Use of Force Dashboards, available at: https://www.cbp.gov/newsroom/stats/assaults-use-force (last viewed November 20, 2025).

officers/agents; and up to $50,000 for the assassination of high-ranking officials. California's laws would directly support the efforts of these criminal organizations by making it easier for bad actors to dox and threaten CBP personnel.

13. Numerous incidents, within and outside California, support the conclusion that CBP agents and officers are reasonable in their fear that exposing their identities would put themselves and their families at risk. In June 2025, a USBP agent supporting the Los-Angeles-based Operation at Large had his "personal phone number, current address and his parents' address" published online, and his family received several threats alluding to his official position. Text messages sent to the agent included: "I'm going to kill you when I see you bitch" and "Your family and everyone is gonna be targeted… Be ready".

14. Around the same time, outside of Los Angeles, extremists posted (on Instagram) the address of a hotel where USBP agents were staying, prompting another user to respond: "Burn them" and another to reply, "Got a match".

15. In August, an Instagram page posted photos of a USBP agent operating in Los Angeles with the bold heading: "WARNING: SUSPECTED KIDNAPPER/TERRORIST" and several personal details about the agent, including his full name, and the purported town of his residence and his hometown. In October, in similar fashion, the same Instagram page posted several images of a USBP agent working in California—including pictures of his face when conducting his official duties, his nameplate, and his purported town of residence and hometown, again with the bold header: "WARNING: SUSPECTED KIDNAPPER/TERRORIST".

16. Other incidents across the nation have created an atmosphere of fear and uncertainty for federal officers and agents performing their assigned duties. These incidents further demonstrate that the risks of forcing federal agents and officers in California to remove their masks and display identification are not just speculative.

a. In May 2025, in Jacksonville, Florida, a USBP agent received harassing calls from a woman who found his cell phone number online after a video of the agent identifying himself was shared widely online.

b. In July 2025, Miami Sector reported that a USBP agent was surrounded by 6-8 civilians while assisting with a vehicle stop. The agent asked the civilians to step back and all but one did. The subject shouted the agent's name and threatened to dox him. After he was arrested and while in transit, the subject made statements indicating his familiarity with the agent's schedule and mentioned the names and personal interests of other agents.

c. At the Chicago Broadview Processing Center, CBP personnel have reported individuals photographing their license plates as they enter and exit the facility.

d. In Houlton, Maine, a Border Patrol Acting Division Chief's service vehicle was photographed and the photo was posted on Facebook with the caption: "UNMARKED ICE VEHICLE, Be on the lookout for this unmarked car or personal vehicle of this ICE agent" with the license plate number included.

17. USBP agents and CBP personnel are accustomed to performing their assigned duties in a public setting, which sometimes means facing public scrutiny. However, the rise of doxxing, the advancement of facial recognition technologies, and the proliferation of bad actors on social media, has created an unprecedented operational risk for federal law enforcement officers. I am aware that officers and agents express concerns about being doxed when performing their assigned duties and worry about their personal safety and the safety of their families.

18. USBP leadership has authorized its personnel, when wearing Class C uniforms and plain-clothes undercover uniforms, to wear facial coverings, which may include eye protection, facial masks, or a combination of both. The Class C uniform is the daily uniform typically worn when conducting USBP duties like linewatch, transportation

checks, interior patrols, checkpoint operations, and training. In certain circumstances, USBP personnel have also been authorized to remove their name plates or identification numbers. Such uniform modifications have been authorized when the risk of doxxing to officers and agents is likely. These modifications have been authorized for officers and agents throughout CBP's history when operationally appropriate and necessary.

19. These two new California laws interfere with CBP's discretion to authorize such modifications, thereby undermining the safety of CBP officers and agents. Not only will these laws diminish officers' and agents' sense of personal safety in the performance of their assigned duties, but I anticipate that it will also increase the likelihood that officers and agents are subject to doxxing and threats. Subjecting officers and agents to potential criminal and/or civil liability will also disincentivize them from taking these critical measures to protect themselves against this unprecedented threat.

20. This, in turn, creates a strain on CBP's already stretched manpower. When personnel are doxed, the agency sometimes must expend valuable resources responding to threats or providing additional protections for its personnel. These resources could otherwise be used to fulfill CBP's primary mission.

21. Removing these flexibilities will also harm CBP operations and our ability to perform the mission effectively. Such uniform modifications may be operationally necessary when conducting surveillance and other investigative activities, for example. If images of a CBP officer or agent's face become widely distributed, then that officer or agent will be less safe and effective when conducting surveillance, plainclothes operations, or undercover operations. Revealing an officer's personal identity or agency affiliation could also enable investigative subjects to circumvent detection, which is precisely what many surveillance and plainclothes operations are intended to avoid.

22. Although the California laws appear to provide certain exceptions where the wearing of masks or concealing or removal of law enforcement identification is permitted, these determinations should be made by CBP, not by the State of California. CBP is the

only authority equipped with the information and expertise to decide whether and when these significant and widespread safety and operational considerations warrant allowing uniform modifications for its personnel.

23. When these laws go into effect in January, CBP will not be able to comply with the California laws without placing agents, officers, other CBP personnel, and the operations of the agency at great risk.

24. Because CBP will not comply with these California laws, CBP agents working in California face the threat of criminal liability under those laws. This is likely to chill CBP's law enforcement activities and could discourage individuals from applying to positions with CBP.

## CONCLUSION

25. The challenged laws pose significant risks to officers and agents and their families, public safety, and to the operational success of enforcement activities in California.

26. This declaration is based upon my personal knowledge and information made available to me in my official capacity. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated on this 25th day of November, 2025.

**MICHAEL R VARGAS** *Digitally signed by MICHAEL R VARGAS Date: 2025.11.25 05:08:12 -08'00'*

Michael R. Vargas
U.S. Border Patrol
U.S. Customs and Border Protection
U.S. Department of Homeland Security

8