**ADAMS, DUERK & KAMENSTEIN LLP**
M. Anthony Brown (Cal. Bar No. 243848)
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
tony.brown@adkfirm.com
(213) 800-2397

Attorneys for Amicus Curiae
Prosecutors Alliance Action

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cv-10999-CAS-AJR |
| Plaintiff, | **BRIEF OF AMICUS CURIAE PROSECUTORS ALLIANCE ACTION IN SUPPORT OF DEFENDANTS THE STATE OF CALIFORNIA, GAVIN NEWSOM, AND ROBERT BONTA** |
| v. | |
| STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of California, in his Official Capacity; ROBERT BONTA, Attorney General of California, in his Official Capacity, | Date: Jan. 12, 2026 |
| Defendants. | Time: 10:00 a.m. |
| | Courtroom: 8D |
| | Judge: Hon. Christina A. Snyder |

*Adams, Duerk & Kamenstein LLP*
*445 S. Figueroa Street, Suite 2300*
*Los Angeles, CA  90071*
*Telephone: (213) 408-4085*

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

    I.     INTRODUCTION ...........................................................................1

    II.    ARGUMENT ..................................................................................3

        A.    The United States' Claims of Harm Resulting from Enforcement of the Challenged Statutes Are Exaggerated. ........3

        B.    The Balance of Equities and Public Interest in the Challenged Statutes Outweighs the United States' Weak Interest in Avoiding Exaggerated Harms Resulting from their Enforcement. .....................................................................6

            1.    California has a strong countervailing interest in preventing confusion, fear, and distrust of its own peace officers..............................................................7

            2.    California has a strong countervailing interest in alleviating unnecessary litigation burdens caused by federal agents concealing their identities. ..................12

            3.    California has a strong countervailing interest in preventing criminal activity spawned by federal agents concealing their identities. ....................................13

    III.   CONCLUSION............................................................................16

CERTIFICATE.........................................................................................17

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

i

1

# **TABLE OF AUTHORITIES**

2

3                                                                                    Page(s)

## **Cases**

4

5    *All. for the Wild Rockies v. Cottrell*,
        632 F.3d 1127 (9th Cir. 2011) .............................................................3, 7

6

7    *Am. Ass'n of Univ. Professors v. Rubio*,
        No. CV 25-10685-WGY,

8       2025 WL 2777659 (D. Mass. Sept. 30, 2025) ......................................8

9
     *Bernhardt v. Los Angeles Cty.*,
10      339 F.3d 920 (9th Cir. 2003) .................................................................7

11
     *Brady v. Maryland*,
12      373 U.S. 83 (1963) ...............................................................................12

13
     *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*,
14      928 F.3d 832 (9th Cir. 2019) .............................................................6, 7

15
     *Giglio v. United States*,
16      405 U.S. 150 (1972) .............................................................................13

17
     *In re Steele*,
18      32 Cal. 4th 682 (2004) .........................................................................13

19
     *Kyles v. Whitley*,
20      514 U.S. 419 (1995) .............................................................................13

21
     *Parker v. Cnty. of Riverside*,
22      78 F.4th 1109 (9th Cir. 2023) ..............................................................13

23
     *Stormans, Inc. v. Selecky*,
24      586 F.3d 1109 (9th Cir. 2009) ...............................................................6

25
     *Vasquez Perdomo v. Noem*,
26      790 F. Supp. 3d 850 (C.D. Cal. 2025) ................................................12

27

28

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

ii

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

*Virginia v. Black*,
  538 U.S. 343 (2003)..................................................................................5

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)......................................................................................3

**Statutes**

10 U.S.C. § 723...........................................................................................4

Cal. Civ. Code § 1708.89............................................................................5

Cal. Gov. Code § 7284.2............................................................................11

Cal. Govt. Code § 7284.6...........................................................................10

Cal. Govt. Code § 7288 ..............................................................................4

Cal. Govt. Code § 7289 ..............................................................................4

Cal. Govt. Code § 7928.215........................................................................5

Cal. Pen. Code § 830.10..............................................................................4

Cal. Pen. Code § 653.2 ...............................................................................5

