BRETT A. SHUMATE
Assistant Attorney General, Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General, Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General, Civil Division
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
BILAL A. ESSAYLI
First Assistant U.S. Attorney, Central District of California
ALEXANDER K. HAAS
Director
JACQUELINE COLEMAN SNEAD
Assistant Director
ELISABETH J. NEYLAN
CRISTEN C. HANDLEY
Trial Attorneys
Civil Division, Federal Programs Branch
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> v. <br><br> STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of California, in his Official Capacity; ROBERT BONTA, Attorney General of California, in his Official Capacity, <br><br> Defendants. | No. 2:25-cv-10999 <br><br> **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** <br><br> Hearing Information: Monday, January 12, 2026 at 10:00 a.m. <br><br> Honorable Christina A. Snyder <br> United States District Judge |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.   The United States Has Pre-Enforcement Standing ................................... 2

II.  The United States Is Likely to Succeed on the Merits of Its Claims That the
     Challenged Laws Violate Intergovernmental Immunity .......................... 5

     A.   The Challenged Laws Directly Regulate the United States ............... 5

     B.   The No Secret Police Act Discriminates Against the United States ... 8

     C.   Plaintiff's Facial Challenges are Proper ....................................... 9

III. The United States Faces Irreparable Harm Absent Preliminary Relief ...... 11

IV.  The Equities Weigh in Favor of a Preliminary Injunction ...................... 13

CONCLUSION .................................................................................................... 15

i

1

## TABLE OF AUTHORITIES

2

**Cases**

*Am. Trucking Ass'n v. City of Los Angeles*,
 559 F.3d 1046 (9th Cir. 2009)..................................................... 11, 14

*Arizona v. California*,
 283 U.S. 423 (1931) .........................................................................5

*Arizona v. Yellen*,
 34 F.4th 841 (9th Cir. 2022) .............................................................3

*Babbitt v. United Farm Workers Nat'l Union*,
 442 U.S. 289 (1979) .........................................................................2

*Blackburn v. United States*,
 100 F.3d 1426 (9th Cir.1996)...........................................................11

*Boeing Co. v. Movassaghi*,
 768 F.3d 832 (9th Cir. 2014)..........................................................5, 6

*Cal. Pharmacists Ass'n v. Maxwell–Jolly*,
 563 F.3d 847 (9th Cir. 2009)............................................................14

*Cal. Trucking Ass'n v. Bonta*,
 996 F.3d 644 (9th Cir. 2021)..............................................................4

*Clifton v. Cox*,
 549 F.2d 722 (9th Cir. 1977)............................................................11

*Dawson v. Steager*,
 586 U.S. 171 (2019) .........................................................................9

*Geo Grp., Inc. v. Newsom*,
 50 F.4th 745 (9th Cir. 2022) ...........................................................5, 6

*GeoGrp., Inc. v. Inslee*,
 151 F.4th 1107 (9th Cir. 2025) ...........................................................6

*Hancock v. Train*,
 426 U.S. 167 (1976) .........................................................................5

*In re Neagle*,
 135 U.S. 1 (1890) ..........................................................................10

*Jensen v. Lane Cnty.*,
 222 F.3d 570 (9th Cir. 2000)..............................................................3

*Johnson v. Maryland*,
 254 U.S. 51 (1920) ..........................................................................8

*Kidd v. Noem*,
No. 2:20-cv-03512 (C.D. Cal. 2025)..................................................12

*Leslie Miller, Inc. v. Arkansas*,
352 U.S. 187 (1956) ........................................................................5

*Matsumoto v. Labrador*,
122 F.4th 787 (9th Cir. 2024)...........................................................4

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ......................................................................10

*New York v. Tanella*,
374 F.3d 141 (2d Cir. 2004).............................................................11

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482 (9th Cir. 2024) .............................................................4

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ...........................................................14

*State v. Ivory*,
906 F.2d 999 (4th Cir. 1990).............................................................11

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ....................................................................2, 3

*Tennessee v. Davis*,
100 U.S. 257 (1879) .......................................................................11

*Texas v. U.S. Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024)........................................................7, 11

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000)...........................................................2

*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) ..........................................................13

*United States v. Arizona*,
641 F.3d 339 (9th Cir. 2011)..............................................................11

