1  Rebecca Brown (SBN 345805)
2  rbrown@publiccounsel.org
   YI Li (SBN 354281)
3  yli@publiccounsel.org
   PUBLIC COUNSEL
4  610 South Ardmore Avenue
5  Los Angeles, CA 90005
   Tel: (213) 385-2977
6
7

FILED
CLERK, U.S. DISTRICT COURT

January 6, 2026

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CMJ___ DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

THE UNITED STATES OF AMERICA,

　　　　　　Plaintiff,

　　v.

STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of California, in his Official Capacity; ROBERT BONTA, Attorney General of California, in his Official Capacity,

　　　　　　Defendants.

Case No.: 2:25-cv-10999 CAS (AJRx)

**BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

---

Case No. 2:25-cv-10999
[PROPOSED] BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTEREST OF AMICI CURIAE ............................................................................ 1

INTRODUCTION ................................................................................................... 3

ARGUMENT ........................................................................................................... 4

I.    Ambushes by Masked and Unidentified Agents—Indistinguishable from Kidnappings—Escalate the Risk of Violence ........................................... 4

II.   Masked and Unidentified Law Enforcement Raids Create a Climate of Fear, Eviscerating Trust in Law Enforcement ..................................................... 8

CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hernandez v. Ashcroft*,
  345 F.3d 824 (9th Cir. 2003) .................................................................................. 9

*Vasquez Perdomo v. Noem*,
  790 F. Supp. 3d 850 (C.D. Cal. 2025) ............................................................ 4, 5, 6

**Statutes**

8 U.S.C. § 1101(a)(15)(T) ....................................................................................... 10

8 U.S.C. § 1101(a)(15)(U)(i)(I)–(IV) ...................................................................... 10

8 U.S.C. § 1101(a)(51) ............................................................................................ 10

8 U.S.C. § 1154(a)(1)(A)(iii) .................................................................................. 10

8 U.S.C. § 1154(a)(1)(B)(iii) .................................................................................. 10

Violence Against Women Act, Title IV, Pub. L. 103–322, 108 Stat. 1796,
  1902 (Sept. 13, 1994) ............................................................................................ 9

**Legislative Materials**

S.B. 627, 2025–2026 Gen. Assemb., Reg. Sess. (Cal. 2025) ............................... 3, 4

S.B. 627, Sen. Comm. on Pub. Safety, Reg. Sess. (Cal. 2025) ................................ 6

S.B. 805, 2025–2026 Gen. Assemb., Reg. Sess. (Cal. 2025) ............................... 3, 4

**Other Authorities**

Center for American Progress, *Masked and Unidentifiable: The Risks of Federal Law Enforcement Operating Without Identification* (Aug. 28, 2025), available at https://www.americanprogress.org/article/masked-and-unidentifiable-the-risks-of-federal-law-enforcement-operating-without-identification/ ................................................................................................ 7

Chow, Vivian, *Street Food Vendor Clings to Tree as Immigration Agents Detain Her in Landera Heights*, KTLA 5 (June 25, 2025), available at https://ktla.com/news/local-news/street-food-vendor-clings-to-tree-as-immigration-agents-detain-her-in-ladera-heights/ ................................................ 5

*FBI Warns of People Impersonating ICE Agents to Commit Violent Crimes*, ABC 7 (Nov. 6, 2025), available at https://abc7.com/post/fbi-warns-people-impersonating-ice-agents-to-commit-violent-crimes/18123387/ .................................................................................................. 9

Gonzalez, David, *OC Man Forcibly Detained by Border Patrol Agents in Santa Ana, Video Shows*, ABC 7 (June 23, 2025), available at https://abc7.com/post/oc-man-forcibly-detained-border-patrol-agents-santa-ana-video-shows-dhs-claims-he-assaulted/16830395/ ................................ 8

Jany, Libor, *Kidnappers or ICE Agents? LAPD Grapples with Surge in Calls from Concerned Citizens*, L.A. Times (July 3, 2025), available at https://www.latimes.com/california/story/2025-07-03/los-angeles-police-immigration-kidnappings ........................................................................ 7

