UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | | Date | February 9, 2026 |
|---|---|---|---|---|
| Title | The United States of America v. State of California et al | | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                        Not Present

**Proceedings:**    (IN CHAMBERS) - PLAINTIFF THE UNITED STATES OF
AMERICA'S MOTION FOR PRELIMINARY INJUNCTION
(Dkt. 11, filed on November 25, 2025)

## I.    INTRODUCTION

Plaintiff, the United States of America ("the United States"), filed this action
against the State of California, California Governor Gavin Newsom, and California
Attorney General Robert Bonta (collectively, "California") on November 17, 2025, to
challenge the constitutionality and prevent the enforcement of two recently-enacted state
laws: SB 627 (the "No Secret Police Act") and SB 805 (the "No Vigilantes Act"). Dkt. 1
("Compl."). The Complaint alleges that the No Secret Police Act and the No Vigilantes
Act violate the Supremacy Clause of the United States Constitution by directly regulating
the federal government. Id. ¶ 8. The Complaint also alleges that the No Secret Police
Act violates the Supremacy Clause by discriminating against the federal government. Id.
at ¶ 9.

On November 25, 2025, the United States filed a motion for a preliminary
injunction to enjoin California from enforcing the challenged provisions of the No Secret
Police Act and No Vigilantes Act. Dkt. 11 ("Mot.").[1] On December 22, 2025, California

---

[1] The United States also filed several supporting fact declarations. Dkt. 11-2 ("Albarran
Decl."), dkt. 11-3 ("Vargas Decl."), dkt. 11-4 ("Glasheen Decl."), dkt. 11-5 ("Allen
Decl.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title | The United States of America v. State of California et al | | |

filed an opposition.  Dkt. 29 ("Opp.").[2]  On January 5, 2026, the United States filed a reply in support of its preliminary injunction motion.  Dkt. 42 ("Reply").

In addition to these submissions, the Court granted the following amici leave to file amicus briefs: Prosecutors Alliance Action, dkt. 46; Public Counsel, the Center for Human Rights and Constitutional Law, the Inland Coalition for Immigrant Justice, Immigrant Defenders Law Center, and the American Civil Liberties Union Foundation of Southern California, dkt. 48; the Center for Policing Equity, the Yale Law School Justice Collaboratory, and the National Immigration Law Center, dkt. 50; Public Rights Project, on behalf of local government leaders from across the state of California, dkt. 52; and Asian Americans Advancing Justice Southern California and the Sikh American Legal Defense and Education Fund, dkt. 54.

On January 14, 2026, the Court held a hearing.  Having carefully considered the parties' arguments, and the submissions of amici, the Court finds and concludes as follows.

## II.   RELEVANT BACKGROUND

The following facts are alleged in the complaint and evidentiary record.

### A.   The Challenged Acts

The No Secret Police Act and the No Vigilantes Act were signed into law by California Governor Gavin Newsom on September 20, 2025, in response to recent federal enforcement operations in California.  Compl. ¶¶ 3, 4-5.  The Acts were set to take effect on January 1, 2026, but California agreed to stay enforcement of the laws against federal law enforcement agencies or officers, until such time as the Court rules on the United States' instant motion for a preliminary injunction.  Id.; dkt. 20.

---

[2] California also filed several supporting fact declarations.  Dkt. 29-2 ("Bell Decl."), dkt. 29-3 ("Shuchart Decl."), dkt. 29-4 ("Wong Decl."), dkt. 29-5 ("Schrader Decl."), dkt. 29-6 ("Franklin Decl."), dkt 29-7 ("Hurst Decl."), dkt. 29-8 ("Velez Decl."), dkt. 29-9 ("Shouhed Decl."), dkt. 29-10 ("Mundwiler Decl."), dkt. 29-11 ("Speranza Decl."), dkt. 29-12 ("Le Blanc Decl."), dkt. 29-13 ("Miranda Decl."), dkt. 29-14 ("Anderson Decl."), dkt. 29-15 ("Solorzano Decl."), dkt. 29-16 ("Aguiluz Decl."), dkt. 29-17 ("De La Riva Decl."), dkt. 29-18 ("Carrasco Decl.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title    | The United States of America v. State of California et al | | |

1.      The No Secret Police Act (SB 627)

The No Secret Police Act prohibits any law enforcement officer from wearing a facial covering in the performance of his duties, except as specified, unless the agency employing the officer has posted a compliant policy regarding facial coverings. SB 627 § 3 ("facial covering prohibition"). The Act permits a law enforcement officer to wear a facial covering in the following excepted circumstances: Special Weapons and Tactics (SWAT) team duties; active undercover operations or assignments authorized by supervising personnel or court order; tactical operations where protective gear is required for physical safety; occupational health and safety; protection of identity during prosecution; and reasonable accommodations. Id. § 2(b)(3), § 3(c). The Act defines a law enforcement officer as a peace officer, as defined in Cal. Penal Code § 830, employed by a city, county, or other local agency as well as any officer or agent of a federal law enforcement agency or any law enforcement agency of another state or any person acting on behalf of a federal law enforcement agency or law enforcement agency of another state. Id. § 3(e). This definition does not include law enforcement officers employed by the State of California. The Act makes a willful and knowing violation of this provision punishable as an infraction or a misdemeanor. Id. § 3(d).

The Act also provides that any person who is found to have committed assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution while wearing a facial covering in a knowing and willful violation of SB 627 § 3 shall not be entitled to assert any privilege or immunity for his tortious conduct against a claim of civil liability and shall be liable for the greater of actual damages or statutory damages of $10,000. Id. § 3(g).[3]

The Act also requires any law enforcement agency operating in California to, by July 1, 2026, maintain and publicly post a written policy regarding the use of facial coverings. SB 627 § 2 ("policy statement provision"). The Act defines a law enforcement agency as any entity of a city, county, or other local agency, that employs a peace officer described in Cal. Penal Code § 830, any law enforcement agency of another state, and any federal law enforcement agency. Id. § 2(d)(2). This definition does not

---

[3] This civil liability provision is not within the scope of the United States' challenge under the intergovernmental immunities doctrine because its application against federal officers exercising federal duties is already limited by existing laws that restrict civil actions against federal officers for tortious conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

include California state agencies.  The criminal penalties of § 3(d) do not apply to any
law enforcement officer acting in their capacity as an employee of a law enforcement
agency that complies with the policy statement provision in § 2.  Id. § 3(f).

The No Secret Police Act declares its provisions to be severable.  Id. § 4.  The
United States challenges the policy statement provision and the facial covering
prohibition as unconstitutional.

2.      The No Vigilantes Act (SB 805)

The No Vigilantes Act requires any law enforcement officer operating in
California to visibly display identification that includes their agency and either a name or
badge number to the public when performing their enforcement duties.[4]  SB 805 § 10
("visible identification provision").  This requirement does not apply to any officer
engaged in active undercover operations or investigative activities, exigent
circumstances, SWAT operations, and other limited circumstances.  Id. § 10(b).  The Act
makes a willful and knowing violation of this provision punishable as a misdemeanor.
Id. § 10(c).  For the purpose of this provision, the Act defines law enforcement duties as
"active and planned operations involving the arrest or detention of an individual, or
deployment for crowd control purposes," and it defines a law enforcement officer as any
peace officer as defined in Cal. Penal Code § 830, and any federal law enforcement
officer.  Id. § 10(d).  This definition includes California state law enforcement officers.

The Act also requires law enforcement agencies operating in California to maintain
and publicly post a written policy on the visible identification of sworn personnel.
SB 805 § 2 ("policy statement provision").  The Act defines a law enforcement agency as
any state or local entity that employs a peace officer described in Cal. Penal Code § 830,
any law enforcement agency of another state, and any federal law enforcement agency.
Id. § 2(c)(2).  This definition includes California state agencies.  Section 10 and its
penalties do not apply to personnel of a law enforcement agency that complies with the
policy statement provision in § 2.  Id. § 10(e).

---

[4] Both parties agree that uniformed and non-uniformed federal officers are covered by SB
805 § 10(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title | The United States of America v. State of California et al | | |

The No Vigilantes Act declares its provisions to be severable. Id. § 11. The United States challenges the policy statement provision and the visible identification provision as unconstitutional.