**Regulations**

8 C.F.R. § 287.8..........................................................................................4

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

iii

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The No Secret Police Act (SB 627) and the No Vigilantes Act (SB 850) are necessary to protect the well-being of California communities by preserving the effectiveness and reputation of California law enforcement agencies. Since early 2025, there has been a disturbing increase in incidents involving masked and armed federal agents, some in plainclothes and traveling in unmarked vehicles, detaining California residents in streets, in public courthouses, and in their homes, workplaces, and places of worship. Whether these masked and unidentifiable federal agents intend it or not, their anonymity, which evokes the repressive tactics of autocratic regimes, sows fear and confusion in our communities. Their anonymity has also spawned a spate of violent crimes against our most vulnerable communities by ill-intentioned criminal actors masquerading as federal immigration officers. As the Federal Bureau of Investigation (FBI) recently warned, "These criminal impersonations make it difficult for the community to distinguish between legitimate officers conducting lawful law enforcement action and imposters engaging in criminal activity, which damages trust between the local community and law enforcement officers."

California has a strong public interest in promoting a relationship of trust between its communities and law enforcement agencies. That trust is the foundation of confidence in our criminal justice system. The relationship of trust breaks down, however, when our state and local agencies are entangled with federal immigration enforcement actions perceived by the public as lawless and unaccountable. California also has a strong public interest in preventing violent crime and the exploitation of vulnerable citizens by ICE impersonators that is made possible by masked, unidentifiable federal immigration agents operating in our communities.

Prosecutors Alliance Action—made up of current and former local, state and federal prosecutors and other stakeholders in the criminal justice system—

1

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

understands the importance of the relationship of trust between law enforcement agencies and the communities they protect. The members of Prosecutors Alliance Action know from personal experience charging and trying criminal cases that, when people do not trust the police, prosecutions suffer. Community members are reluctant to report crimes. Victims and witnesses of crimes become unwilling to cooperate in investigations. Juries become suspicious and feel disillusioned. And, as a result, people committing crime go free. Righteous prosecutions depend on righteous investigations. When charging cases based on police investigations, prosecutors vouch for their integrity. Public trust in the outcomes of criminal prosecutions thus depends on the public's perception that our law enforcement officers are policing with honesty and integrity. By undermining public trust in law enforcement generally, unmasked and plainclothes federal immigration agents undermine public trust in prosecutions generally. California has a strong interest in preventing that from happening. It was for this reason that Prosecutors Alliance Action sponsored the No Secret Police Act and strongly supported passage of the No Vigilantes Act.

In its motion for a preliminary injunction, the United States exaggerates the degree to which compliance with these laws will interfere with federal agents' ability to perform their duties. The reality is that federal law enforcement agencies since their inception have operated effectively without masks; nothing in the past year has altered their ability to keep doing so. Indeed, the challenged legislation does no more than ask all law enforcement officers who police in our state to do what California peace officers have been required to do for decades and what federal agents have done until this new administration: identify themselves. At the same time, the United States completely ignores California's strong, countervailing public interest in preventing harm caused by federal agents wearing masks. This includes the confusion and fear instilled in the community by masked agents' intimidating presence, violent crimes committed by ICE impersonators, and the resulting destruction of trust in law enforcement and the criminal justice system generally.

2

1    The No Secret Police and the No Vigilantes Acts are pragmatic regulations
2    designed to restore faith in law enforcement and the criminal justice system that has
3    been squandered by federal agents who hide their identities while exercising the
4    awesome authority of the police to use force and detain. Prosecutors Alliance Action
5    respectfully asks this Court to deny the United States' motion.

6    **II.    <u>ARGUMENT</u>**

7    To preliminarily enjoin enforcement of the No Secret Police and No Vigilantes
8    Acts, the United States must show: "[1] that [it] is likely to succeed on the merits,
9    [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief,
10    [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the
11    public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). "[A]
12    stronger showing of one element may offset a weaker showing of another." *All. for*
13    *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). As discussed
14    below, the balance of equities and California's strong public interest in restoring
15    public trust in law enforcement offsets and outweighs the United States' exaggerated
16    claims of irreparable harm that would result from requiring federal agents to comply
17    with the same requirements that California peace officers comply with every day.