*United States v. California*,
2018 WL 5780003 (E.D. Cal. Nov. 1, 2018) ..........................................9

*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010)......................................................*passim*

*United States v. California*,
921 F.3d 865 (9th Cir. 2019).........................................................11, 12

*United States v. King Cnty.*,

122 F.4th 740 (9th Cir. 2024)...............................................................5, 9

*United States v. Washington*,
    596 U.S. 832 (2022) .......................................................................9

**Statutes**

10 U.S.C. § 723..............................................................................8, 13

Cal. Gov't Code § 26690 ...................................................................7

Cal. Penal Code § 830.2....................................................................9

Cal. Penal Code § 830.3....................................................................8

Cal. Penal Code § 830.10..................................................................7

Cal. Penal Code § 538d(a).................................................................7

**Regulations**

8 C.F.R. § 287.8(c)(2)(iii) ................................................................ 13

**Other Authorities**

Lindsey Holden, California lawmakers pass bill to ban ICE agents from wearing masks,
    Politico (Sep. 11, 2025), https://perma.cc/EAL3-ETZR............................................1

Press Release, California announces new online portal to report misconduct by federal
    agents, Cal. (Dec. 3, 2025), https://www.gov.ca.gov/2025/12/03/california-announces-
    new-online-portal-to-report-misconduct-by-federal-agent/......................................4

Scott Wiener (@Scott_Wiener), X (Jan. 1, 2026 at 12:00 ET),
    https://t.co/cZvLqReAXG" / X.................................................................4

iv

# INTRODUCTION

As established in the United States' opening brief, California's No Secret Police Act and No Vigilantes Act unconstitutionally intrude on the Federal Government's sovereignty. Together, these laws direct federal agencies to adopt specified policies, and, subject to narrow yet vague exceptions, ban federal officers from wearing masks and require them to display identification. In addition, the mask ban discriminatorily applies to federal law enforcement officers—but not California State law enforcement officers. And California asserts the right to criminally prosecute federal officers for noncompliance with these laws.

Contrary to Defendants' assertions, the State of California has no authority to regulate or discriminate against the Federal Government. California's invocation of its police power does not provide otherwise. Because these laws are blatantly unconstitutional, as even Governor Newsom himself acknowledged with respect to the mask ban,[1] the Federal Government will not comply with either law. Thus, federal officers face a credible threat of prosecution for noncompliance that chills the exercise of their duties, so the United States has pre-enforcement standing to bring this suit.

The challenged laws' unconstitutionality alone establishes irreparable injury warranting preliminary injunctive relief, but the harm here is even greater. If forced to comply with these laws, federal agents will face increased incidents of doxxing and harassment, and law enforcement operations will be compromised. Finally, the balance of equities and the public interest favor an injunction: Whereas California has no legitimate interest in its unconstitutional laws, there is significant public interest in protecting federal officers' safety, removing unlawful impediments to federal law enforcement operations, and avoiding conflict between state and federal agents. For the foregoing reasons, the United States is entitled to the requested preliminary injunction.

---

[1] Lindsey Holden, *California lawmakers pass bill to ban ICE agents from wearing masks*, Politico (Sep. 11, 2025), https://perma.cc/EAL3-ETZR.

In opposition to the United States' motion for a preliminary injunction, Defendants offer policy justifications for their unconstitutional laws and claim that the United States' position "runs roughshod over California's sovereignty." Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. at 2, ECF No. 29 ("Defs.' Br."). But in seeking to impose mask and identification requirements on federal officers, and purporting to require federal agencies to adopt specified policies, it is California who infringes on the United States' sovereignty, not the other way around.

## ARGUMENT

### I.  The United States Has Pre-Enforcement Standing

As established in the United States' opening brief, the United States has pre-enforcement standing. *See* Mem. in Supp. of Pl.'s Mot. for a Prelim. Inj. at 9–11, ECF No. 11-1 ("Pl.'s Br."). The requirements for pre-enforcement standing are satisfied when the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see also Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (considering whether plaintiffs have articulated a "concrete plan" to violate the law, whether the prosecuting authorities have communicated a specific threat to initiate proceedings, and the history of past enforcement).