Schlepp, Travis, *ICE Agents Make Arrest at Los Angeles Area Church*, KTLA 5 (June 11, 2025), available at https://ktla.com/news/local-news/ice-agents-make-arrest-at-los-angeles-area-church/#:%7E:text=Community%20members%20and%20religious%20leaders,in%20the%20church%20parking%20lot ..................................................... 6

Rahman, Billal, *ICE Agents' Mask Culture Shift Risks Street Violence: Obama's ICE Chief*, Newsweek (June 9, 2025), available at https://www.newsweek.com/ice-agent-fear-violence-obama-immigration-john-sandweg-2082700 ..................................................... 6

Jordan, Miriam, *He Raised Three Marines. His Wife Is American. The U.S. Wants to Deport Him.*, N.Y. Times (Sept. 17, 2025), available at ttps://www.nytimes.com/2025/09/17/us/narciso-barranco-ice-deport-marines-trump.html. ........................................................................................ 8

# INTEREST OF AMICI CURIAE

**Public Counsel,** based in Los Angeles, California, is a nonprofit public interest law firm dedicated to advancing civil rights and racial and economic justice, as well as amplifying the power of its clients through comprehensive legal advocacy. Founded in 1970 and strengthened by a pro bono legal service model, Public Counsel's staff and volunteers seek justice through direct legal services, promote healthy and resilient communities through education and outreach, and support community-led efforts to transform unjust systems in and beyond Los Angeles. Public Counsel provides pro bono placement and direct representation to individuals seeking asylum, withholding of removal, and relief under the Convention Against Torture. Our Immigrants' Rights team has decades of experience representing immigrants—including unaccompanied minors and families who enter the United States at or through the Mexican border—and currently represents hundreds of individuals seeking humanitarian relief. Public Counsel has a strong interest in ensuring that immigrants receive the full and fair process and benefits to which they are entitled.

**The Center for Human Rights and Constitutional Law ("CHRCL")** is a nonprofit organization based in California that provides training and technical support to direct legal service providers, addresses systemic injustice through advocacy and impact litigation, and advances and protects the rights of immigrants, refugees, children, and communities impacted by unlawful government policies. CHRCL has been counsel in a number of class action lawsuits protecting the rights of immigrants in California and nationwide, including in *Immgr. Ctr. for Women and Child. v. Noem*, No. 2:25-cv-09848-AB-AS (C.D. Cal.), *Flores v. Bondi*, No. CV 85-4544-DMG (AGRx) (C.D. Cal.), *Lucas R. v. Becerra*, No. CV 18-5741-DMG (PLAx) (C.D. Cal.), *Fanfan v. Noem*, Case No.: 25cv03291-DMS-BJW (S.D. Cal.). Through its work with immigrant clients and legal service

[PROPOSED] BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

providers, CHRCL is acutely aware of the impact of civil immigration enforcement on California communities.

**The Inland Coalition for Immigrant Justice ("ICIJ")** is a coalition composed of over 40 organizations in San Bernardino and Riverside County that collectively focus on policy advocacy, legal services, community organizing, and direct community services. ICIJ also manages the Rapid Response Hotline for the region, a hotline available for residents to call whenever they see or directly experience immigration enforcement in their community. Through this hotline, ICIJ has a direct pulse on the terror its communities are experiencing due to the unlawful raids carried out by violent, masked agents. This is why ICIJ was a proud cosponsor of SB 627, and why it continues to assert that California has the authority and obligation to regulate conduct within its borders that affect the public's safety.

**Immigrant Defenders Law Center ("ImmDef"),** is a nonprofit law firm based in Los Angeles, California, with additional offices in Riverside, Santa Ana, and San Diego. ImmDef defends immigrant communities against injustices in the immigration system and represents migrants facing removal or seeking asylum, withholding of removal, or relief under the Convention Against Torture. ImmDef envisions a future where no immigrant is forced to face that unjust immigration system alone. ImmDef also has a strong interest in ensuring that the federal government abides by the U.S. Constitution, as well as federal and state statutes and regulations while it conducts immigration enforcement operations, including by ensuring that agents identify themselves and are not masked, so that immigrants' rights are not violated in the course of such enforcement actions and immigrant communities do not fear interacting with law enforcement when they are victims of or witnesses to crimes.