**B.    The United States Files Suit**

The United States filed this action alleging that the provisions of the No Secret Police Act and the No Vigilantes Act that apply to federal law enforcement agencies and officers violate the Supremacy Clause of the United States Constitution and the intergovernmental immunity doctrine by impermissibly regulating the federal government. Compl. ¶¶ 72-78. Alternatively, the United States argues that the No Secret Police Act discriminates against the United States because it does not apply to all California law enforcement officers. Id. ¶¶ 80-85. The United States does not allege that the No Vigilantes Act unlawfully discriminates against the federal government. The United States asserts that federal law enforcement agencies cannot and will not comply with the challenged Acts, which the United States claims are unconstitutional and recklessly disregard officers' safety and federal operational needs. Id. ¶¶ 51, 68. The United States alleges that the threat of criminal prosecution facing individual federal officers will have the likely effect of impeding federal law enforcement in California. Id. ¶ 70.

## III.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20; accord Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011) (interpreting Winter and explaining that the "sliding scale" test for preliminary injunctive relief remains valid). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." Bernhardt v. Los Angeles Cty., 339 F.3d 920, 926 (9th Cir. 2003) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief. <u>Winter</u>, 555 U.S. at 22; <u>Am. Trucking</u>, 559 F.3d at 1052. It is not enough that the claimed harm be irreparable—it also must be imminent. <u>Caribbean Marine Servs. Co. v. Baldrige</u>, 844 F.2d 668, 674 (9th Cir. 1988). Conclusory affidavits are insufficient to demonstrate irreparable harm. <u>Am. Passage Media Corp. v. Cass Commc'ns, Inc.</u>, 750 F.2d 1470, 1473 (9th Cir. 1985).

## IV.    DISCUSSION

### A.    Standing

The United States argues that it has pre-enforcement standing to bring this suit to enjoin California's laws before they take effect. Mot. at 9. The United States argues that it satisfies the requirements for pre-enforcement standing by asserting "an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by a [state] statute, and there exists a credible threat of prosecution thereunder." <u>Id.</u> (quoting <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 159 (2014)). The United States argues that the very fact that a state is attempting to regulate the conduct of the federal government inflicts a "sovereign injury" on the United States. <u>Id.</u> Beyond sovereign injury, the United States argues that the two challenged Acts threaten the strong federal interest in the zealous enforcement of the law by reducing the number of federal law enforcement officers willing to engage in certain operations without the discretion to conceal their identities. <u>Id.</u> at 10. The United States clearly asserts that it will not direct its law enforcement agencies or officers to comply with the two challenged Acts. <u>Id.</u> (citing Albarran Decl. ¶ 9; Vargas Decl. ¶¶ 7, 23; Allen Decl. ¶ 13; Glasheen Decl. ¶ 15). The United States argues that as a consequence, federal officers are threatened with state criminal prosecution. <u>Id.</u> The United States argues that public statements of state officials are evidence that the threat of future enforcement against federal agencies and officers is substantial. <u>Id.</u> at 10-11.

In opposition, California argues that the United States does not satisfy the standard for pre-enforcement standing. Opp. at 11. First, California argues that the United States' claims that the challenged Acts will likely deter law enforcement officers from taking safety measures or reduce the number of officers willing to engage in certain operations are merely conjectural and do not establish an actual or imminent injury. <u>Id.</u> at 11-12. Second, California argues that the United States' declarants' statements are equivocal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | | Date | February 9, 2026 |
|---|---|---|---|---|
| Title | The United States of America v. State of California et al | | | |

such that they do not constitute a concrete plan to violate the state laws.  Opp. at 12.
Specifically, California cites to statements that the agencies will violate the state laws
where "appropriate to do so," Glasheen Decl. ¶ 15, or that the state laws "interfere with
discretion to authorize" uniform and facial-covering modifications, Vargas Decl. ¶ 19.
Id.  Third, California argues that even if the United States unequivocally refused to
comply with the policy statement provisions of the two challenged Acts, such
noncompliance would not establish a credible threat of prosecution because the
challenged Acts provide no penalties for noncompliance with the policy statement
provisions.  Id. (citing Cal. Gov't Code §§ 7288, 7289).  California argues that each law's
policy statement provision is merely a safe harbor, exempting law enforcement officers
from prosecution if their agency complies.  Id. (citing Cal. Penal Code § 185.5(f),
13654(e)).  Finally, California argues that the United States has not shown that
prosecuting authorities have communicated a specific warning or threat to initiate
proceedings, and that a generalized threat of prosecution is insufficient.  Id.  California
contends that certain officials' public statements which communicate a general openness
to charging federal officers with violations of state law do not evince a specific intention
to charge officers with violations of these particular laws.  Id. at 12-13.

    In reply, the United States argues that the federal government has unequivocally
stated that ICE officers will not comply with either law, and that federal officers will
continue exercising their discretion to use masks and to not display their identification in
appropriate circumstances.  Reply at 2-3.  The United States asserts that "no federal
agency intends to issue the policy statements that California requires."  Id. at 3.  The
United States argues that it has the sovereign authority to manage federal law
enforcement activity and need not cede that authority to California by complying with
California's purported requirements for federal law enforcement officers.  Id.  The United
States contends that this "sovereign injury" alone suffices to establish standing.  Id.
Additionally, the United States argues that California's refusal to disavow enforcement of
the challenged Acts and California's new online portal for the public to report
misconduct by federal officers across California are evidence that the state intends to
enforce the laws.  Id. at 2-4.

    "Whether the question is viewed as one of standing or ripeness, the Constitution
mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or
controversy,' that the issues presented are 'definite and concrete, not hypothetical or
abstract.'" Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

2000) (en banc) (quoting <u>Railway Mail Ass'n v. Corsi</u>, 326 U.S. 88, 93 (1945)). "The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." <u>Id.</u> at 1138. Article III requires the United States as plaintiff to demonstrate a concrete injury that is fairly traceable to the conduct of the defendant and judicially redressable. <u>See Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016).

"For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future. One need not violate a criminal law and risk prosecution in order to challenge the law's constitutionality." <u>Peace Ranch, LLC v. Bonta</u>, 93 F.4th 482, 487 (9th Cir. 2024) (citing <u>Steffel v. Thompson</u>, 415 U.S. 452, 459 (1974)). To establish pre-enforcement standing, a plaintiff must allege the following three factors: (1) an "intention to engage in a course of conduct arguably affected with a constitutional interest," (2) the conduct is "proscribed by a statute," and (3) there must be "a credible threat of prosecution" under the statute. <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 159 (2014) (quoting <u>Babbitt v. Farm Workers</u>, 442 U.S. 289, 298 (1979)).

Here, the Court finds that the United States has established the first two <u>Driehaus</u> factors with respect to the two challenged Acts. The United States and its supporting declarants have asserted multiple times that federal law enforcement agencies and officers intend to engage in federal law enforcement activities that are not in compliance with the No Secret Police Act or the No Vigilantes Act. <u>See</u> Compl. ¶¶ 11, 15, 51, 68; Albarran Decl. ¶¶ 9, 20; Vargas Decl. ¶¶ 7, 23; Glasheen Decl. ¶ 15; Allen Decl. ¶¶ 13, 19.

With regard to the third <u>Driehaus</u> factor, the Court finds that there is a credible threat of prosecution under the statutes for federal law enforcement officers who violate either the facial covering prohibition of the No Secret Police Act, SB 627 § 3, or the visible identification provision of the No Vigilantes Act, SB 805 § 10. Notwithstanding the stipulated stay of enforcement pending resolution of the instant motion for a preliminary injunction, California has not disavowed its intent to enforce the two challenged Acts against federal officers. "Here, the state's refusal to disavow enforcement . . . is strong evidence that the state intends to enforce the law and that [plaintiff] face[s] a credible threat." <u>California Trucking Ass'n v. Bonta</u>, 996 F.3d 644, 653 (9th Cir. 2021); <u>see also Peace Ranch, LLC v. Bonta</u>, 93 F.4th 482, 490 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

2024) ("This final prong often rises or falls with the enforcing authority's willingness to disavow enforcement.").