18    **A.    The United States' Claims of Harm Resulting from Enforcement**
19    **of the Challenged Statutes Are Exaggerated.**

20    The United States argues that it will suffer irreparable harm if the No Secret
21    Police and No Vigilantes Acts are enforced against federal agents because such action
22    "will substantially hamper federal operations in California" by subjecting federal
23    agents to criminal and civil liability for non-compliance. Dkt. 11-1, at 26.
24    Respectfully, this is the wrong analysis. The correct analysis is to ask whether
25    complying with these laws will substantially interfere with federal agents' ability to
26    do their jobs. There are good reasons to believe that, if requiring federal agents to
27    unmask and identify themselves interferes at all with the performance of their duties,
28    that degree of interference is minimal.

3

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

The government concedes that local and federal law enforcement entities perform comparable duties: "Both engage in public law enforcement including investigations, stops, searches, and arrests. … There is no relevant distinction between these entities." Dkt. 11-1, at 16–17. Yet, unlike federal immigration officials who have only recently started hiding their faces and identities while conducting enforcement actions in California, California peace officers every day go to work with their faces uncovered and their badge numbers displayed. In fact, since 1989 California law has required uniformed peace officers to wear a badge, nameplate, or other device which bears clearly on its face the identification number or name of the officer. *See* Cal. Pen. Code § 830.10. The requirement to identify themselves to the citizens they serve has not substantially interfered with California peace officers' ability to investigate and prosecute violations of the law.

Indeed, under current federal regulations, which "must be adhered to by every immigration officer involved in enforcement activities," 8 C.F.R. § 287.8, federal immigration officers are subject to similar requirements. Federal immigration officers are required to identify themselves "[a]t the time of [an] arrest … as soon as it is practical and safe to do so." *See id.* § 287.8(c)(2)(iii). In addition, all federal agents responding to or providing support for those responding to a civil disturbance are required to "visibly display" their names or unique individual identifier (*e.g.*, a badge number) as well as their employing agency. *See* 10 U.S.C. § 723(a)(1)–(2). Yet the government does not contend that these regulations have interfered with federal immigration officers' performance of their law enforcement duties.

The United States's other claims of irreparable harm are similarly weak. The argument that the challenged laws would jeopardize federal plainclothes operations, Dkt. 11-1, at 22, has little merit. Both the No Secret Police Act and the No Vigilantes Act specifically exempt officers engaged in active undercover operations or investigative activities. *See* Cal. Govt. Code §§ 7288(a)(3)(A), 7289(b)(3)(C). That the challenged laws would enable suspects to identify officers who may be involved

4

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

in future enforcement actions, Dkt. 11-1, at 23, is also unpersuasive. Regulations requiring federal officers to identify themselves pose the same risk. The argument that enforcement of the challenged laws would thwart federal law enforcement by increasing the risk that federal agents will be doxxed, Dkt. 11-1, at 18, also fails to show an irreparable harm. While doxxing is a legitimate concern for any police officer or public official, California peace officers have been required to identify themselves to the public for years without the threat that they will be doxxed substantially interfering with the performance of their duties. Moreover, California law provides for civil and criminal remedies to deter such conduct. *See* Cal. Pen. Code § 653.2 (making doxxing a crime); Cal. Civ. Code § 1708.89 (providing for a private right of action to seek damages, statutory penalties, punitive damages, and injunctive relief for doxxing); Cal. Govt. Code § 7928.215 (prohibiting the public posting or display of an elected or appointed official's home address or telephone number). The risk of being doxxed is hardly an irreparable harm.