Defendants mischaracterize the Federal Government's stated intentions to violate the challenged laws as "equivocal." Defs.' Br. at 12. On the contrary, the Federal Government has unequivocally stated that ICE officers "will not comply with either law." Decl. of Sergio Albarran, ECF No. 11-2 ¶ 10; *see also* Decl. of Matthew W. Allen, ECF No. 11-5 ¶ 13 ("DEA does not intend to comply with the requirements imposed on the Federal Government either by the No Vigilantes Act or the No Secret Police Act."); Decl. of Michael R. Vargas, ECF No. 11-3 ¶ 7 ("CBP will not require CBP agents or officers to

comply with either law beyond what is required by applicable federal law, regulation, and DHS, CBP, and/or USBP policy."); Decl. of Michael H. Glasheen, ECF No. 11-4 ¶ 15 ("[T]he FBI and its Special Agents will defy these state laws where they deem it appropriate to do so."). These statements express the United States' concrete plan not to comply with the challenged state laws. The United States plans to continue the operations that California contends justified these laws, and federal officers will continue exercising their discretion to use masks and not display their identification in appropriate circumstances.

The proscribed conduct in which the Federal Government plans to engage is "affected with a constitutional interest." *See* Pl.'s Br. at 9 (quoting *Driehaus*, 573 U.S. at 159 (citation omitted)). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to California (or any State) by complying with California's purported requirements for federal law enforcement officers. That "sovereign injury" alone suffices. *Arizona v. Yellen*, 34 F.4th 841, 852–53 (9th Cir. 2022). Even so, failing to comply with these laws will expose federal officers to the threat of criminal prosecution, which jeopardizes the strong federal interest in "serv[ing] the public good by zealous enforcement of the law and the avoidance of deterring talented candidates from entering government employment for fear of liability." *Jensen v. Lane Cnty.*, 222 F.3d 570, 576 (9th Cir. 2000).

Although Defendants assert that the challenged laws provide a "safe harbor," whereby officers are exempt from prosecution if their agency complies with the laws' policy-promulgation requirements, Defs.' Br. at 12, no federal agency intends to issue the policy statements that California requires. *See* Albarran Decl. ¶ 9; Vargas Decl. ¶¶ 7, 23; Allen Decl. ¶ 13; Glasheen Decl. ¶ 15. The fact that California thinks it can force federal agencies to promulgate the policies it prefers demonstrates the threat these laws pose to the United States' constitutional interests.

Moreover, "the state's refusal to disavow enforcement of [the challenged laws]

3

against" Plaintiff "is strong evidence that the state intends to enforce the laws and that [the Federal Government] face[s] a credible threat." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). The substantial-threat-of-enforcement prong "often rises or falls with the enforcing authority's willingness to disavow enforcement," especially where, as here, the law is new. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489–90 (9th Cir. 2024); *cf. Matsumoto v. Labrador*, 122 F.4th 787, 797 (9th Cir. 2024) (in the First Amendment context, "[i]n challenging a new law whose history of enforcement is negligible or nonexistent, either a 'general warning of enforcement' or a 'failure to disavow enforcement' is sufficient to establish a credible threat of prosecution in pre-enforcement challenges"). As Plaintiff made clear, Defendants would not have passed these laws if they did not mean to enforce them or deter federal law enforcement. *See* Pl.'s Br. at 10–11. Numerous officials have said as much, *id.*, including the sponsor of the No Secret Police Act, who recently celebrated the law as a way "to stop ICE."[2]

Indeed, the credible threat of prosecution is evident from Defendants' conspicuous refusal to disavow their intent to enforce these laws following the expiration of the temporary stay of enforcement pending resolution of the instant motion. *See* Defs.' Br. at 12; Joint Stipulation Re: Pl.'s Mot. for Prelim. Inj. and Related Issues ¶ 8(a), ECF No. 19 (stipulating that Defendants will not enforce the law "until such time as the court rules on Plaintiff's motion for a preliminary injunction"). Moreover, shortly after the United States filed its motion for a preliminary injunction, Defendants Newsom and Bonta established an online portal soliciting information from the public "regarding potentially unlawful activity by federal agents and officers across [California]."[3] The portal is explicitly intended to "help the California Department of Justice create a record of potential unlawful

---

[2] Scott Wiener (@Scott_Wiener), X (Jan. 1, 2026 at 12:00 ET), https://t.co/cZvLqReAXG" / X.