**The American Civil Liberties Union Foundation of Southern California ("ACLU of Southern California")** is a nonprofit organization dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil

rights laws. The ACLU of Southern California's Immigrant Rights' Project uses litigation, advocacy, and public education to protect all immigrants – citizens and non-citizens alike – from unlawful arrests, discrimination and law enforcement abuses, and to ensure that they are afforded their due process rights. The ACLU has a longstanding commitment to preserving the constitutional rights of persons involved in encounters with law enforcement and have often participated in legal matters as parties or as friends to the court to address the legal issues that arise in such encounters. The ACLU of Southern California has frequently appeared before this Court, both as direct counsel and as *amicus curiae*, and has served as counsel in several class action lawsuits that protect the rights of immigrants in this country. Additionally, the California ACLU affiliates have engaged in efforts to monitor and reduce the disproportionate exercise of law enforcement authority upon communities of color, low-income communities, and other vulnerable populations. For example, they have sued on behalf of Latino students who were racially profiled, detained, and searched by police and school officials; intervened in litigation to ensure that local law enforcement may not confiscate individuals' property based on their immigration status; and pushed for public access to records revealing patterns of police use of automated license plate readers. Because this case concerns important questions regarding the scope of law enforcement authority, individuals' rights to be free from unreasonable searches, and the appropriate balance between the two, proper resolution of the matter is of significant concern to amici and their members.

## **INTRODUCTION**

In the wake of unprecedented federal immigration enforcement in Los Angeles and across California, the state legislature sought to protect Californians against ambushes by armed, masked, unidentified law enforcement agents. S.B. 627, 2025–2026 Gen. Assemb., Reg. Sess. (Cal. 2025); S.B. 805, 2025–2026 Gen. Assemb., Reg. Sess. (Cal. 2025). Amici can attest to the dangers of these practices.

[PROPOSED] BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

Since June, Public Counsel's clients, including children, street vendors, and survivors of violent crime, have been terrorized by immigration officers wearing balaclavas, ski masks, and other full-face coverings who refuse to identify themselves during immigration raids. CHRCL has provided legal assistance to several community members attacked by masked immigration agents during the indiscriminate raids, including the father of three United States Marines. These practices exacerbate violence by increasing the risk that targeted individuals or bystanders will attempt to defend themselves. They erode communities' trust in law enforcement by creating a climate of fear where immigrants are deterred from reporting even violent crime—to the detriment of all.

## ARGUMENT

### I. Ambushes by Masked and Unidentified Agents—Indistinguishable from Kidnappings—Escalate the Risk of Violence

In recent months, community members have been subjected to violent immigration raids.[1] Clients share a common story: Armed, masked, unidentified agents emerge from an unmarked car, descending on them without explanation or identification. Ex Parte Appl. for Temporary Restraining Order, *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850 (C.D. Cal. 2025) (No. 25-05605), *appeal docketed*, No. 25-4312 (9th Cir. July 14, 2025) (hereinafter "*Vasquez Perdomo* TRO Appl.") (collecting the raid descriptions of Plaintiffs Carlos Osorto, Pedro Vasquez Perdomo, and Isaac Villegas Molina).

- On June 18, Mr. Vasquez Perdomo was waiting at a bus stop across the street from Winchell's Donuts with co-workers when four cars converged on the

---

[1] As amici provide services to the immigrant community, the focus of this brief is specifically about the harm caused by immigration agents; however, S.B. 627 and S.B. 805 apply to all law enforcement agents state and federal. The law enforcement tactics the bills at hand address can create the same level of harm regardless of the agency involved.

location, and approximately a half dozen masked, unidentified, and armed agents closed in on them from either side. First Amended Complaint ¶¶ 111–12, *Vasquez Perdomo v. Noem*, No. 25-05605 (C.D. Cal. July 2, 2025) (hereinafter "*Vasquez Perdomo* Am. Compl."). The agents immediately grabbed the workers and coerced them into a vehicle without ever identifying themselves. *Id.* ¶¶ 112–13.