However, the Court also finds that the third <u>Driehaus</u> factor has not been established by the United States with respect to the two challenged Acts' policy statement provisions because these provisions do not carry any penalties for noncompliance, and there will not be any compliance costs because "no federal agency intends to issue the policy statements that California requires." Reply at 3.[5] Thus, the United States has not "demonstrate[d] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." <u>Babbitt v. United Farm Workers Nat. Union</u>, 442 U.S. 289, 298 (1979). Therefore, the United States has standing to challenge only the provisions of the challenged Acts for which there are substantial and credible risks of prosecution: the No Secret Police Act's facial covering prohibition and the No Vigilante Act's visible identification provision. Accordingly, to the extent that the United States' motion for a preliminary injunction seeks to enjoin the policy statement provision of either law, the motion is denied on the grounds that the United States lacks standing.

### B.  Facial Challenge

California argues that the United States has not satisfied the standard for bringing a facial challenge to either the facial covering prohibition or the visible identification provision. Opp. at 17. California argues that the United States cannot show that, in all circumstances, masking or concealing identification by federal officers is both subjectively necessary and objectively reasonable. <u>Id.</u> California argues that whether an individual federal officer is immune from state prosecution under Supremacy Clause immunity depends on specific facts and should be litigated as an as-applied challenge. <u>Id.</u> at 17-18.

In reply, the United States argues that its facial challenges are proper, and that it need not show that Supremacy Clause immunity protects individual officers from

---

[5] Even if a federal agency intended to comply with either policy statement provision, compliance costs would not confer standing to challenge the policy statement provisions because the compliance costs would be voluntarily incurred. <u>See</u> <u>Twitter, Inc. v. Paxton</u>, 56 F.4th 1170, 1176 (9th Cir. 2022) (actions taken by plaintiff in response to a civil investigative demand, which "is not self-enforcing," were insufficient to create an Article III injury "because the actions were voluntary.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title | The United States of America v. State of California et al | | |

prosecution in all circumstances.  Reply at 9-10.  Instead, the United States argues that the provisions of the two challenged Acts are facially invalid because there is no circumstance in which it would be lawful for California to require federal agencies to adopt California's preferred policies or to remove discretion from federal agencies and officers to determine their unform and identification practices.  Id. at 10.  In other words, the United States argues that the challenged Acts are facially invalid because they violate the Supremacy Clause.  Id. at 11.

Supremacy Clause immunity and the intergovernmental immunity both arise out of the Supremacy Clause of the Constitution and are employed by the federal government to challenge the enforcement of state laws.  However, the doctrines are applied at different stages of enforcement, by different parties, and require different inquiries.  Supremacy Clause immunity can be raised by a federal officer being prosecuted for a violation of state law, and the officer must show that "his acts are both (1) authorized by the laws of the United States and (2) necessary and proper to the execution of his responsibilities." Morgan v. People of State of Cal., 743 F.2d 728, 731 (9th Cir. 1984) (citing In re Neagle, 135 U.S. 1, 75 (1890); Connecticut v. Marra, 528 F. Supp. 381, 385 (D. Conn. 1981)). On the other hand, the intergovernmental immunity doctrine can be raised by the United States to challenge the validity of a state law, as in the instant case.  Under the intergovernmental immunity doctrine, "[a] state regulation is invalid only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." North Dakota v. United States, 495 U.S. 423, 435 (1990).  The Court finds that the challenged Acts are each subject to facial challenges as potentially violating the intergovernmental immunity doctrine, irrespective of whether Supremacy Clause immunity would bar state prosecutions of federal officers for violating the Acts in only some or in all circumstances.  Nonetheless, as the Court explains further below, the availability of a Supremacy Clause immunity defense to individual officers facing prosecution for the violation of state laws during the exercise of federal duties informs the Court's analysis of how the intergovernmental immunity doctrine protects "the delicate balance between federal and state law enforcement powers." Com. of Ky. v. Long, 837 F.2d 727, 749 (6th Cir. 1988).  Accordingly, the Court proceeds to consider the United States' claims that the challenged provisions are facially invalid under the intergovernmental immunity doctrine.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title | The United States of America v. State of California et al | | |

### C.    Preliminary Injunction

The Court considers the four <u>Winter</u> factors in turn.

####     1.    Likelihood of Success on the Merits

The United States argues that the challenged provisions violate the Supremacy Clause of the Constitution. Mot. at 11. "Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." <u>Arizona v. United States</u>, 567 U.S. 387, 398 (2012). "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." <u>Gregory v. Ashcroft</u>, 501 U.S. 452, 458 (1991). "In the tension between federal and state power lies the promise of liberty." <u>Id.</u> at 459.

The Supremacy Clause mandates that the Constitution and the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. This principle of federal supremacy gives Congress the power to preempt state law. <u>Arizona v. United States</u>, 567 U.S. 387, 399 (2012). "State action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." <u>Lorillard Tobacco Co. v. Reilly</u>, 533 U.S. 525, 541 (2001) (internal citations omitted).

Here, the United States does not invoke express preemption, implied field preemption, or conflict preemption as bases for its challenge to the Acts. There is no federal law or regulation that requires federal law enforcement officers to wear facial coverings or to conceal their agency, name, or badge number while exercising federal law enforcement duties. In fact, some federal laws and regulations require visible identification in certain circumstances. <u>See e.g.</u>, 10 U.S.C. § 723(a) (federal law enforcement personnel are required to visibly display their name or other identifier and the name of the federal agency they serve when responding to a civil disturbance); 8 C.F.R. §287.8(c)(2)(iii)(A) (2025) (DHS regulations require ICE agents to identify themselves as immigration officers at the time of any arrest). Furthermore, no federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title | The United States of America v. State of California et al | | |

agency has a policy that affirmatively requires its law enforcement officers to wear facial
coverings for the purpose of concealing their identity, and no agency policy prohibits its
law enforcement officers from wearing visible identification as required by the No
Vigilantes Act.

Instead, the United States invokes the intergovernmental immunity doctrine. "The
doctrine of intergovernmental immunity arose from the Supreme Court's decision in
McCulloch v. Maryland, which established that 'the states have no power, by taxation or
otherwise, to retard, impede, burden, or in any manner control, the operations of the
constitutional laws enacted by congress to carry into execution the powers vested in the
general government.'" United States v. City of Arcata, 629 F.3d 986, 991 (9th Cir. 2010)
(quoting McCulloch, 17 U.S. 316, 317 (1819)) (internal citation omitted). Today, the
intergovernmental immunity doctrine "generally immunizes the Federal Government
from state laws that [1] directly regulate or [2] discriminate against it." United States v.
Washington, 596 U.S. 832, 835 (2022) (citing South Carolina v. Baker, 485 U.S. 505,
523 (1988)). If a state law either directly regulates or discriminates against the federal
government, intergovernmental immunity applies "unless Congress provides 'clear and
unambiguous' authorization for such regulation." Goodyear Atomic Corp. v. Miller, 486
U.S. 174, 180 (1988) (quoting EPA v. State Water Res. Control Bd., 426 U.S. 200, 211
(1976)). Here, California does not claim any such congressional authorization.
Therefore, the challenged provisions violate the Supremacy Clause if they either directly
regulate the federal government or discriminate against it.

a)   Direct Regulation of the Federal Government

The United States argues that the express terms of the Acts directly regulate the
federal government by "constraining the conduct of federal agents." Mot. at 13 (quoting
United States v. City of Arcata, 629 F.3d 986, 991 (9th Cir. 2010)). The No Secret Police
Act prohibits "any officer or agent of a federal law enforcement agency," SB 627 § 3(e),
from "wear[ing] a facial covering that conceals or obscures their facial identity in the
performance of their duties," SB 627 § 3(a). Mot. at 13. The No Vigilantes Act requires
"any federal law enforcement officer," SB 805 § 10(d)(2), to "visibly display
identification," SB 805 § 10(a). Mot. at 13. The United States argues that the challenged
provisions are direct regulations because enforcement against the federal government
would substantially hamper federal operations. Id. (citing CoreCivic, Inc. v. Governor of
New Jersey, 145 F.4th 315, 327 (3d Cir. 2025); Pub. Utils. Comm'n of State of Cal. v.
United States, 355 U.S. 534, 543 (1958)). The United States argues that the Acts risk

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

chilling federal activities by subjecting federal officers to criminal liability for
noncompliance, and that states cannot subject federal officers to state criminal liability
for actions undertaken in accordance with federal law. Id. at 14 (citing Tennessee v.
Davis, 100 U.S. 257, 263 (1879); In re Neagle, 135 U.S. 1, 75 (1890)). The United States
also argues that if federal officers were forced to comply with the challenged Acts, they
would be publicly exposed to doxxing, harassment, assaults, and threats. Mot. at 14. The
United States contends that permitting officers to wear masks or to conceal their identity
is critical or may be necessary to protect agents' safety and to mitigate the risk of evasion
by investigative subjects. Id. For these reasons, the United States concludes that the
challenged provisions threaten to "destroy the federal function" of law enforcement in
California. Id. at 15 (quoting United States v. Fresno Cnty., 429 U.S. 452, 463 n.11
(1977)).