In fact, there is good reason to question the overall degree of the threat to federal agents that the United States has asserted in its motion. The motion claims, for example, that "ICE officers in particular have faced an 8000% increase in death threats and a 1000% increase in assaults against them." Dkt. 11-1, at 7; *see also id*. at 18. But for these eye-popping numbers the United States relies solely on two Department of Homeland Security (DHS) press releases, without citation to the underlying data that supposedly supports them. *See* Dkt. 11-1, at 7 n.6 & n.7. The reported 8,000% increase in death threats on ICE agents can perhaps be explained by DHS's exceedingly liberal definition of "threat." The DHS press release reporting this astronomical increase in death threats cited the Facebook post of a Washington man who compared ICE agents to "Nazis" and the "Gestapo"—an analogy that clearly falls short of a "true threat," *Virginia v. Black*, 538 U.S. 343, 359 (2003)—as

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

a "potential officer safety threat."[1] The *Los Angeles Times* also recently showed that the DHS press release reporting a 1,000% increase in attacks on ICE agents was similarly misleading.[2]

To be clear, Prosecutors Alliance Action and its members in no way condone true threats on federal immigration officers or other federal agents. The Alliance condemns any act or threat of violence against a police officer. But in its motion, the United States appears to be exaggerating the degree of the danger posed by compliance with the No Secret Police and No Vigilante Acts. In light of the everyday experience of California peace officers, who are already subject to the same legal mandates, the real threat of harm posed by enforcement of these laws is inconsequential.

**B.    The Balance of Equities and Public Interest in the Challenged Statutes Outweighs the United States' Weak Interest in Avoiding Exaggerated Harms Resulting from their Enforcement.**

The government's argument concerning the balance of equities and public interest focuses exclusively on the government's own interest in protecting federal agents from harassment, doxxing, and violence. Dkt. 11-1, at 19. The government ignores any countervailing equities or interests of the citizens of California in requiring that law enforcement officials identify themselves when performing their duties in this state. But "[a] court must 'balance the interests of all parties and weigh the damage to each' in determining the balance of the equities." *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 852 (9th Cir. 2019) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)). Similarly, "[t]he public interest

---

[1] *See* Dkt. 11-1, at 7 n.6 (citing Press Release, DHS, *8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst* (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ).

[2] J. Queally et al., *Attacks on ICE up 1,000%? Trump administration claim not backed up by court records*, LOS ANGELES TIMES (Dec. 1, 2025), https://www.latimes.com/california/story/2025-12-01/dhs-1000-percent-increase-attacks-on-ice-agents-times-analysis.

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

1  inquiry primarily addresses impact on non-parties rather than parties." *Id.* at 852
2  (citing *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931–32 (9th Cir. 2003)). The
3  Court must engage in this balancing of interests and equities because "[a] stronger
4  showing of one element may offset a weaker showing of another." *All. for the Wild*
5  *Rockies*, 632 F.3d at 1131.

6       Law enforcement officers wearing masks and not displaying identification
7  while conducting operations undermines law enforcement legitimacy by sowing
8  confusion and fear in the community and enabling dangerous impersonations by
9  criminals. These practices erode public trust in law enforcement and, as a result, in
10  the criminal justice system as a whole. Every day, law enforcement officers in
11  California dress in their uniforms to fulfill their duties and serve their communities,
12  and they do this with their names and badge numbers prominently displayed. Local
13  law enforcement officers who work in their community day in and day out making
14  arrests of individuals know to carry weapons and commit acts of violence participate
15  in work that may carry greater risks than immigration enforcement. Federal law
16  enforcement should be held to the same standard of good policing as local peace
17  officers to ensure that the criminal justice system is safe, transparent, and
18  accountable.

19    **1.    California has a strong countervailing interest in preventing**
20    **confusion, fear, and distrust of its own peace officers.**

21       When federal agents descend upon our communities in plainclothes or a
22  generic police vest with no name, no badge, and a covered face, the public has no
23  way to know if they are dealing with federal, state, or local law enforcement, or even
24  with imposters. This leads to tremendous confusion and unnecessarily escalates
25  tensions between our state and local law enforcement officers and our communities.