[3] *See* Press Release, California announces new online portal to report misconduct by federal agents, Cal. (Dec. 3, 2025), https://www.gov.ca.gov/2025/12/03/california-announces-new-online-portal-to-report-misconduct-by-federal-agent/.

conduct by federal agents, and inform possible legal actions the state may take."[4] Thus, the United States has satisfied the requirements for pre-enforcement standing.

## II.    The United States Is Likely to Succeed on the Merits of Its Claims That the Challenged Laws Violate Intergovernmental Immunity

### A. The Challenged Laws Directly Regulate the United States

The challenged laws directly regulate the Federal Government because they purport to require federal agencies to adopt specific policies, ban federal officers from wearing masks, and direct federal officers to display identification, subject to narrow exceptions. *See* Pl.'s Br. at 12–15. These laws thus fit comfortably within a long line of precedent invalidating laws that place a prohibition or mandate on the Federal Government. *See id.* (citing *Hancock v. Train*, 426 U.S. 167, 180 (1976); *Arizona v. California*, 283 U.S. 423, 451 (1931); *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189 (1956); *United States v. King Cnty.*, 122 F.4th 740, 747 (9th Cir. 2024); *United States v. City of Arcata*, 629 F.3d 986, 988 (9th Cir. 2010); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 834–37 (9th Cir. 2014); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (en banc)).

Defendants try to distinguish this precedent by contending that the challenged laws are a proper exercise of the State's police power and only incidentally impact federal operations. California's position is astonishing. Apparently California believes that all 50 states can regulate federal agencies and officers down to minute details subject to criminal prosecution so long as those regulations are arguably "incidental" to their core duties and it is not "necessary" to violate those state laws. That is plainly incorrect.

At the outset, Defendants are wrong that *City of Arcata*, *Geo Group* and *Boeing* support their position. Defs.' Br. at 13–14. As explained in Plaintiff's opening brief, those cases invalidated state laws that were analogous to those challenged here. *See* Pl.'s Br. at 12–13. For example, in *City of Arcata*, the ordinances prohibited military recruiters from recruiting minors. 629 F.3d at 991. Those ordinances were *unconstitutional* because they

---

[4] *Id.*

sought "to directly regulate the conduct of agents of the federal government." *Id.* The same is true here. Nowhere did the court's analysis even mention, let alone turn on, the degree to which the laws would thwart federal operations. *Contra* Defs.' Br. at 13. And in *Geo Group*, the law was invalid because it purported to "override the federal government's decision, pursuant to discretion conferred by Congress, to use private contractors to run its immigration detention facilities [and] would give California a 'virtual power of review' over ICE's detention decisions." 50 F.4th at 750–51; *see also Boeing*, 768 F.3d at 840 (finding a state law that overrode the Federal Government's determination as to necessary decontamination measures invalid). Again, the same is true here, as the laws remove federal discretion over uniforms and identification.

Defendants' reliance on *Geo Grp., Inc. v. Inslee* is similarly misplaced. *See* Defs.' Br. at 16 (citing 151 F.4th 1107, 1114 (9th Cir. 2025)). The law at issue in *Inslee* required Washington's Department of Health to ensure that private detention facilities complied with standards for sanitary, hygienic, and safety conditions for detainees. *Inslee*, 151 F.4th at 1114. The Ninth Circuit upheld that law as applied to private contractors used by ICE, concluding that the challenged law (i) "impose[d] no obligation on the federal government [but] instead, it impose[d] obligations on GEO, a federal *contractor*," which has "substantially narrower" protections from state regulations than the Federal Government itself; (ii) was adopted pursuant to the State's historic police power to regulate the health and safety of those within its borders; and (iii) would not increase costs for the Federal Government. *Id.* at 1116. None of those factors are present here. The No Secret Police Act and No Vigilantes Act directly and explicitly regulate federal law enforcement, not contractors. Those obligations, if enforced, will substantially burden the Federal Government's operations. *See, e.g.*, Albarran Decl. ¶ 10; Vargas Decl. ¶ 7; Glasheen Decl. ¶ 10; Allen Decl. ¶ 11.[5] And despite Defendants' claims, California has no historic police

---

[5] Whether the ill effects of the challenged laws could be mitigated through their exceptions or other measures, *see* Defs.' Br. at 17 (suggesting the use of anonymized badge numbers), is irrelevant because California has no authority to impose these requirements on federal

power to regulate federal agencies' policies or federal officers' uniforms and gear. California points to regulations of its own law enforcement or private individuals, not federal officers. *See* Defs.' Br. at 5 (citing Cal. Gov't Code § 26690 (sheriffs); Cal. Penal Code §§ 830.10 ("peace officer"), 538d(a) (impersonation)). The fact that California lacks any examples of this supposedly "core" police power is telling.