- On June 23, eight heavily armed, masked men surrounded a young woman street vendor at a Home Depot in Ladera Heights. *Id.* ¶ 60; Vivian Chow, *Street food vendor clings to tree as immigration agents detain her in Ladera Heights*, KTLA 5 (June 25, 2025).[2] Without identifying themselves, they arrested the woman and abruptly drove away, leaving tear gas in their wake. *Id.*

- On July 1, Camila B., a U-visa applicant, was selling tamales at her food stand when unidentified men approached her and demanded she show her papers. Declaration of Camila B. ¶ 17, *Immgr. Ctr. for Women and Child. v. Noem*, No. 2:25-cv-09848 (Nov. 14, 2025) (hereinafter "Camila B. Decl."). They handcuffed Camilia and her colleague and forced them into an unmarked car. *Id.* ¶¶ 17–18. Camila was terrified, believing that she had been kidnapped. *Id.* ¶ 18.

That immigration agents are continuing to conduct raids throughout Southern California ensures that these incidents are likely to continue for the foreseeable future, placing Californians at continued risk of harm.

Both to people subjected to enforcement and observers, these instances are indistinguishable from kidnappings. *Vasquez Perdomo* Am. Compl. ¶ 113 (averring that his apprehension felt "like a kidnapping"); *Vasquez Perdomo* TRO Appl. at 9–

---

[2] Available at https://ktla.com/news/local-news/street-food-vendor-clings-to-tree-as-immigration-agents-detain-her-in-ladera-heights.

10 (describing masked men tackling day laborers in what felt "like a disappearance"); *id.* at 9 (describing what appeared to be a "violent kidnapping" of a woman at Home Depot).

These masked ambushes—where agents arrive in unidentified vehicles and sometimes wearing civilian clothing— exacerbate dangers to people subjected to enforcement, bystanders, and law enforcement alike. People subjected to enforcement—believing they are facing a kidnapping or a possible vigilante attack—may attempt to flee or defend themselves while lacking information that they are before immigration agents. For example, Public Counsel's client C.O. had heard of masked vigilantes abducting community members. *Vasquez Perdomo* Am. Compl. ¶ 125; *See* S.B. 627, Sen. Comm. on Pub. Safety, Reg. Sess., 9 (2025) (documenting instances of vigilante violence). So, when a group of masked, armed men emerged from unmarked cars and ambushed C.O. at a bus stop, he tried to run. *Vasquez Perdomo* Am. Compl. ¶ 125. One of the men, without identifying himself as a federal agent, pointed a gun at C.O., yelling "stop or I'll use it!" *Id.*

Good Samaritans may also attempt to intervene—at their own peril. For example, when six agents with neck gaiters, hats, and sunglasses rushed out of unmarked vehicles to detain a man in the Downey Memorial Christian Church parking lot, Reverend Tanya Lopez attempted to speak to the detained man. *Vasquez Perdomo* Am. Compl. ¶ 58; Travis Schlepp, *ICE Agents Make Arrest at Los Angeles Area Church*, KTLA 5 (June 11, 2025).[3] An agent pointed a gun at her. Am. Compl.; *see also* Billal Rahman, *ICE Agents' Mask Culture Shift Risks Street Violence: Obama's ICE Chief*, Newsweek (June 9, 2025)[4] (reporting that former

---

[3] Available at https://ktla.com/news/local-news/ice-agents-make-arrest-at-los-angeles-area-church/#:%7E:text=Community%20members%20and%20religious%20leaders,in%20the%20church%20parking%20lot.

[4] Available at https://www.newsweek.com/ice-agent-fear-violence-obama-immigration-john-sandweg-2082700.

[PROPOSED] BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

Acting Director of ICE John Sandweg warned that masked agents "creates a risk of bystanders . . . rushing in to help, which could create the risk of violence or harm caused to the bystanders").

Masked ambushes endanger law enforcement officers as well. Faced with apparent extralegal violence, people subjected to enforcement may attempt to flee, creating potentially dangerous chases for officers and people fleeing alike. These masked ambushes also place local law enforcement in the line of fire, as they may be called to respond to apparent kidnappings or vigilante violence. Libor Jany, *Kidnappers or ICE Agents? LAPD Grapples with Surge in Calls from Concerned Citizens*, L.A. Times (July 3, 2025)[5] ("[Los Angeles Police Department] officials say that the department has responded to at least seven calls in which people contacted 911 to report a kidnapping that turned out to be an ICE operation"). In particular, local law enforcement risk being attacked by federal agents along with community members. *See* Center for American Progress, *Masked and Unidentifiable*: *The Risks of Federal Law Enforcement Operating Without Identification* (Aug. 28, 2025).[6]