In opposition, California argues that each of the challenged provisions is a
legitimate exercise of California's police powers that "at most, only incidentally affects"
federal immigration and law enforcement. Opp. at 13 (quoting Texas v. United States
Dep't of Homeland Sec., 123 F.4th 186, 205 (5th Cir. 2024)). California argues that by
regulating facial coverings that are merely incidental to law enforcement officers' duties,
the facial covering prohibition of the No Secret Police Act does not control, impede, or
grant "virtual power of review" over federal law enforcement activities, and therefore it
does not amount to an unconstitutional direct regulation. Id. (quoting Geo Grp., Inc. v.
Inslee, 151 F.4th 1107, 1117 (9th Cir. 2025)). Similarly, California argues that the
visible identification provision of the No Vigilantes Act does not run afoul of
intergovernmental immunity because it is a generally applicable statute that does not
threaten to "transform," "prevent," or "destroy" federal law enforcement functions. Id. at
16 (quoting Geo Grp., Inc. v. Newsom, 50 F.4th 745, 750 (9th Cir. 2022); Inslee, 151
F.4th at 1118; and Mot. at 15). California argues that federal officers are not per se
immune from liability under either the No Secret Police Act or the No Vigilantes Act
because the United States cannot show that noncompliance is always necessary and
proper to carrying out federal law enforcement duties. Opp. at 14, 17 (citing Clifton v.
Cox, 549 F.2d 722, 729-30 (9th Cir. 1977)). Therefore, California argues that it may
properly enact and enforce these generally applicable criminal laws. Id. at 15. California
contends that the provisions are consistent with how federal law enforcement officers
have operated for decades and that the Acts' broad exceptions accommodate a wide range
of law enforcement activities, such as undercover operations, investigative activities,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

exigent circumstances, and officers engaged in SWAT or tactical-team responsibilities.
Id. at 16-17.

In reply, the United States argues that the challenged Acts do not merely
incidentally impact federal operations but rather "regulate federal agencies and officers
down to minute details subject to criminal prosecution." Reply at 5. The United States
argues that Ninth Circuit precedent invalidating less intrusive regulations supports its
position. Id. The United States contends that the obligations of the challenged Acts, if
enforced, will substantially burden the federal government's operations. Id. at 6. And
the United States argues that California has no historic police power to regulate federal
agencies' policies or federal officers' uniforms and gear. Id. Furthermore, the United
States argues that whether the ill effects of the challenged Acts could be mitigated
through their narrow exceptions or other measures is irrelevant because California has no
authority to impose these requirements on federal officers in the first place. Id. at 6 n.6.
The United States argues that California's contention that the challenged Acts do not
prohibit the federal government from enforcing federal law misses the point because
states cannot "constrain" or "control" the conduct of federal officials. Id. at 7-8 (citing
United States v. City of Arcata, 629 F.3d 986, 991 (9th Cir. 2010); Johnson v. Maryland,
254 U.S. 51, 56-57 (1920).

The Court first considers whether the challenged provisions are within the powers
reserved to the states by the Tenth Amendment of the Constitution. Cf. United States v.
City of Arcata, 629 F.3d 986, 992 (9th Cir. 2010) (challenged ordinance "regulating the
federal government's military recruitment efforts is not a power reserved to the states.").
Here, unlike in Arcata, the challenged provisions, restricting law enforcement officers in
California from wearing masks indiscriminately and requiring visible identification, are
within the state's police powers. See Buchanan v. Warley, 245 U.S. 60, 74 (1917) ("The
authority of the state to pass laws in the exercise of the police power, having for their
object the promotion of the public health, safety and welfare is very broad."); see also
Gonzales v. Raich, 545 U.S. 1, 42 (2005) (O'Connor, J., dissenting) ("The States' core
police powers have always included authority to define criminal law and to protect the
health, safety, and welfare of their citizens.") (citing cases).

But an exercise of state police powers may still violate the intergovernmental
immunity doctrine if it directly regulates the federal government—i.e., if the law itself
obstructs the federal government's operations. See United States v. California, 921 F.3d
865, 880 (9th Cir. 2019) ("[T]he United States' position that no obstruction is required in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

intergovernmental immunity cases ignores the origins of the doctrine and the occasions in which it has been applied."). The Supremacy Clause commands that "[t]he United States may perform its functions without conforming to the police regulations of a state." State of Arizona v. State of California, 283 U.S. 423, 451 (1931).

Accordingly, courts take "a functional approach to claims of governmental immunity, accommodating of the full range of each sovereign's legislative authority and respectful of the primary role of Congress in resolving conflicts between the National and State Governments." North Dakota v. United States, 495 U.S. 423, 435 (1990); see also Com. of Ky. v. Long, 837 F.2d 727, 749 (6th Cir. 1988) ("Under principles announced long ago in McCulloch v. Maryland, the national government cannot be made to tolerate undue interference from the states in the enforcement of federal law. But neither should any state be made to tolerate unwarranted interference with its duty to protect the health and welfare of its citizens.").

Therefore, the determination of whether a state law "directly regulates" the federal government in violation of intergovernmental immunity demands a functional inquiry into whether the regulations at issue "interfer[e] with or control[] the operations of the Federal Government." United States v. Washington, 596 U.S. 832, 838 (2022); see also Com. of Ky. v. Long, 837 F.2d 727, 746 (6th Cir. 1988) ("But while it is necessary for federal officials to be able to enforce federal laws without undue interference from the states, on the other hand the Supremacy Clause was not intended to be a shield for 'anything goes' conduct by federal law enforcement officers."). The critical question is whether state laws "affect incidentally the mode of carrying out [federal] employment," or rather seek to "control" federal functions. Johnson v. State of Maryland, 254 U.S. 51, 56-57 (1920).

"Applying the functional approach that intergovernmental immunity demands," CoreCivic, Inc. v. Governor of New Jersey, 145 F.4th 315, 325 (3d Cir. 2025), the Court finds that the United States has not met its burden to show that enforcement of the challenged provisions, which prohibit law enforcement officers in California from wearing masks and require law enforcement officers in California to have visible identification, would interfere with or take control of federal law enforcement operations. Although the challenged provisions dictate how a federal officer may carry out his law enforcement duties—prohibiting a facial covering and requiring the display of visible identification that includes their agency and either a name or badge number in non-exempted circumstances—the Court finds them analogous to traffic laws that, in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

similar sense, dictate how a federal officer may operate a vehicle on state roads but are nonetheless enforceable against federal officers, subject to immunities.