26       Enforcement actions by masked officers, unidentifiable to the citizens they
27  serve, instill fear. As Jack Riley, former Deputy Administrator of the Drug
28  Enforcement Agency, has publicly stated, federal agents wearing masks "is all about

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

7

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

intimidation."[3] In September 2025, in a District of Massachusetts civil rights case challenging the Trump Administration's policy of arresting, detaining, and deporting lawfully present non-citizens based solely upon their pro-Palestine or anti-Israel political speech, the district court held a nine-day bench trial, which included testimony from several agents that Homeland Security Investigations (HSI) had no policy on masking, that whether to wear a mask was a "personal choice," and that they had chosen to don masks to protect themselves from doxxing and harassment. *See Am. Ass'n of Univ. Professors v. Rubio*, No. CV 25-10685-WGY, 2025 WL 2777659, at *28, *35 (D. Mass. Sept. 30, 2025). The district court rejected this rationale out of hand:

> This Court has listened carefully to the reasons given by Öztürk's captors for masking-up and has heard the same reasons advanced by the defendant Todd Lyons, Acting Director of ICE. It rejects this testimony as disingenuous, squalid and dishonorable. ICE goes masked for a single reason—to terrorize Americans into quiescence. Small wonder ICE often seems to need our respected military to guard them as they go about implementing our immigration laws. It should be noted that our troops do not ordinarily wear masks. Can you imagine a masked marine? It is a matter of honor—and honor still matters. To us, masks are associated with cowardly desperados and the despised Ku Klux Klan. In all our history we have never tolerated an armed masked secret police. Carrying on in this fashion, ICE brings indelible obloquy to this administration and everyone who works in it.

*Id.* at *40. Whether intimidation and terrorization is any particular agent's actual

---

[3] C. Mitchell & F. Main, *Masked immigration agents erode trust and intimidate, former No. 2 DEA boss, others say*, WBEZ Chicago (Oct. 24, 2025), https://www.wbez.org/immigration/2025/10/24/masked-agents-border-patrol-immigration-enforcement-dea-atf-trump-deportation#:~:text=Later%20in%20August%2C%20though%2C%20the,that%20masks%20might%20invite%20imposters.

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

intent, however, the mere fact that federal agents cover their faces or refuse to identify themselves when performing their duties generates fear and confusion in the communities where they police.

When federal agents do not identify themselves, or take measures to conceal their identities, witnesses to their enforcement activities can also become confused about whether they are acting lawfully. Immigration enforcement actions by masked federal agents using unmarked vehicles have caused citizens to report kidnappings to 911, leading to confusion, community unrest, and resentment against local police agencies. Frequently, local law enforcement agencies are dispatched to maintain safety, de-escalate tensions, and prevent injuries.[4] As a result, local law enforcement agencies become embroiled in federal immigration operations, undermining trust and confidence in our local police.

For example, in August 2025, when a San Bernardino man called 911 requesting police assistance because masked and unmarked federal authorities tried to pull him over, broke his car window, and shot at him, officers from the San Bernardino Police Department (SBPD) were dispatched to the scene to maintain the peace and assist in the man's arrest.[5] In another incident in June 2025, Los Angeles Police Department (LAPD) officers responding to a reported kidnapping discovered, instead, that they were dealing with an enforcement action by unmarked federal immigration officials.[6] LAPD officers were required to maintain the peace and

---

[4] *See* J. Bennett, *LAPD chief instructs officers to verify identity of federal immigration agents*, LAIST (July 3, 2025), https://laist.com/news/lapd-federal-immigration-agents.

[5] Press Release, SAN BERNARDINO POLICE DEPARTMENT (Aug. 18, 2025), https://www.sbpl.org/CivicAlerts.aspx?AID=630#:~:text=On%20August%2016%2C%202025%2C%20at,being%20conducted%20by%20federal%20authorities.

[6] *See* Alex Stone, *Los Angeles police responded to a kidnapping call. But instead found an ICE operation*, LA TIMES, June 25, 2025, available at https://abcnews.go.com/US/los-angeles-police-responded-kidnapping-call-found-ice/story?id=123204661. *See also* L. Jany, Kidnappers or ICE agents? LAPD grapples with surge in calls from concerned citizens, LOS ANGELES TIMES (July 3, 2025), https://www.latimes.com/california/story/2025-07-03/los-angeles-police-

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

deescalate the situation with onlookers protesting the masked federal agents' conduct. Some of the protesters, and later community organizations, blamed the LAPD officers for assisting the federal agents even though the California Values Act, 2017 Cal. Legis. Serv. Ch. 495 (SB 54), prohibits them from assisting immigration authorities. *See, e.g.*, Cal. Govt. Code § 7284.6(a).