Defendants' contention that "nobody is prohibiting the federal government from enforcing immigration law" or other federal laws also misses the point. Defs.' Br. at 14 (citing *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 206 (5th Cir. 2024)). In the *Texas* case on which Defendants rely, Texas sued the Federal Government to prevent trespass and damage to its own property—namely, a wire fence that Texas had placed along part of its border with Mexico. *See Texas*, 123 F.4th at 205–06. The court found that Texas had sued the Federal Government as a proprietor, not as a regulator, to enforce its generally applicable state tort laws against trespass and conversion. *Id.* at 206. Texas's lawsuit therefore did not attempt to regulate federal officials. *See id.* at 205. And as the Fifth Circuit observed, the case was "quite different from typical intergovernmental immunity cases" because Texas neither targeted the Federal Government through state laws or regulations nor sought to apply neutral state laws to federal property. *Id.* at 206.

By contrast, here, no state property rights are implicated, and California has enacted laws in its sovereign capacity as regulator seeking to control federal employees. The laws require federal agencies to adopt written policies and federal officers to display identification and refrain from wearing masks—under threat of criminal liability—placing both a prohibition and a mandate on the Federal Government. *See Arcata*, 629 F.3d at 991 (laws that expressly "constrain[] the conduct of federal agents," thereby "regulat[e] the

___

officers in the first place. Moreover, the laws' exceptions are "narrow" and leave so many terms undefined that it is unclear what scope of activities is excepted. *See* No Vigilantes Act § 2(c); No Secret Police Act § 3(c). It is also unclear who decides if such exceptions are met. The Federal Government should not have to clear undercover or SWAT operations with California lest some zealous prosecutor later decide the exceptions were not met.

government directly"); *see also Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920) (States cannot "control the conduct of [individuals] . . . acting under and in pursuance of the laws of the United States"). Moreover, unlike in *Texas*, the challenged laws here do hamper federal law enforcement. These laws therefore have more than an "incidental" effect; they override the Federal Government's decision about which policies, if any, to adopt regarding masking and identification, including the decision to give federal officers discretion to choose to mask and refrain from displaying identification. And they do so to the detriment of federal operations. Defendants' own declaration highlights the intrusion on this area of federal regulation—the control of federal officers' uniforms and gear—further undermining the suggestion of legitimate police power incidentally impacting a federal sphere. *See* Decl. of Scott Shuchart, ECF No. 29-3 ¶ 8 (stating that federal law enforcement uniforms are "largely governed by policies created by individual federal departments and agencies" and acknowledging that 10 U.S.C. § 723, which applies to civil disturbances, has not been understood to apply to routine civil law enforcement). Thus, the Federal Government is likely to succeed in showing that the challenged laws directly regulate the Federal Government.

**B. The No Secret Police Act Discriminates Against the United States**

The No Secret Police Act also discriminates against the United States because it applies to federal agencies and officers, but not California law enforcement agencies and officers. *See* Pl.'s Br. at 15–17. Defendants do not contest the law's differential treatment but argue that such treatment is lawful because federal and state law enforcement officers are not similarly situated. Defs.' Br. at 15. In support of that position, Defendants first observe that some state peace officers—such as investigators of the Dental Board of California, voluntary fire wardens, and Department of Motor Vehicles employees—have limited jurisdiction and do not have significant interactions with the general public. *Id.* (citing Cal. Penal Code § 830.3). That is irrelevant. California peace officers also include state troopers, marshals, and university officers who do engage in similar law enforcement

functions as federal officers, including stops, searches, and arrests. Cal. Penal Code § 830.2. Defendants do not dispute that officers of state agencies regularly engage in these activities. Defs.' Br. at 15. These state officers and federal officers therefore "perform[] comparable duties," so they are similarly situated. *See* Pl.'s Br. at 16 (citing *Dawson v. Steager*, 586 U.S. 171, 177 (2019)). But no state officers are subject to the No Secret Police Act, while federal officers are.