Once these masked raids are completed, they leave families in the dark—experiencing a different kind of violence. When individuals are detained by masked and unidentified agents, family members may not know how to contact their loved one, which agency detained them, or where they are detained. *See Vasquez Perdomo* Am. Compl. ¶¶ 71, 88. This confusion robs families of critical time to locate their family members and secure legal representation before detained individuals are transferred far away from their care. Public Counsel's experience demonstrates that

---

[5] Available at https://www.latimes.com/california/story/2025-07-03/los-angeles-police-immigration-kidnappings.

[6] Available at https://www.americanprogress.org/article/masked-and-unidentifiable-the-risks-of-federal-law-enforcement-operating-without-identification.

any delay can be disastrous, as detained individuals are often transferred from the B-18, a temporary holding facility in Los Angeles, to Adelanto ICE Processing Center in Adelanto, California, hours away from Los Angeles, and then out of the state, beyond the reach of their family and legal resources. For example, when Public Counsel's client JACG was detained by unidentified federal agents after dropping off his eight-year-old daughter at her elementary school, he was transferred from the judicial district within a week.

When CHRCL client Narciso Barranco, an Orange County father of three U.S. Marines, was arbitrarily approached by masked agents while performing a gardening job, he attempted to flee out of fear. *See* David Gonzalez, *OC Man Forcibly Detained by Border Patrol Agents in Santa Ana, Video Shows*, ABC 7 (June 23, 2025).[7] The masked agents tackled and beat him into submission before rendering him and others to the notorious B-18 facility basement, where his family could not locate or visit him for days until CHRCL staff brought one of his sons to the facility during a legal visit. Miriam Jordan, *He Raised Three Marines. His Wife Is American. The U.S. Wants to Deport Him.*, N.Y. Times (Sept. 17, 2025).[8] He was eventually sent to Adelanto, where he remained for nearly a month before finally being released on bond, a period that was excruciating for his family. *Id.*

II. **Masked and Unidentified Law Enforcement Raids Create a Climate of Fear, Eviscerating Trust in Law Enforcement**

When communities witness their family members, friends, and neighbors taken away by masked and unidentified law enforcement officers, they receive the message that these agents could target anyone and use any level of violence with

---

[7] Available at https://abc7.com/post/oc-man-forcibly-detained-border-patrol-agents-santa-ana-video-shows-dhs-claims-he-assaulted/16830395.

[8] Available at https://www.nytimes.com/2025/09/17/us/narciso-barranco-ice-deport-marines-trump.html.

[PROPOSED] BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

impunity. In the wake of the recent immigration raids, Public Counsel clients fear leaving their home to buy necessities, to work, to attend church or school, to go to doctor's appointments, or even to pursue their pending immigration cases. *Vasquez Perdomo* TRO Appl. at 16–18 (describing how noncitizens and U.S. citizens alike are "living in fear"); *id.* at 12 (explaining how this "climate of fear and intimidation has been exacerbated by agents' and officers' appearance"); *id.* at 12 (one U.S. citizen recounting how ambushes by "masked individuals . . . in military attire, gear, and guns" "created a commotion and an environment of fear"). Masked and unidentified agents performing indiscriminate raids only exacerbate this climate of fear, by making it viable for immigrant communities, including U.S. citizens and noncitizens with status, to be exposed to people engaging in vigilantism and criminal acts taking advantage of the confusion. *See FBI Warns of People Impersonating ICE Agents to Commit Violent Crimes*, ABC 7 (Nov. 6, 2025).[9]

Without any way to discern the law enforcement agency responsible for these raids, immigrant communities are deterred from seeking help from local law enforcement. Amici have seen the effects firsthand. For instance, Public Counsel represents noncitizen survivors of rape, human trafficking, and severe physical and mental abuse who are seeking to secure legal status independent of their abusers. Congress created pathways for survivors of violence to obtain permanent lawful status to ensure that noncitizens are able to report and prosecute crime without fear of deportation. *See* Violence Against Women Act ("VAWA"), Title IV, Pub. L. 103–322, 108 Stat. 1796, 1902 (Sept. 13, 1994); *Hernandez v. Ashcroft*, 345 F.3d 824, 841 (9th Cir. 2003) ("[T]he goal of the bill is to 'permit[] battered immigrant women to leave their batterers without fearing deportation.'") (citation omitted).[10]

---

[9] Available at https://abc7.com/post/fbi-warns-people-impersonating-ice-agents-to-commit-violent-crimes/18123387.