The United States has not shown that its current practices with respect to masking and identification are essential to federal law enforcement operations such that state regulations in those areas seek to interfere with or control federal law enforcement functions. At the hearing and in its briefing, the United States argued that discretionary policies for masking and identification are critical to officer safety because the exposure of federal agents' identities subjects those agents to greater risks of being doxxed, harassed, assaulted, or threatened. The United States points to its supporting declarations which cite increases in threats and assaults against federal officers and detail specific incidents of federal officers suffering such harms. The United States argues that these increased risks, in turn, increase security costs the federal government incurs to protect its officers. The Court recognizes that federal law enforcement officers, like many public figures, including judges, politicians, and celebrities, are exposed to the risk of being doxxed, harassed, assaulted, or threatened by virtue of their public occupations. The Court does not discount these real harms that impact federal officers. However, these harms are the result of criminal behavior.[6] A rule that prohibits law enforcement officers from wearing masks or requires them to have visible identification does not facilitate or enable criminals to harm law enforcement officers.

At the hearing, the United States argued that federal law enforcement, specifically immigration law enforcement, is already more difficult in states and cities with "sanctuary" policies prohibiting cooperation between federal and local law enforcement, and the political environment and heightened rhetoric around federal immigration enforcement makes federal officers' jobs particularly dangerous. But the United States has not adequately explained how discretionary masking and identification policies are essential to the operations or safety of federal law enforcement amid this tense political environment. Security concerns exist for federal law enforcement officers with and without masks. If anything, the Court finds that the presence of masked and unidentifiable individuals, including law enforcement, is more likely to heighten the

---

[6] California law prohibits doxxing, stalking, criminal threats, assaults, and resisting executive officers. See, e.g., Cal. Pen. Code § 653.2; 646.9; 422; 241; and 69. Federal law also prohibits certain threats, 18 U.S.C. § 875, and assaulting, resisting, or impeding federal officers, 18 U.S.C. § 111.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

sense of insecurity for all.  <u>See</u> dkt. 48 at 6-7.  Moreover, the notion that it is necessary for federal law enforcement officers to conceal their identification is belied by the historical tradition of law enforcement officers not masking their identities and the current practice of some federal officers who choose to expose their identity alongside colleagues with masks.  <u>See</u> Schrader Decl. ¶¶ 7, 18-20.  If masking or concealing identification were as critical to federal operations as the United States asserts, the Court would expect that federal agencies would not leave such decisions to the discretion of individual officers.  But notably, no federal law or agency regulation explicitly requires masking or concealing identification.  Thus, the challenged provisions do not "override[] federal decisions." <u>Boeing Co. v. Movassaghi</u>, 768 F.3d 832, 840 (9th Cir. 2014).

Likewise, the Court is not persuaded by the United States' arguments that enforcement of the challenged provisions against federal officers would interfere with federal duties by facilitating evasion of arrest.  The United States argues that federal law enforcement officers have encountered situations where people blow whistles to alert those nearby of the presence of enforcement operations, and that there are websites dedicated to tracking federal immigration officers.  First, blowing whistles, recording officers, posting those recordings online, or otherwise communicating about the public presence of a law enforcement officer is generally protected by the First Amendment. <u>See</u> <u>City of Houston, Tex. v. Hill</u>, 482 U.S. 451, 461, 462-63 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. . . . The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); <u>Askins v. U.S. Dep't of Homeland Sec.</u>, 899 F.3d 1035, 1044 (9th Cir. 2018) (The First Amendment protects "the right to record law enforcement officers engaged in the exercise of their official duties in public places."); <u>Smith v. City of Cumming</u>, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest.").  Second, the United States has not demonstrated how enforcement of the challenged provisions would specifically facilitate evasion of arrest.  It is not evident to the Court that a masked federal agent is any less susceptible to tracking or to having their local public presence revealed through whistling or other forms of communication.

Nonetheless, the Court acknowledges that there may be situations where masking or concealing identification is reasonable or even essential to federal operations, such as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                        **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

for undercover operations.  The challenged provisions include numerous exempted
circumstances that account for these situations.  See SB 627 § 2(b)(3); SB 805 § 2(a)(3).
The United States has not identified any situation where a violation of the challenged
provisions may be both reasonable and not exempted under the Acts.   To the extent there
exist any such situations, the burdensome effect of enforcement on the operations of the
federal government is mitigated by Supremacy Clause immunity to prosecution.
"[Supremacy Clause] immunity will shield a federal agent from state prosecution only
when his acts are both (1) authorized by the laws of the United States and (2) necessary
and proper to the execution of his responsibilities."   Morgan v. People of State of Cal.,
743 F.2d 728, 731 (9th Cir. 1984) (citing In re Neagle, 135 U.S. 1, 75 (1890)); see also
Idaho v. Horiuchi, 253 F.3d 359, 362 (9th Cir.), vacated as moot, 266 F.3d 979 (9th Cir.
2001) ("[T]he Supreme Court has held that the Supremacy Clause cloaks federal agents
with immunity if they act reasonably in carrying out their responsibilities.").

        Finally, the threat of prosecution facing federal officers for a violation of state
criminal law cannot be a cognizable interference with federal operations.  If that were the
case, then no state criminal law would be enforceable against federal employees
exercising their federal duties.  But the law is clear that federal officers do not have
*absolute* immunity from state prosecution.  Johnson v. State of Maryland, 254 U.S. 51, 56
(1920) ("Of course an employee of the United States does not secure a general immunity
from state law while acting in the course of his employment."); see also State of Colorado
v. Symes, 286 U.S. 510, 518 (1932) ("Federal officers and employees are not, merely
because they are such, granted immunity from prosecution in state courts for crimes
against state law.").  To be sure, a federal officer may be immune from state prosecution
under a generally applicable state law when discharging federal duties.  In re Neagle, 135
U.S. 1, 76 (1890).  But such Supremacy Clause immunity depends on the facts of each
case.  See Clifton v. Cox, 549 F.2d 722, 728 (9th Cir. 1977) ("[W]e do not mean to imply
that the exercise of authority in and of itself places a federal officer beyond the reach of a
state's criminal process.  The significant question of whether the conduct was necessary
and proper under the circumstances must still be answered.").  Supremacy Clause
immunity for individual federal officers facing state prosecutions is a constitutional
safeguard "to prevent states from nullifying federal laws by attempting to impede
enforcement of those laws."  Morgan v. People of State of Cal., 743 F.2d 728, 731 (9th
Cir. 1984); see also Wyoming v. Livingston, 443 F.3d 1211, 1221 (10th Cir. 2006)
("Both qualified immunity and Supremacy Clause immunity reduce the inhibiting effect
that a civil suit or prosecution can have on the effective exercise of official duties by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

enabling government officials to dispose of cases against them at an early stage of litigation."). Supremacy Clause immunity thus ensures a constitutional balance of state and federal powers without requiring the facial invalidation of state laws that incidentally affect the federal government.

On the evidentiary record before the Court, the effects of the challenged provisions on federal operations are likely to be minimal and comparable to the effects of enforcement of any other generally applicable[7] rules, such as speed limits. Cases in which the Ninth Circuit found state or local regulations to violate the intergovernmental immunity doctrine are distinguishable from the instant case by the degree of interference with the federal government's functions or operations.[8] The closest analog that the United States cites is United States v. City of Arcata, 629 F.3d 986 (9th Cir. 2010). There, the Ninth Circuit found that "[b]y constraining the conduct of federal agents and employees, the ordinances seek to regulate the government directly." Arcata, 629 F.3d at 991. In Arcata, the ordinances at issue "specifically target[ed] and restrict[ed] the conduct of military recruiters," by prohibiting them from recruiting or attempting to recruit individuals under the age of eighteen, which the Court found to be intrusive of the federal government's expressly, constitutionally delegated "power to 'raise and support Armies' and to 'make Rules for the Government and Regulation of the land and naval

---

[7] At the hearing, the United States argued that these provisions are not "generally applicable" because they only apply to law enforcement officers. The Court disagrees. The provisions apply neutrally to law enforcement officers in California, just as generally applicable laws may apply only to drivers, employers, physicians, or other subsections of the general population. The Court considers the fact that SB 627 does not apply to state law enforcement officers under the discrimination prong of the intergovernmental immunity doctrine.