The Inland Coalition for Immigration Justice (ICIJ), a co-sponsor of the No Secret Police Act, when testifying in support of the legislation before the Senate Standing Committee on Public Safety, recounted how federal agents' use of masks and unmarked vehicles is damaging the relationship of trust between immigrant communities and local law enforcement. ICIJ policy manager Hector Pereyra described an "alarming trend" in which crime victims in San Bernardino and Riverside Counties, including victims of spousal abuse, recently began calling ICIJ's rapid response hotline to seek help instead of reporting crimes to the police.[7] According to Pereyra, this is happening out of fear and confusion created by masked federal agents operating in California's Inland Empire. Immigrant communities, he explained, are associating the conduct of masked federal agents with local law enforcement agencies, which "is incredibly dangerous to our local law enforcement who have for decades put in efforts to regain the trust in their communities."[8]

When enacting the California Values Act nearly a decade ago, the California Legislature declared that "a relationship of trust between California's immigrant

immigrationkidnappings (reporting on "more than half a dozen" similar incidents "in recent weeks").

[7] The ICIJ Resource Hotline is a community-led resource that has operated for close to a decade to support immigrant communities in the Inland region of Riverside and San Bernardino counties, as well as the city of Pomona. It now aims to serve undocumented community members in the Inland Empire including the Coachella Valley and High Desert as a solution-oriented hotline by providing resources within our network. *See* https://ic4ij.org/hotline.

[8] A recording of Pereyra's testimony is available on the CalMatters Digital Democracy website, https://calmatters.digitaldemocracy.org/hearings/278272?t=592&f=c42c109cb4b519fa8e78b9d05e4d0d83.

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

community and state and local agencies is central to the public safety of the people of California" and that "[t]his trust is threatened when state and local agencies are entangled with federal immigration enforcement, with the result that immigrant community members fear approaching police when they are victims of, and witnesses to, crimes, seeking basic health services, or attending school, to the detriment of public safety and the well-being of all Californians." Cal. Gov. Code § 7284.2(b)–(c). The core purpose of the California Values Act is to ensure effective policing by protecting the safety, well-being, and constitutional rights of the people of California. As the above examples illustrate, however, masked and unidentified federal agents operating in California inevitably and unavoidably entangle California peace officers in their activities. This undermines the relationship of trust between California's immigrant communities and our state's peace officers. California has a strong interest in maintaining that relationship of trust by requiring all law enforcement officers to identify themselves when policing our citizens.

Every day, law enforcement officers in California dress in their uniforms to fulfill their duties and serve their communities, and they do this with their names and badge numbers prominently displayed. This includes state and local law enforcement officers who participate in work that may carry greater risks than immigration enforcement. California has a strong interest in promoting public trust in law enforcement investigations and criminal prosecutions. Federal agents wearing masks and refusing to display identification when conducting operations is eroding public trust in law enforcement generally and, as a result, in the criminal justice system as a whole. To ensure that the state criminal justice system is fair, effective, and trusted, California has a strong interest in holding federal law enforcement agents to the same standard of good policing as California's own peace officers.

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

11

**2.    California has a strong countervailing interest in alleviating unnecessary litigation burdens caused by federal agents concealing their identities.**

Prosecutors Alliance Action also foresees that federal immigration officers masking of their identities will create many additional practical burdens both for civil litigants and criminal prosecutions.

In July 2025, this Court issued a temporary restraining order barring ICE from conducting roving patrols in Los Angeles without reasonable suspicion and denying arrestees access to lawyers because such tactics constituted racial profiling. *See Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 864 (C.D. Cal. 2025). When such unconstitutional conduct is paired with agent anonymity, it exacerbates the harm: victims cannot identify those involved or their employers to file complaints.