Notwithstanding, Defendants claim that this differential treatment is permissible because their similarly situated officers typically wear uniforms and badges, and wear masks only in limited circumstances. Defs.' Br. at 16. That is precisely the problem: California permits its own law enforcement agencies and officers to exercise discretion in determining when and how to identify and uniform themselves. Yet it denies that same discretion to federal agencies and officers. And the law subjects federal officers to criminal prosecution for wearing masks, where California state officers face no similar threat. That constitutes unlawful discrimination when, as here, the entities are similarly situated.

California's erroneous view that the discrimination is justified by its policy differences with the Federal Government, Defs.' Br. at 16, cannot correct the constitutional defect. *See* Pl.'s Br. at 16–17 (citing *Dawson*, 586 U.S. at 177; *United States v. Washington*, 596 U.S. 832, 839 (2022) (deeming law discriminatory because "[o]n its face" it "explicitly treats federal workers differently than state or private workers"); *King Cnty.*, 122 F.4th at 757–58 (rejecting county's argument that "significant differences" between ICE, whose flights carried out deportations, and others who chartered flights justified the discriminatory treatment of ICE); *United States v. California*, 2018 WL 5780003, at *6 (E.D. Cal. Nov. 1, 2018)). Accordingly, the United States is likely to succeed on the merits of its discrimination claim as well.

**C. Plaintiff's Facial Challenges are Proper**

Defendants contend that the United States' challenge "effectively operates as a facial challenge," Defs.' Br. at 8, which, in Defendants' view, cannot succeed unless the

9

United States shows that "in all circumstances, masking or concealing identification by federal officers is both subjectively necessary and objectively reasonable." Defs.' Br. at 17 (citing *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024)). Defendants are wrong. The United States is challenging provisions of California's laws that expressly apply to federal officers and agencies. Those provisions are facially invalid because there is no circumstance in which it would be lawful for California to require federal agencies to adopt California's preferred policies or to remove discretion from federal agencies and officers to determine their uniforms and identification practices.

In arguing otherwise, Defendants invoke Supremacy Clause immunity,[6] which is a federal defense that protects federal officers from liability under state law in certain circumstances. Federal officers may successfully invoke the Supremacy Clause immunity defense by showing that, in performing an act authorized under federal law, they did no more than was necessary and proper for them to do. *See In re Neagle*, 135 U.S. 1, 75 (1890). But the defense, which requires case-by-case determination of the officer's actions, is implicated only in circumstances involving generally applicable state laws that could, at most, have an incidental effect on the Federal Government—not those that facially violate intergovernmental immunity as here.

The cases on which Defendants rely for their argument bear this out. For example, in *In re Neagle*, the generally applicable law was one proscribing murder. If a federal officer acting in the course of his duties commits a killing, and the killing was necessary and proper to his federal duty, then he cannot be liable for murder under state law. *See id.*;

---

[6] In its opening brief, the United States invoked the doctrine of Supremacy Clause immunity to underscore the chilling effect of state prosecution on federal law enforcement activity. *See* Pl.'s Br. at 14.

10

*see also* Defs.' Br. at 17 (citing other inapposite cases involving generally applicable laws); *e.g.*, *Tennessee v. Davis*, 100 U.S. 257 (1879) (murder charge); *New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) (manslaughter charge); *State v. Ivory*, 906 F.2d 999, 1000 (4th Cir. 1990) (unintentional death by motor vehicle charge); *Clifton v. Cox*, 549 F.2d 722, 723 (9th Cir. 1977) (second-degree murder charge and involuntary manslaughter charge); *Texas*, 123 F.4th at 206 (state tort prohibition against trespass and conversion). The laws at issue in those cases did not seek to directly regulate or discriminate against the Federal Government.

By contrast, laws like those challenged here cannot be enforced against the Federal Government because they violate intergovernmental immunity on their face, and no further inquiry is necessary. *See City of Arcata*, 629 F.3d at 991 ("We have relied on intergovernmental immunity in refusing to enforce state statutes against the federal government under circumstances far more ambiguous than those present here."); *Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996) (holding that a statute imposing safety requirements on resorts would violate the Supremacy Clause as applied to the Federal Government). By Defendants' logic, States could criminalize any law enforcement practice employed by the Federal Government and then place the burden on federal officers to justify why the federally authorized practice is necessary and proper. That is not the law. Accordingly, the Federal Government is likely to prevail on the merits.