[10] In service of this aim, Congress created three pathways to permanent status for survivors: First, VAWA empowers victims of domestic abuse suffered at the (continued…)

[PROPOSED] BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

But for these visas to effectively protect survivors and the greater public, survivors must be willing to come forward to report their abusers or attackers. By their very nature, these avenues rely on noncitizen survivors' trust in law enforcement.

Masked and unidentified immigration raids jeopardize these fragile relationships. For example, Public Counsel client Camila B., who has lived in Los Angeles for 23 years and has three U.S. citizen children, applied for a U visa after enduring a brutal assault at a bus stop. Declaration of Camila B. ¶¶ 2, 9–14. This May, U.S. Citizenship and Immigration Services granted her a bona fide determination, which allowed her to receive deferred action (protection from deportation). *Id.* ¶ 14. But on July 1, several unidentified men approached her at her tamale stand. *Id.* ¶ 17. Without explanation, they handcuffed her and forced her into an unmarked car. *Id.* Camila had no idea she was detained by ICE. *Id.* ¶ 18. She "only [knew] that [she] had been kidnapped." *Id.* Camila was held for a month, first at B-18 where she was forced to sleep on freezing concrete floors, and then at Adelanto, where she was treated "cruelly." *Id.* ¶¶ 21–22. She was released only after a pro bono attorney filed a habeas petition on her behalf. *Id.* ¶¶ 27–28. Camila views the federal government's targeting of her and people like her as deeply unjust, and reports that the raids "change[d]" her kids, and that her "children are not ok." *Id.* ¶ 16. Camila now associates the federal government with terror and "constant pain." *See id.*

Experiences like Camila's have eroded immigrant communities' trust in law enforcement, as immigration legal service providers represented by amici attest. *See*

---

hands of their U.S. citizen or Lawful Permanent Resident spouse to self-petition for an immigrant visa. 8 U.S.C. §§ 1101(a)(51), 1154(a)(1)(A)(iii), (B)(iii). Second, the "U Visa" provides a path to lawful status for noncitizen-victims of "substantial physical or mental abuse," suffered as a result of certain explicitly identified crimes who helped law enforcement investigate or prosecute those crimes. 8 U.S.C. § 1101(a)(15)(U)(i)(I)–(IV). Third, the "T visa" affords lawful status to victims of labor or sex trafficking. 8 U.S.C. § 1101(a)(15)(T).

[PROPOSED] BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

Declaration of Jessica Farb ¶ 11, *Immgr. Ctr. for Women and Child. v. Noem*, No. 2:25-cv-09848 (Nov. 14, 2025) ("[R]ecent ICE raids and enforcement actions in communities like Los Angeles—where officers have entered neighborhoods masked or without clear identification—have created renewed fear and confusion, challenging the trust that many immigrant communities have worked hard to build."). Organizations working with noncitizen survivors of violence have seen precipitous declines in applications for U and T visas. *Id.* ¶ 24 (noting that the Immigration Center for Women and Children has seen a decline in community outreach for U visa services); Declaration of Jordan Weiner ¶ 10, *Immgr. Ctr. for Women and Child. v. Noem*, No. 2:25-cv-09848 (Nov. 14, 2025) (noting that La Raza Centro Legal has seen a "drastic decline" in the number of people seeking U visa consultation, with many too scared to even enter the building). By deterring immigrant survivors of violence from reporting crimes, these masked and unidentified ambushes endanger all Californians.

## CONCLUSION

For the foregoing reasons, *amici curiae* respectfully request that this Court deny Plaintiff's Motion for Preliminary Injunction.

DATED: December 22, 2025                    Respectfully submitted,

**PUBLIC COUNSEL**

**By:**    */s/ Rebecca Brown*
          Rebecca Brown
          *Attorney for Amici Curiae*