[8] See, e.g., United States v. Fresno Cnty., 429 U.S. 452, 463 n.11 (1977) (a tax burden exclusively on federal employees could threaten "to destroy the federal function performed by" the government employees); Geo Grp., Inc. v. Newsom, 50 F.4th 745, 757 (9th Cir. 2022) ("AB 32 would give California the power to control ICE's immigration detention operations in the state by preventing ICE from hiring the personnel of its choice."); Boeing Co. v. Movassaghi, 768 F.3d 832, 840 (9th Cir. 2014) ("SB 990 directly interferes with the functions of the federal government [by] mandat[ing] the ways in which Boeing renders services that the federal government hired Boeing to perform.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title    | The United States of America v. State of California et al | | |

Forces.'" <u>Id.</u> at 991-92 (quoting U.S. Const. art. I, § 8, cls. 12, 14).  Here, by contrast, the challenged Acts do not intrude on any federal power or function and only "affect the federal government incidentally as the consequence of a broad, neutrally applicable rule" for law enforcement officers in California.  <u>Id.</u> at 991.

The intergovernmental immunity doctrine prohibits states from "interfering with or controlling the operations of the Federal Government," <u>United States v. Washington</u>, 596 U.S. 832, 838 (2022).   The United States has not demonstrated that the challenged provisions threaten to interfere with or control federal law enforcement operations. Accordingly, the Court concludes that the United States is not likely to succeed on the merits of its complaint that the two challenged Acts directly regulate the federal government in violation of the intergovernmental immunity doctrine.

b)    <u>Discrimination against the Federal Government</u>

Alternatively, the United States argues that the No Secret Police Act is unconstitutional because it unlawfully discriminates against the federal government. Mot. at 15.[9]  The United States argues that the facial covering prohibition of the No Secret Police Act violates the intergovernmental immunity doctrine because it applies to federal law enforcement officers, but not to California state law enforcement officers.  <u>Id.</u> at 15-16.  The United States argues that there is no justification for the Act treating California state officers better than federal officers who perform comparable duties including investigations, stops, searches, and arrests.  <u>Id.</u> at 16-17.  The United States contends that there is no relevant distinction between federal and state law enforcement, pointing to the fact that federal and state law enforcement agencies often coordinate in investigations and enforcement actions.  <u>Id.</u> at 17 (citing Glasheen Decl. ¶ 8).

In opposition, California argues that the No Secret Police Act does not unlawfully discriminate because federal and state law enforcement officers do not engage in the same enforcement activities and thus are not similarly situated.  Opp. at 15.  California contends that the vast majority of state agencies that employ peace officers have limited jurisdiction, and those officers do not have significant interactions with the general

---

[9] The United States does not challenge the No Vigilantes Act as discriminatory against the federal government.  The visible identification provision of the No Vigilantes Act applies equally to local, state, and federal law enforcement officers.  <u>See</u> SB 805 § 10(d)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

public.  Id.  California argues, for example, that investigators of the Dental Board of
California, voluntary fire wardens, and some Department of Motor Vehicles employees
are designated as peace officers.  Id.  California argues that state officers who regularly
engage in investigations, stops, searches, and arrests typically wear uniforms and badges
and clearly identify themselves as law enforcement during those activities, whereas
federal law enforcement officers increasingly engage in large-scale enforcement
operations while wearing facial coverings and without clearly identifying themselves as
law enforcement.  Id. at 15-16.

In reply, the United States argues that it is irrelevant that some state peace officers
have limited jurisdiction and do not have significant interactions with the general public
because other California peace officers, such as state troopers, marshals, and university
officers, do engage in similar law enforcement functions as federal officers.  Reply at 8-9.
The United States argues that differential treatment of these similarly situated officers is
unjustified, and that federal officers should not be denied the discretion to determine how
to uniform themselves that California officers are permitted.  Id. at 9.

Even though the United States has failed to demonstrate that the facial covering
prohibition of the No Secret Police Act unduly interferes with federal functions, the Court
acknowledges that it is nonetheless an incidental regulation on law enforcement officers.
The intergovernmental immunity doctrine prohibits imposing such a regulatory burden,
albeit minimal and incidental to operations, in a discriminatory manner against the
federal government.  The inquiry for a discriminatory burden under the
intergovernmental immunity doctrine is distinct from the inquiry into whether a state law
directly regulates the federal government.  See United States v. Washington, 596 U.S.
832, 838-39 (2022).  There is no de minimis exception to a discriminatory burden.
United States v. California, 921 F.3d 865, 880 (9th Cir. 2019) (holding that "*any*
discriminatory burden on the federal government is impermissible.") (emphasis in
original).

"A state law or regulation impermissibly discriminates against the federal
government if it treats a state entity more favorably than it treats a comparable federal
entity."  Geo Grp., Inc. v. Inslee, 151 F.4th 1107, 1118 (9th Cir. 2025) (citing Dawson v.
Steager, 586 U.S. 171, 175-76 (2019)).  Furthermore, the Ninth Circuit has held that a
state law may not "single[] out" the federal government for greater burdens "than that
which applies elsewhere in the State," even where the statute seeks to address a specific
harm controlled by the federal government.  Boeing Co. v. Movassaghi, 768 F.3d 832,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

842 (9th Cir. 2014) ("The fact that Santa Susana is especially contaminated does not render the law non-discriminatory because California's generally-applicable environmental laws do not impose the SB 990 radioactive cleanup standards at the Santa Susana site."); see also United States v. King Cnty., Washington, 122 F.4th 740, 757 (9th Cir. 2024) (finding unlawful discrimination had occurred where "[the county executive order] 'explicitly treat[ed]' contractors who serve ICE charter flights 'differently' from those who do not.").

The No Secret Police Act's facial covering prohibition applies to "law enforcement officers," who are defined as any "peace officer, as defined in Section 830 [of the Cal. Penal Code], employed by a city, county, or other local agency as well as any officer or agent of a federal law enforcement agency or any law enforcement agency of another state or any person acting on behalf of a federal law enforcement agency or law enforcement agency of another state." SB 627 § 3(e). This definition does not "single out" the federal government because it also applies to local law enforcement officers and law enforcement officers for states other than California. However, it excludes California state law enforcement officers, such as California Highway Patrol officers.

In evaluating the government's unlawful discrimination claim, it is critical that the Court compare *similarly situated* federal and state actors. See Nwauzor v. GEO Grp., Inc., 127 F.4th 750, 763-64 (9th Cir. 2025) ("Dawson's holding requires a comparison between the employees of the federal and state governments to ensure that similarly situated federal and state employees are treated equally."). "So if the State defines the favored class by reference to job responsibilities, a similarly situated federal worker will be one who performs comparable duties." Dawson v. Steager, 586 U.S. 171, 177 (2019). The Court is not persuaded by California's arguments that state law enforcement officers are not similarly situated to federal law enforcement officers. First, California concedes that some state law enforcement officers perform similar law enforcement functions to federal officers, including the types of interactions with the public that the facial covering prohibition generally targets. Opp. at 15. Second, those state law enforcement officers are not differently situated merely because state law enforcement officers have not recently engaged in "large-scale operations while wearing facial coverings," like some federal law enforcement officers. Opp. at 16. While the Act may be a direct response to recent federal law enforcement practices, the Act's text plainly addresses the harms caused by the use of facial coverings by "law enforcement" generally during enforcement activities. See generally SB 627 § 1. The Act, therefore, does not directly regulate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
| Title | The United States of America v. State of California et al | | |

federal functions or target federal practices but rather generally applies to law enforcement officers in California.  However, the Act treats federal law enforcement officers differently[10] than similarly situated state law enforcement officers.

Accordingly, the Court finds that the United States is likely to succeed on the merits of its claim that the facial covering prohibition of the No Secret Police Act unlawfully discriminates against the federal government in violation of the intergovernmental immunity doctrine.