Interested community members merely observing and exercising their First Amendment right to protest the activities of masked federal agents have been arrested, allegedly for obstructing law enforcement activities.[9] When seeking to vindicate their rights, these community members must name Doe defendants and conduct additional, time-consuming discovery to determine the identities of the individuals who allegedly violated their rights, substantially increasing the costs and burdens of litigation.[10]

With many current and former prosecutors as members, Prosecutors Alliance Action also foresees the potential repercussions of anonymous federal policing for criminal cases. Prosecutors have a constitutional duty to disclose any evidence that is favorable and material to the defense, including impeachment material. *Brady v.*

---

[9] *E.g.*, Press Release, ACLU-MN, *Pro Bono Partners Sue to Protect Protesters, Observers and Journalists from Illegal Activity by ICE*, ACLU-MINNESOTA (Dec. 17, 2025), https://www.aclu-mn.org/press-releases/1a/; A. Gabbatt, *US green card holder sues ICE over claims of 'violent assault'*, THE GUARDIAN (Dec. 15, 2025), https://www.theguardian.com/us-news/2025/dec/15/ice-lawsuit-violent-assault.

[10] *See, e.g.*, Class Action Complaint, Dkt. 1, *Tinchner et al. v. Noem et al.*, D. Minn. Case No. 0:25-cv-04669 (Dec. 17, 2025).

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

*Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153–155 (1972). The duty to disclose exculpatory evidence sweeps in all information known not only to the prosecutor, but also to any member of the prosecution team, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *In re Steele*, 32 Cal. 4th 682, 696–697 (2004). A prosecutor's *Brady* obligation applies to a hearing on a motion to suppress. *Parker v. Cnty. of Riverside*, 78 F.4th 1109, 1113 (9th Cir. 2023). Suppression motions brought under the Fourth and Fifth Amendments frequently involve questions about whether a person was detained for purposes of the Fourth and Fifth Amendments. As already discussed, local law enforcement officials have been called to assist with non-immigration-related offenses occurring in connection with federal immigration enforcement actions. Prosecutors called upon to evaluate whether to pursue such cases will likely confront difficulty identifying federal agents as witnesses, persons involved in detentions, and sources of potential *Brady* material. Prosecutors may well find themselves in a position similar to local police, having to do their work alongside anonymous federal agents and limited in their ability to uphold their sworn duties in California. This will waste law enforcement resources and endanger prosecutions.

California has a strong public interest in removing these additional, unnecessary burdens on its citizens' ability to vindicate their civil rights and its state and county prosecutors' ability to enforce the law ethically and effectively.

**3.    California has a strong countervailing interest in preventing criminal activity spawned by federal agents concealing their identities.**

While the government claims an interest in not hampering federal law enforcement operations in California, Dkt. 11-1, at 18, California has an equally strong, if not stronger, countervailing public interest in preventing the criminal activity spawned by federal agents' use of masks.

Ill-intentioned criminal wrongdoers are exploiting the confusion created by

13

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

federal agents' increased use of masks and failure to wear badges and other identification by impersonating ICE agents to target vulnerable communities.[11] This makes it harder for citizens to distinguish between lawful officers and imposters, sowing fear and confusion in communities throughout California. These imposters have made members of immigrant communities afraid to send their children to school, go shopping, and play sports on the weekend.[12] Unsurprisingly, crimes committed by ICE imposters are also further eroding our citizenry's trust in law enforcement.

In October 2025, the FBI issued a Public Safety Awareness Report to warn state, local, and federal law enforcement officials about criminals impersonating ICE agents to commit violent crimes. The report was issued following a series of disturbing incidents involving criminals impersonating ICE agents. According to the memo, criminals have capitalized on ICE's dangerous deployment of masked agents across the country by masquerading as immigration agents while engaging in violent crimes such as robberies, kidnappings, and sexual assault. While the incidents mentioned in the FBI report occurred outside California, such criminal impersonations have also occurred in Fresno[13] and elsewhere.[14] The FBI expressed

---

[11] Medina et al., *ICE Impersonators Target LAUSD Community, Sparking Fear and Protests*, NBC LOS ANGELES, NBC SOUTHERN CALIFORNIA (Feb. 7, 2025), www.nbclosangeles.com/news/local/ice-impersonatorstarget-lausd-community/3626973/.