**III.    The United States Faces Irreparable Harm Absent Preliminary Relief**

Any regulation that violates the Supremacy Clause causes irreparable harm to the United States. *See* Pl.'s Br. at 17–19. Contrary to Defendants' assertion, *see* Defs.' Br. at 18, *United States v. California* did not hold otherwise. 921 F.3d 865, 894 (9th Cir. 2019). In *California*, the Ninth Circuit reiterated its previous "recognition that preventing a violation of the Supremacy Clause serves the public interest." *Id.* at 893–94 (citing *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011); *Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059–60 (9th Cir. 2009) (determining that the balance of equities

and the public interest weigh in favor of a preliminary injunction against a likely preempted ordinance)). Although the Ninth Circuit remanded to the district court to reexamine the equitable *Winter* factors, it did so because the Government in that case had not pleaded that the challenged statute imposed an economic or operational burden on it or anyone else. 921 F.3d at 894. For the reasons mentioned above and in the United States' opening brief, that is not the case here. *See generally* Pl.'s Br. at 17–19.

The United States also faces irreparable harm because the challenged laws will likely substantially hinder federal law enforcement: the threat of prosecution will likely chill federal law enforcement activity, *see id.* at 18, and, if federal officers were forced to comply with the challenged laws, the laws would endanger the lives of federal officers, *id.* at 18–19. Defendants' argument that this must be false because officers can choose to wear masks and sometimes appear in public is irrelevant. The fact that some officers in some circumstances do not believe that masking is necessary just highlights why this is an individual determination that needs to be left to federal agencies and their officers.[7] That hardly proves that there is no threat or risk to officers that would justify California's strict prohibition under the threat of prosecution. Despite Defendants downplaying the serious violence against federal officers as "self-serving," the evidence of the substantial harms to agents is overwhelming and specific. *See id.* at 7–8.

Defendants also contend that the challenged provisions cannot harm the United States because they are "consistent with federal laws and longstanding agency policies regarding [law enforcement officers'] identification." Defs.' Br. at 19. Defendants are wrong. First, the challenged laws are not consistent with federal law or policy. These laws

---

[7] For the same reason, Defendants are incorrect that the settlement agreement in *Kidd v. Noem*, No. 2:20-cv-03512 (C.D. Cal. 2025) prevents the Federal Government from demonstrating irreparable harm here. Defs.' Br. at 19. The fact that ICE officers in the Los Angeles Field Office voluntarily agreed to abide by certain limited protocols in the context of settling litigation is categorically different from California's unconstitutional mandates on federal agencies challenged here.

12

cabin federal officers' discretion with respect to masking and displaying identification in ways that conflict with current federal practice. Even Defendants' own declarations appear to concede as much. *See, e.g.*, Decl. of Stuart Shrader, ECF No. 29-5 ¶ 7(a) (stating that the challenged laws "would require greater transparency and clarity for the public regarding federal law enforcement agencies and officers that are actively conducting enforcement operations").[8] As for Defendants' invocation of "longstanding" agency policy, what federal agencies have chosen to do in the past under different circumstances is irrelevant and cannot justify California hamstringing their discretion going forward.

Second, even if the challenged laws were consistent with federal policy, the Ninth Circuit rejected the argument that ordinances merely prohibiting conduct "already forbidden" by federal law could be salvaged on that basis. *See City of Arcata*, 629 F.3d at 991–92 ("A state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law."). Thus, the Federal Government is likely to suffer irreparable harm in the absence of a preliminary injunction.