      2.    <u>Likelihood of Irreparable Harm</u>

The United States argues that it will face irreparable harm in the absence of preliminary relief.  Mot. at 17.  First, the United States argues that irreparable harm necessarily results from the enforcement of a preempted state law.  Mot. at 17.  Second, the United States argues that the laws will substantially hamper federal operations by subjecting federal agents to criminal and civil liability for noncompliance, which will chill federal law enforcement activities.  <u>Id.</u> at 18.  Third, the United States argues that the challenged Acts would thwart federal law enforcement activities by endangering federal officers and their families.  <u>Id.</u>  The United States contends that ICE officers are facing an 8000% increase in death threats and a 1000% increase in assaults, which are facilitated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them.[11]  <u>Id.</u>  Finally, the United

---

[10] A state law or regulation would not be "impermissibly discriminatory if it 'duplicate[s] requirements otherwise mandated under' state law that are imposed on similarly situated state [actors]." <u>Geo Grp., Inc. v. Inslee</u>, 151 F.4th 1107, 1118 (9th Cir. 2025) (quoting <u>United States v. California</u>, 921 F.3d 865, 873 (9th Cir. 2019)).  But California also confirmed at the hearing that state law enforcement officers who perform similar functions to federal law enforcement officers, such as California Highway Patrol officers or officers within the California Department of Justice Division of Law Enforcement, are not subject to prosecution under any other state law for wearing facial coverings.

[11] Defendants and amici argue that these figures are inaccurate or exaggerated.  <u>See</u> Shuchart Decl. ¶ 13 ("My understanding is that these numbers do not differentiate between serious assaults and routine forms of unwanted touching that are inherent risks of conducting hands-on law enforcement work."); Dkt. 46 at 5 ("The reported 8,000% increase in death threats on ICE agents can perhaps be explained by DHS's exceedingly liberal definition of 'threat.'"); <u>see also</u> J. Queally et al., <u>Attacks on ICE up 1,000%?</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title | The United States of America v. State of California et al | | |

States argues that if the challenged Acts were allowed to stand, other states could be emboldened to impose similar unconstitutional restraints on the federal government, which would severely undermine the federal government's ability to uniformly enforce federal law.  Id. at 19.

In opposition, California argues that the United States has not demonstrated irreparable harm.  Opp. at 18.  First, California argues that the Ninth Circuit rejected the argument that "a Supremacy Clause violation alone constitutes sufficient harm to warrant an injunction."  Id. (quoting United States v. California, 921 F.3d 865, 894 (9th Cir. 2019)).  Second, California argues that the United States provides no explanation for its conclusory assertions that law-enforcement operations will be compromised if individual officers cannot wear a mask or conceal identifiers.  Id.  California contends that this claim is contradicted by the fact that officers currently have the discretion to not wear a mask and to display their identifiers.  Id.  California contends that the United States' claim that the challenged Acts will endanger law enforcement officers and their families by publicly exposing their identities is unsupported and undermined by federal law enforcement officers' routine public appearances without masks and with identification displayed, including while working in public buildings, testifying in open court, appearing on television, or attending recruiting events.  Id. at 19.  California contends that the United States' claim that the threat of enforcement will chill the enforcement of federal law and deter prospective federal law enforcement officers from applying for jobs is likewise speculative and conclusory.  Id.  California points out that undercover operations are unimpacted by the challenged Acts because of their express exemptions.  Id.  And California argues that the challenged Acts cannot irreparably harm the United States because they are consistent with federal laws and longstanding agency policies regarding law enforcement officers' identification.  Id.

In reply, the United States argues that United States v. California, 921 F.3d 865 (9th Cir. 2019), is distinguishable because in that case, the United States had not pleaded that the challenged statute imposed an economic or operational burden on it or anyone else.  Reply at 11-12.  Here, the United States argues that the challenged Acts will likely substantially hinder federal law enforcement.  Id. at 12.  The United States argues that

---

Trump administration claim not backed up by court records, LOS ANGELES TIMES (Dec. 1, 2025), https://www.latimes.com/california/story/2025-12-01/dhs-1000-percent-increase-attacks-on-ice-agents-times-analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

federal officers' discretion to wear masks highlights rather than undermines the federal
government's argument that the individual determination should be left to federal
agencies and their officers.  Id.  The United States also disputes California's contention
that the challenged Acts are consistent with federal law.  Id.  The United States contends
that the challenged Acts cabin federal officers' discretion with respect to masking and
displaying identification in ways that conflict with current federal practice, and previous
longstanding agency policy is irrelevant.  Id. at 13.

    As an initial matter, the Court notes that preemption cannot be a basis for a finding
of irreparable harm in this case because the challenged Acts are not preempted by federal
law.  Next, the Court finds that the United States has failed to show that it will suffer
irreparable harm absent an injunction on the enforcement of any provision for which it
has failed to demonstrate a likelihood of success on the merits of its constitutional claims.
For the same reasons the Court finds that the challenged provisions do not interfere with
federal functions, the Court also finds that the United States does not establish a
likelihood of irreparable injury beyond alleged constitutional violations.

    With respect to the facial covering prohibition, the Court finds that the finding of a
likelihood of success on the merits of the United States' claim that the provision
unconstitutionally discriminates against the federal government is sufficient to presume
irreparable injury.  See Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-
established that the first factor is especially important when a plaintiff alleges a
constitutional violation and injury.  If a plaintiff in such a case shows he is likely to
prevail on the merits, that showing usually demonstrates he is suffering irreparable harm
no matter how brief the violation."); Goldie's Bookstore, Inc. v. Superior Ct. of State of
Cal., 739 F.2d 466, 472 (9th Cir. 1984) ("An alleged constitutional infringement will
often alone constitute irreparable harm."); Am. Trucking Ass'ns, Inc. v. City of Los
Angeles, 559 F.3d 1046, 1059 (9th Cir. 2009) ("Unlike monetary injuries, constitutional
violations cannot be adequately remedied through damages and therefore generally
constitute irreparable harm.") (citation omitted).

    The Ninth Circuit's holding in United States v. California, did not alter this general
presumption of irreparable harm based on a constitutional violation.  921 F.3d 865, 894
(9th Cir. 2019).  In California, the Ninth Circuit merely remanded to the district court to
apply the three remaining Winter factors after reversing the district court's denial of a
preliminary injunction as to a statutory provision based on the district court's errors in
deciding the first Winter factor.  Id.  Similarly, in Geo Grp., Inc. v. Newsom, the Ninth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | | Date | February 9, 2026 |
|---|---|---|---|---|
| Title | The United States of America v. State of California et al | | | |

Circuit remanded to the district court to consider the remaining three <u>Winter</u> factors *in the first instance* after finding that appellants were likely to prevail on their claim that a state law violated the Supremacy Clause. 50 F.4th 745, 763 (9th Cir. 2022). Neither decision contradicts case law presuming irreparable harm where there is a showing of a constitutional violation. In fact, the Ninth Circuit noted in <u>California</u> that the district court's application of the presumption of irreparable harm for the other challenged statutes in that case "was consistent with [the Ninth Circuit's] previous recognition that preventing a violation of the Supremacy Clause serves the public interest." 921 F.3d 865 at 893 (citing <u>United States v. Arizona</u>, 641 F.3d 339, 366 (9th Cir. 2011); <u>Cal. Pharmacists Ass'n v. Maxwell-Jolly</u>, 563 F.3d 847, 852–53 (9th Cir. 2009); <u>Am. Trucking Ass'ns v. City of Los Angeles</u>, 559 F.3d 1046, 1059–60 (9th Cir. 2009)).

Thus, while the United States has not presented compelling evidence of any economic or operational burden from the enforcement of a facial covering prohibition or a visible identification requirement for federal law enforcement officers, its showing that the facial covering prohibition likely violates the Supremacy Clause is nonetheless sufficient to establish that enforcement of that provision would amount to irreparable harm.[12]

Accordingly, the United States has not shown that it is likely to suffer irreparable harm in the absence of injunctive relief, except as to the facial covering prohibition of the No Secret Police Act.