[12] Naomi Bethune, *ICE Impersonations Proliferate Amid the Agency's Undercover Tactics*, AM. PROSPECT (June 24, 2025), https://prospect.org/2025/06/24/2025-06-24-ice-impersonations-proliferate-agencys-undercover-tactics/.

[13] T. Miller, *Two fake ICE agents harassed Fresno shoppers, businesses just weeks after raids, police say*, FRESNO BEE (Feb. 28, 2025), https://www.fresnobee.com/news/local/crime/article301125334.html.

[14] Press Release, *Attorney General Bonta Issues Warning Amid Increased Reports of Fake ICE Officers and Other Immigration Scams*, CAL. ATTORNEY GEN. (Mar. 18, 2025), https://oag.ca.gov/news/press-releases/attorney-general-bonta-issues-warning-amid-increased-reports-fake-ice-officers. *See also* J. Olivares, *US sees spate of arrests of civilians impersonating Ice officers*, THE GUARDIAN (June 28, 2025), https://www.theguardian.com/us-news/2025/jun/28/civilians-impersonating-ice-officers.

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

14

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

1    the following conclusions about the impact on our communities of such

2    impersonations:

3         This not only effects the victims and communities but also has broader

4         negative consequences on law enforcement agencies. These criminal

5         impersonations make it difficult for the community to distinguish

6         between legitimate officers conducting lawful law enforcement action

7         and imposters engaging in criminal activity, which damages trust

8         between the local community and law enforcement officers.

9    Among the recommendations in the report, the FBI urges all law enforcement

10   personnel to "adequately identify themselves during operations."[15]

11        The FBI is not the only federal law enforcement agency concerned with

12   criminals exploiting federal agents' use of masks and other identifiers. On November

13   2025, the U.S. Marshals Service (USMS) issued a press release to provide "public

14   guidance on how citizens can verify whether an individual is a legitimate law

15   enforcement officer," a bulletin occasioned by federal law enforcement operations

16   involving plainclothes officers and unmarked vehicles.[16] Like the FBI, the USMS

17   recognizes that when law enforcement officers identify themselves to the public, it

18   "ensure[s] accountability and build[s] safer communities through transparency and

19   collaboration."

20        Like the FBI, California recognizes that criminal impersonations of federal

21   immigration agents, made possible by ICE and CBP efforts to conceal their identities,

22   sows confusion and fear in our communities, and damages trust between the local

23

24   [15] The FBI advisory was first reported in D. Cameron and C. Haskins, *FBI Warns of
     Criminals Posing as ICE, Urges Agents to ID Themselves*, WIRED (Nov. 4, 2025),

25   https://www.wired.com/story/fbi-warns-of-criminals-posing-as-ice-urges-agents-to-
     idthemselves/. A copy of the report has been published by Property of the People.

26   *See* https://propertyofthepeople.org/document-detail/?doc-id=26364028.

27   [16] Press Release, *Real Officers Have Nothing to Hide: If In Doubt, Ask to Verify*,
     U.S. MARSHALS SERVICE (Nov. 20, 2025), https://www.usmarshals.gov/news/press-

28   release/real-officers-have-nothing-hide-if-doubt-ask-verify.

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

community and law enforcement officers. California has a strong public interest in protecting that trust. The No Secret Police and No Vigilante Acts do that.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Prosecutors Alliance Action respectfully urges this Court to deny the motion of the United States for a preliminary injunction barring enforcement of No Secret Police and No Vigilante Acts.

Dated: December 22, 2025                    ADAMS, DUERK & KAMENSTEIN LLP


By:  _s/ M. Anthony Brown_

M. Anthony Brown

Attorneys for Amicus Curiae
Prosecutors Alliance Action

Adams, Duerk & Kamenstein LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA  90071
Telephone: (213) 408-4085

16

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*

# <u>CERTIFICATE</u>

The undersigned, counsel of record for amicus curiae Prosecutors Alliance Action, certifies that this brief contains 4,760 words, which complies with the word limit of L.R. 11-6.1.

December 22, 2025

<u>s/ M. Anthony Brown   </u>

M. Anthony Brown

*AMICUS CURIAE BRIEF OF PROSECUTORS ALLIANCE ACTION*