## IV. The Equities Weigh in Favor of a Preliminary Injunction

The balance of equities and public interest likewise favor the furtherance of federal prerogatives and averting the dangerous collision course on which California has placed state and federal officers. *See* Pl.'s Br. at 19–20 (citing *United States v. Alabama*, 691 F.3d

---

[8] The regulation Defendants cite—8 C.F.R. § 287.8(c)(2)(iii)—requires that, at the time of an arrest, the arresting immigration officer identify himself "as an immigration officer who is authorized to execute an arrest" and state the reason for the arrest "as soon as it is practical and safe to do so." That gives the officer discretion to determine when it is safe and practical and does not require a lack of masking or clear identifier. And Defendants' own declarant correctly notes that federal law only requires identification for "civil disturbances," which does not apply here. Shuchart Decl. ¶ 8 (citing 10 U.S.C. § 723). These authorities do not support Defendants' contention that the challenged laws are consistent with federal practice. But they do undermine Defendants' purported justification for the challenged laws and show that this is an area for federal, not state, regulation.

1269, 1301 (11th Cir. 2012); *Am. Trucking Ass'ns*, 559 F.3d at 1060). If California had its way, all 50 states could regulate federal law enforcement under the threat of prosecution regardless of federal policies. That is a recipe for chaos and disaster. The Federal Government has a strong interest in setting consistent policies for the uniforms and conduct of its own officers.

In contrast, California has no legitimate interest in interfering with the enforcement of federal law or putting federal agents at risk. Nor can it have a legitimate interest in enforcing invalid legislation. *See* Pl.'s Br. at 20 (citing *Cal. Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 852–53 (9th Cir. 2009); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (stating that a party "cannot suffer harm from an injunction that merely ends an unlawful practice")).

Defendants offer various policy justifications for the challenged laws, but none is availing. For example, they observe that criminals impersonate law enforcement officers. *See* Defs.' Br. at 21. That conduct is already illegal, and the United States does not challenge the portions of the laws prohibiting such conduct. To be sure, the FBI has acknowledged the existence of criminals impersonating law enforcement, *see id.* at 3, but the solution is prosecuting such impersonators, not criminalizing legitimate federal activities. Indeed, the FBI uses masks and opposes these laws due to the risk to officers. *See* Glasheen Decl. ¶¶ 14, 15.

Defendants also claim that the challenged laws prevent fear among members of the public, ECF Nos. 29-8 through 29-11, and promote public safety and transparency in law enforcement, ECF Nos. 29-4 through 29-6, 29-12. Those policy arguments are irrelevant and disregard that the challenged laws *create* safety threats to federal officers and their families, and also to the public at large by interfering with the enforcement of federal laws against dangerous criminals. *See* Pl.'s Br. at 7–8 (collecting evidence of such harms). Defendants' preferred policy justifications cannot salvage their facially unconstitutional laws. Accordingly, the remaining elements of a preliminary injunction are met.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons and those stated in the United States' opening brief, the Court should enter a preliminary injunction prohibiting the State of California and its officials from enforcing the challenged provisions of the No Secret Police Act and No Vigilantes Act against the Federal Government and awarding any other relief the Court deems appropriate.

Dated: January 5, 2026          Respectfully submitted,


                                BRETT A. SHUMATE
                                Assistant Attorney General
                                Civil Division

                                YAAKOV M. ROTH
                                Principal Deputy Assistant Attorney General
                                Civil Division

                                ERIC J. HAMILTON
                                Deputy Assistant Attorney General
                                Civil Division
                                Federal Programs Branch

                                TIBERIUS DAVIS
                                SEAN SKEDZIELEWSKI
                                Counsel to the Assistant Attorney General
                                Civil Division

                                BILAL A. ESSAYLI
                                First Assistant U.S. Attorney, Central District of
                                California

                                ALEXANDER K. HAAS
                                Director

                                JACQUELINE COLEMAN SNEAD
                                Assistant Director

15

ELISABETH J. NEYLAN
CRISTEN C. HANDLEY
Trial Attorneys
Civil Division, Federal Programs Branch
*Attorneys for the United States*

*/s/ Elisabeth J. Neylan*
ELISABETH J. NEYLAN (N.Y. Bar Reg. No.
6125736)
CRISTEN C. HANDLEY (MO Bar No. 69114)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 616-3519
Fax: (202) 616-8460
E-mail: Elisabeth.J.Neylan@usdoj.gov

*Attorneys for the United States*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the United States, certifies that this brief contains 4,924 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 5, 2026                    Respectfully submitted,

                                          */s/ Elisabeth J. Neylan*
                                          Elisabeth J. Neylan (N.Y. Bar Reg. No. 6125736)
                                          Trial Attorney
                                          United States Department of Justice