        3.    <u>Balance of Equities and the Public Interest</u>

The United States argues that the balance of equities and the public interest weigh in its favor because "[f]rustration of federal statutes and prerogatives are not in the public interest." Mot. at 19 (quoting <u>United States v. Alabama</u>, 691 F.3d 1269, 1301 (11th Cir. 2012)). The United States also argues that it is not in the public interest to subject federal agents to increased harassment, doxxing, and violence. <u>Id.</u> The United States argues that California attempts to thwart the will of the people of the United States who elected this Administration to enforce federal law. <u>Id.</u> at 20. The United States argues that while California may disagree with the United States' priorities, it has no legitimate interest in

---

[12] Absent a finding that the facial covering prohibition likely unconstitutionally discriminates against the United States, the Court would conclude that the United States has not established sufficient irreparable injury to justify injunctive relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

interfering with the enforcement of federal law or putting federal agents at risk. Id.
Finally, the United States argues that the public interest is impaired by placing state and
federal officials on a "dangerous collision course," and that California's insistence that it
can arrest and prosecute federal agents, including during the discharge of their duties,
risks tension and conflict between state and federal law enforcement agencies. Id.

In opposition, California argues that the alleged harm to the United States is
minimal because no federal law or policy requires agents to mask or withhold their
identities and both statutes are carefully tailored to allow legitimate uses of masks and
identity concealment. Opp. at 20. California argues that an injunction is not needed to
prevent conflict between state and federal law enforcement agencies, which have long
operated under dual federal and state regulation. Id. California also argues that all law
enforcement agents should be entitled to protection from harassment and doxxing, and
that the United States offers no evidence that masking or refusing to wear a badge or
identification number does anything to ameliorate the risks of harassment or doxxing. Id.
California argues that the equities heavily favor California because "[a]ny time a State is
enjoined by a court from effectuating statutes enacted by representatives of its people, it
suffers a form of irreparable injury." Id. at 20-21 (quoting Maryland v. King, 567 U.S.
1301, 1303 (2012)). California contends that a preliminary injunction will frustrate the
state's attempt to ameliorate harms that California faces and that both challenged Acts
reflect a legislative choice to ensure both that California's own law enforcement officers
are not at risk and that California's residents know whether they are interacting with
criminals or legitimate law enforcement officers. Id. at 21.

California and several amici argue that unidentifiable law enforcement officers
pose significant safety risks to themselves and the public. Opp. at 21. California also
argues that masked or unidentifiable federal agents undermine state and local law
enforcement by damaging public trust and increasing the risk of a violent confrontation
between California residents and federal agents who appear to be criminals. Opp. at 21-
22. Finally, California argues that the unnecessary concealment of federal officers'
identities limits the ability of individuals to challenge any unlawful acts those law
enforcement officers may commit. Id. at 22. California argues that a preliminary
injunction would make it easier for federal officers to evade accountability that is vital to
democracy. Id.

In reply, the United States argues that permitting California to regulate federal law
enforcement under the threat of prosecution regardless of federal policies is a recipe for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

chaos and disaster.[13]  Reply at 14.  The United States argues that impersonating law
enforcement officers is already illegal, and California's solution to such harms should be
to prosecute impersonators rather than to criminalize legitimate federal activities.  Id.
The United States argues that the purposes of the challenged Acts to prevent fear among
the public, promote public safety, and increase transparency in law enforcement are
irrelevant and do not consider that the challenged Acts create safety threats to federal
officers, their families, and the public by interfering with the enforcement of federal laws.
Id.  The United States argues that California's policy justifications cannot salvage their
facially unconstitutional laws.  Id.

        The last two Winter factors weigh the "balance of hardships between the parties"
and measure the public interest in issuing the injunction.  Cottrell, 632 F.3d at
1137.  "When the government is a party, these last two factors merge."  Drakes Bay
Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing Nken v. Holder, 556
U.S. 418, 435 (2009)).

        The Court is persuaded by the evidence in California's supporting declarations and
the arguments in the amicus briefs that enforcing the challenged Acts against federal law
enforcement officers is in the public interest.[14]  The Acts complement criminal penalties
for impersonating law enforcement by imposing neutral constraints on the ability of law

---

[13] At the hearing, counsel for the United States argued that permitting California to
regulate federal law enforcement officers in this case would open the door to a litany of
state regulations of the federal government without any "limiting principle."  But there
are limiting principles: the Supremacy Clause and the intergovernmental immunity
doctrine, considered in this order.  Moreover, the Court considers only this matter and the
evidentiary record before the Court, not hypothetical policies of other states or future
administrations.

[14] As Prosecutors Alliance Action points out in its brief, and consistent with the
objectives of these Acts, the Federal Bureau of Investigations has recently advised law
enforcement personnel to "adequately identify themselves during operations" to make it
less difficult for community members to distinguish between legitimate officers
conducting lawful operations and imposters engaging in criminal activities.  Dkt. 46 at
14-15.  The U.S. Marshals Service has also recognized that identification "ensure[s]
accountability and build[s] safer communities through transparency and collaboration."
Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|----------|------------------------|------|------------------|
| Title | The United States of America v. State of California et al | | |

enforcement officers in California to conceal their identities, with numerous exempted circumstances so that the constraints do not interfere with law enforcement functions. The Court finds that these Acts serve the public interest by promoting transparency which is essential for accountability and public trust. Moreover, the Court finds no cognizable justification for law enforcement officers to conceal their identities during their performance of routine, non-exempted law enforcement functions and interactions with the general public.

However, the Court need not resolve the competing policy interests of the United States and California relating to the masking and identification of law enforcement officers because the last two <u>Winter</u> factors are guided by the Court's conclusion regarding the first factor. <u>See</u> <u>Baird v. Bonta</u>, 81 F.4th 1036, 1042 (9th Cir. 2023) ("A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor.") If California's laws violate the Supremacy Clause, they cannot be in the public interest. <u>See</u> <u>United States v. California</u>, 921 F.3d 865, 893 (9th Cir. 2019) ("[P]reventing a violation of the Supremacy Clause serves the public interest."); <u>Cal. Pharmacists Ass'n v. Maxwell-Jolly</u>, 563 F.3d 847, 852-53 (9th Cir. 2009) (where there are no adequate remedies to a state violation of federal law, "the interest of preserving the Supremacy Clause is paramount."). On the other hand, where there is no constitutional violation demonstrated, the public interest is served by permitting valid state statutes to be effectuated. <u>Maryland v. King</u>, 567 U.S. 1301, 1303 (2012); <u>see also</u> <u>State of Colorado v. Symes</u>, 286 U.S. 510, 518 (1932) ("[I]t is axiomatic that the right of the states, consistently with the Constitution and laws of the United States, to make and enforce their own laws is equal to the right of the federal government to exert exclusive and supreme power in the field that by virtue of the Constitution belongs to it."). Here, the United States has established a likelihood of success on the merits only for its constitutional claim challenging the facial covering prohibition of the No Secret Police Act.

In conclusion, the Court finds that the last two <u>Winter</u> factors favor California with respect to each of the challenged provisions for which the United States did not establish a likelihood of success on the merits. Accordingly, the Court concludes as follows: there is no basis to enjoin SB 805, the No Vigilantes Act. The No Vigilantes Act does not violate the Supremacy Clause by directly regulating the federal government. Further, because it does not treat federal officers differently from state officers, the No Vigilantes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10999-CAS-AJRx | Date | February 9, 2026 |
|---|---|---|---|
| Title | The United States of America v. State of California et al | | |

Act does not discriminate against the federal government.  Therefore, no injunction shall issue against the enforcement of the No Vigilantes Act.

With regard to SB 627, the No Secret Police Act, the United States has failed to demonstrate that the facial covering prohibition directly regulates the federal government. The Court finds that federal officers can perform their federal functions without wearing masks.  However, because the No Secret Police Act, as presently enacted,[15] does not apply equally to all law enforcement officers in the state, it unlawfully discriminates against federal officers.  Because such discrimination violates the Supremacy Clause, the Court is constrained to enjoin the facial covering prohibition.

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** the United States' motion for a preliminary injunction.  California may not enforce the facial covering prohibition of the No Secret Police Act, SB 627 § 3, against federal law enforcement officers.  The Court **DENIES** the United States' motion for a preliminary injunction with respect to all other challenged provisions of the No Secret Police Act and the No Vigilantes Act.

Pursuant to the request of the United States, the Court **STAYS** the effect of this order.  The stay shall remain in place until 12:00 noon on **February 19, 2026**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[15] At the hearing, counsel for the United States acknowledged that the No Secret Police Act would not be unlawfully discriminatory if it was amended to apply to all law enforcement officers in California.