**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 26-926 |
| *Plaintiff - Appellant*, | D.C. No. 2:25-cv-10999-CAS-AJR |
| v. | |
| STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of California, in his Official Capacity; ROB BONTA, Attorney General of California, in his Official Capacity, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted March 3, 2026
Pasadena, California

Filed April 22, 2026

Before: Jacqueline H. Nguyen, Mark J. Bennett, and Daniel
P. Collins, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### Injunction Pending Appeal

The panel granted the United States's motion for an injunction pending appeal enjoining the State of California, Governor Gavin Newsom, and Attorney General Rob Bonta from applying or enforcing § 10 of the No Vigilantes Act, codified at California Penal Code § 13654, against federal agencies and officers.

Section 10 of the No Vigilantes Act requires any non-uniformed "federal law enforcement officer" operating in California, with narrow exceptions, to "visibly display identification" while performing federal law enforcement duties, and officers who violate the law face criminal prosecution by the State.

The panel held that the United States is likely to succeed on the merits of its claim that § 10 of the No Vigilantes Act violates the Supremacy Clause because § 10 attempts to directly regulate the United States in its performance of governmental functions. The panel held that the other preliminary injunction factors also weigh in the United States's favor. Accordingly, the State of California, the Governor, and the Attorney General remain enjoined, pending further order of the court, from applying or enforcing § 10 of the No Vigilantes Act against federal agencies and officers.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Brett A. Shumate (argued), Assistant Attorney General; Daniel Tenny, Andrew M. Bernie, and Mark R. Freeman, Attorneys; Eric D. McArthur, Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellant.

Mica L. Moore (argued), Deputy Solicitor General; Zachary W. Sorenson, Associate Deputy Solicitor General; Kristi A. Hughes, Zelda R. Vassar, Asha Albuquerque, Alyssa Zhang, and Cameron A. Bell, Deputy Attorneys General; Lee I. Sherman and Anna Ferrari, Supervising Deputy Attorneys General; Joshua A. Klein, Supervising Deputy Solicitor General; Michael L. Newman and Thomas S. Patterson, Senior Assistant Attorneys General; Samuel T. Harbourt, Solicitor General; Rob Bonta, California Attorney General; Office of the California Attorney General, Los Angeles, California; for Defendants-Appellees.

---

**OPINION**

BENNETT, Circuit Judge:

The United States brings a facial challenge to provisions of two laws recently enacted by California: S.B. 805 (also known as the "No Vigilantes Act") and S.B. 627 (also known as the "No Secret Police Act"). At this preliminary stage, the United States seeks an injunction pending appeal that enjoins Defendants the State of California, Governor Gavin Newsom, and Attorney General Rob Bonta from applying or enforcing § 10 of the No Vigilantes Act, codified at California Penal Code § 13654, against federal agencies

and officers.   Section 10 requires any non-uniformed "federal law enforcement officer" operating in California, with narrow exceptions, to "visibly display identification" while performing federal law enforcement duties.  Officers who violate the law may be criminally prosecuted by the State.

We previously granted the United States's request for a temporary administrative injunction.  We now address the merits of the United States's motion for an injunction pending appeal.

We conclude that § 10 of the No Vigilantes Act attempts to directly regulate the United States in its performance of governmental functions.  The Supremacy Clause forbids the State from enforcing such legislation.  The United States is therefore likely to succeed on the merits of its Supremacy Clause claim, and the other preliminary injunction factors also weigh in its favor.  Thus, we grant the motion for an injunction pending appeal.

## I

### A

On September 20, 2025, in response to the United States's "broad immigration enforcement efforts," California enacted the No Vigilantes Act.  S.B. 805 § 1, 2025 Gen. Assemb., Reg. Sess. (Cal. 2025).[1]  Two of the Act's provisions are relevant here.

---

[1] On the same day, California also enacted the No Secret Police Act, S.B. 627, 2025 Gen. Assemb., Reg. Sess. (Cal. 2025).  Section 2 of this Act requires "a law enforcement agency operating in California" to "maintain and publicly post a written policy regarding the use of facial coverings."  Cal. Gov't Code § 7289(a).  Section 3 mandates that "[a] law enforcement officer," including "any officer or agent of a federal law

Section 10 generally mandates the visible display of identification by law enforcement officers operating within the State. *See* Cal. Penal Code § 13654. It provides that any "law enforcement officer operating in California that is not uniformed . . . shall visibly display identification that includes their agency and either a name or badge number or both name and badge number when performing their enforcement duties." *Id.* § 13654(a). "Law enforcement officer" is defined to include "any federal law enforcement officer." *Id.* § 13654(d)(2). And "'[e]nforcement duties' means active and planned operations involving the arrest or detention of an individual, or deployment for crowd control purposes." *Id.* § 13654(d)(1). An officer's "willful and knowing violation of [§ 10] is punishable as a misdemeanor" under California law. *Id.* § 13654(c).

Section 10 has several exceptions. The identification requirement does not apply to: (1) "[a]n officer engaged in active undercover operations or investigative activities"; (2) "[a]n officer engaged in plainclothes operations" who is employed by certain specified state agencies or their "federal equivalents";[2] (3) "[a]n officer wearing personal protective

---

enforcement agency," "shall not wear a facial covering that conceals or obscures their facial identity in the performance of their duties, except as expressly authorized in this section." Cal. Penal Code § 185.5(a), (e).

[2] These agencies include: the California Business, Consumer Services, and Housing Agency; the California Health and Human Services Agency; the California Labor and Workforce Development Agency; the California Natural Resources Agency; the California Department of Corrections and Rehabilitation; the California Transportation Agency; the California Environmental Protection Agency; the California Government Operations Agency; and "any department, board, commission, or other entity in those agencies." *See* Cal. Penal Code § 13654(b)(2).

equipment that prevents display"; (4) "[e]xigent circumstances, involving an imminent danger to persons or property, or the escape of a perpetrator, or the destruction of evidence, including if the officer is responding to those circumstances while off-duty"; (5) "[a]n officer assigned to Special Weapons and Tactics (SWAT) or tactical team units and actively performing their SWAT or tactical team responsibilities"; or (6) "[a]n officer engaged in protective operations involving elected officials, judicial officers, or other designated dignitaries where the display of identification would compromise the safety, anonymity, or tactical effectiveness of the protection detail." *Id.* § 13654(b).

Section 2 orders agencies to adopt written policies on the use of identification. *See* Cal. Gov't Code § 7288. It directs that "a law enforcement agency operating in California," including "[a]ny federal law enforcement agency," "shall maintain and publicly post a written policy on the visible identification of sworn personnel." *Id.* § 7288(a), (c)(2)(C). To comply with § 2, the policy must include "[a] purpose statement," and "[a] requirement that all sworn personnel visibly display identification that includes their agency and either a name or badge number, or both name and badge number, when performing enforcement duties," subject only to "[a] list of narrowly tailored exemptions." *Id.* § 7288(a)(1)–(3).

The Act also includes a safe harbor provision. The identification requirement and criminal penalties for failure to comply do not apply "to any law enforcement agency, or its personnel, if that agency maintains and publicly posts a written policy pursuant to [§ 2 of the Act]." Cal. Penal Code § 13654(e).

For federal agencies and officers, the Act's mandate is clear. Each federal law enforcement agency operating in California must decide whether to "maintain and publicly post a written policy" that directs "all sworn personnel" to "visibly display identification . . . when performing enforcement duties." Cal. Gov't Code § 7288(a), (a)(2). If a federal agency declines to do so, it violates California law and, in many circumstances, subjects its officers to the threat of criminal prosecution by the State. *See* Cal. Penal Code § 13654. And if a federal agency complies, its officers must then display identification in accordance with the dictates of California law. *See* Cal. Gov't Code § 7288.

**B**

On November 17, 2025, the United States sued the State of California, Governor Gavin Newsom, and Attorney General Rob Bonta. In relevant part, the United States's complaint facially challenges §§ 2 and 10 of the No Vigilantes Act.[3] The United States contends that these provisions violate the Supremacy Clause by attempting to directly regulate its operations.

In the district court, the United States moved for a preliminary injunction. The district court declined to enjoin enforcement of §§ 2 and 10 of the No Vigilantes Act against federal agencies and officers. As to § 2, the district court determined that the United States lacked Article III standing to challenge the provision requiring agencies to adopt

---

[3] The United States also facially challenges §§ 2 and 3 of the No Secret Police Act, which prohibit law enforcement officers from wearing facial coverings in the performance of their duties (§ 3) and direct agencies to adopt written policies on the use of facial coverings (§ 2).

written policies.  The United States does not contest that ruling in its motion for an injunction pending appeal.[4]

As to § 10, the district court concluded that the United States "ha[d] not met its burden to show that enforcement of the challenged provisions . . . would interfere with or take control of federal law enforcement operations."  While recognizing that the statute "dictate[s] how a federal officer may carry out his law enforcement duties," the district court determined that "the United States ha[d] not shown that its current practices with respect to . . . identification are essential to federal law enforcement operations such that state regulations in those areas seek to interfere with or control federal law enforcement functions."

Seeking emergency relief, the United States moved for an injunction pending appeal and also requested a temporary "administrative" injunction.  The motion sought to enjoin only § 10 of the No Vigilantes Act, the statute's identification requirement.  On February 19, 2026, we entered a temporary administrative injunction which prevented California, the Governor, and the Attorney General from applying or enforcing § 10 against federal agencies and officers.  On March 3, we heard oral argument on the United States's motion for an injunction pending appeal.

---

[4] As to § 2 of the No Secret Police Act, the district court likewise determined that the United States lacked Article III standing.  As to § 3 of that Act, the district court concluded that the United States was likely to succeed on the merits because the prohibition on wearing face coverings "unlawfully discriminates against the federal government in violation of the intergovernmental immunity doctrine," and preliminarily enjoined its enforcement.  California has not appealed the district court's partial grant of preliminary injunctive relief.

## II

### A

"The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first factor "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

### B

"[U]nder the intergovernmental immunity component of the Supremacy Clause to the United States Constitution, states may not directly regulate the Federal Government's operations . . . ." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). When "[t]he Framers split the atom of sovereignty," they put the federal government under the "control[] [of] the people without collateral interference by the States," which "have no power, reserved or otherwise, over the exercise of federal authority within its proper sphere." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 841 (1995) (Kennedy, J., concurring). To that end, the Supremacy Clause, U.S. Const. art. VI, cl. 2, renders "the activities of the Federal Government . . . free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). "It is of the very essence of supremacy," the Supreme Court has emphasized, "to remove all obstacles

to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819). Therefore, "where 'Congress does not affirmatively declare its instrumentalities or property subject to regulation,' 'the federal function must be left free' of regulation" by the States. *Hancock v. Train*, 426 U.S. 167, 179 (1976) (quoting *Mayo*, 319 U.S. at 447–48); *see also McCulloch*, 17 U.S. at 436 (explaining that "states have no power" to "in any manner control[] the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government").

The Supremacy Clause "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals' (*e.g.*, contractors)." *United States v. Washington*, 596 U.S. 832, 838–39 (2022) (first alteration added) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). A direct regulation is one that "lays hold of" federal officers "in their specific attempt to obey orders and requires qualifications in addition to those that the [federal] Government has pronounced sufficient." *Johnson v. Maryland*, 254 U.S. 51, 57 (1920). It imposes conditions upon "a function of government," and regulates "the right to carry on the business" of the federal government. *Mayo*, 319 U.S. at 447. In other words, a direct regulation regulates the government *qua* government; it controls how the government conducts specifically governmental functions. *See id.*

For this reason, a State "may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority." *Sperry v. Florida*

*ex rel. Fla. Bar*, 373 U.S. 379, 385 (1963).  Such improper qualifications include laws through which a "State places a prohibition on the Federal Government." *Hancock*, 426 U.S. at 180 (quoting *Cal. Pub. Util. Comm'n v. United States*, 355 U.S. 534, 544 (1958)).

The Supremacy Clause prohibits States from enacting a law that directly regulates federal operations even if the law regulates state operations in the same manner. *See Johnson*, 254 U.S. at 56–57 ("[E]ven the most unquestionable and most universally applicable of state laws, such as those concerning murder, will not be allowed to control the conduct of a marshal of the United States acting under and in pursuance of the laws of the United States." (citing *Ex parte Neagle*, 135 U.S. 1 (1890))).  And critically, "Supreme Court case law compels the rejection of a de minimis exception to the doctrine of intergovernmental immunity." *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019).  So "[a] state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law." *United States v. City of Arcata*, 629 F.3d 986, 991–92 (9th Cir. 2010).  Thus, if a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations.

## III

Section 10 of the No Vigilantes Act attempts to directly regulate the federal government in its performance of law enforcement operations.  It expressly applies to federal officers. Cal. Penal Code § 13654(d)(2).  It seeks to control their conduct in performing law enforcement operations. *Id.*

§ 13654(a); *see also id.* § 13654(d)(1).    It purports to override the federal government's power to determine whether, how, and when to publicly identify its officers. *See id.* § 13654(a).   And in so doing, it aims to regulate the manner and conditions under which federal agents can enforce federal law. *See id.*  Thus, the state law regulates the performance of "governmental action[s]" which are "carried on by the United States itself." *Mayo*, 319 U.S. at 448.

These provisions do not merely affect "persons who [a]re acting for themselves and not for the United States." *Id.* at 447.   They "lay[] hold of" federal agencies and officers "in their specific attempt to obey orders and require[] qualifications in addition to those that the [federal] Government has pronounced sufficient." *Johnson*, 254 U.S. at 57.    Section 10, in short, directly regulates the federal government.

The district court asked the wrong question.  By looking to the degree § 10 interfered with the activities of the United States, the district court applied a standard pertaining to States' regulation of federal contractors and third-party employers, not the standard applicable to direct regulation of governmental activities of the United States. *See, e.g.*, *North Dakota*, 495 U.S. at 437 (plurality opinion) (explaining that the regulations at issue did "not implicate[]" "concerns about direct interference with the Federal Government" because they "operate[d] against suppliers, not the Government"); *California*, 921 F.3d at 880 (explaining that where a regulation "is directed at the conduct of *employers*, not the United States or its agents, [then] no federal activity is regulated").   "Private contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself." *Geo Grp., Inc. v. Newsom*,

50 F.4th 745, 750 (9th Cir. 2022) (en banc). "But where, as here, the governmental action is carried on by the United States itself and Congress does not affirmatively declare its instrumentalities or property subject to regulation or taxation, the inherent freedom [from direct regulation] continues." *Mayo*, 319 U.S. at 448.

The district court also misunderstood *Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977). There, in concluding that California could not criminally prosecute a federal officer despite allegations that he "exceeded his express authority" under federal law, we asked "whether the [officer's] conduct was necessary and proper under the circumstances." *Id.* at 728. That standard is inapplicable here because § 10 of the No Vigilantes Act directly regulates inherently governmental conduct of federal officers carrying out their duties *under federal authority*.

The Supremacy Clause does not "bar[] *all* state regulation which may touch the activities of the Federal Government." *Hancock*, 426 U.S. at 179 (emphasis added). For example, the Supreme Court has suggested that States may impose "general rules" regulating conduct that any ordinary citizen could perform, like a "statute or ordinance regulating the mode of turning at the corners of streets." *Johnson*, 254 U.S. at 56. But the Supremacy Clause does bar *direct* state regulation of the federal government. *See Washington*, 596 U.S. at 838; *City of Arcata*, 629 F.3d at 991–92. And that is precisely what the No Vigilantes Act does. The Act does not regulate conduct that any ordinary citizen could perform. Rather, it applies exclusively to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers. The Act thus directly regulates conduct reserved to sovereigns. And so it is barred by intergovernmental

immunity, which forbids States from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree. *See California*, 921 F.3d at 883.  Because § 10 of the No Vigilantes Act attempts to directly regulate the United States, we conclude that it is likely unconstitutional.  *See Blackburn*, 100 F.3d at 1435.

## IV

In addition to demonstrating a likelihood of success on the merits, a party seeking an injunction pending appeal must also demonstrate that it "is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'"  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

When "a plaintiff seeks a preliminary injunction because of an alleged constitutional violation" and "shows [it] is likely to prevail on the merits, that showing will almost always demonstrate [it] is suffering irreparable harm as well."  *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).  "[T]he deprivation of constitutional rights," we have emphasized, "unquestionably constitutes irreparable injury."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (holding that a finding of irreparable harm

5-cv-10999-CAS-AJR   Document 83   Filed 04/22/26   Page 15 of 20
#:1034
USA v. State of California                    15

"follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional").

We have also explained that "[a] plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in [its] favor." *Baird*, 81 F.4th at 1042. "Because 'public interest concerns are implicated when a constitutional right has been violated, . . . all citizens have a stake in upholding the Constitution,' meaning 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* (first quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); and then quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). Accordingly, plaintiffs who "establish[] a likelihood that [a] policy violates the U.S. Constitution . . . have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

Here, irreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity. And "preventing a violation of the Supremacy Clause serves the public interest." *California*, 921 F.3d at 893.

California nonetheless contends that even if we determined that § 10 of the No Vigilantes Act likely violates the Supremacy Clause, we would still need to balance the equities. California specifically urges us to consider the public safety concerns which spurred the Act's enactment. We decline to do so. Because the United States has shown a likelihood that the Act violates the Supremacy Clause, it has also shown that both the public interest and balance of the equities tip "decisively in . . . favor" of a preliminary

injunction.  *Baird*, 81 F.4th at 1042; *see Ariz. Dream Act Coal.*, 757 F.3d at 1069.  No further balancing is necessary.

## V

For these reasons, we GRANT the United States's motion for an injunction pending appeal.  The State of California, the Governor, and the Attorney General remain enjoined, pending further order of this court, from applying or enforcing § 10 of the No Vigilantes Act, S.B. 805, 2025 Gen. Assemb., Reg. Sess. (Cal. 2025) (codified at Cal. Penal Code § 13654), against federal agencies and officers.

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate electronic filing system or, if you are a pro se litigant or an attorney with an exemption from the electronic filing requirement, file one original motion on paper.

**Petition for Panel Rehearing and Petition for Rehearing En Banc (Fed. R. App. P. 40; 9th Cir. R. 40-1 to 40-4)**

**(1) Purpose**
 **A. Panel Rehearing:**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ➢ A material point of fact or law was overlooked in the decision;
  - ➢ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ➢ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

 **B. Rehearing En Banc**
- A party should seek en banc rehearing only if one or more of the following grounds exist:
  - ➢ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
  - ➢ The proceeding involves a question of exceptional importance; or

1

Post Judgment Form - Rev. 8/2025

> ➢ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**
- A petition for rehearing or rehearing en banc must be filed within 14 days after entry of judgment. Fed. R. App. P. 40(d).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(d). The deadlines for seeking reconsideration of a non-dispositive order are set forth in 9th Cir. R. 27-10(a)(2).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- See Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-4.

**(3) Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

Post Judgment Form - Rev. 8/2025

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- Attorneys must file the petition electronically via the appellate electronic filing system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-8000.

**Petition for a Writ of Certiorari**
- The petition must be filed with the Supreme Court, not this Court. Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov.

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista, maria.b.evangelista@tr.com);
  - **and** electronically file a copy of the letter via the appellate electronic filing system by using the Correspondence filing category, or if you are an attorney exempted from electronic filing, mail the Court one copy of the letter.

3

Post Judgment Form - Rev. 8/2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 10. Bill of Costs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)**

**Case Name**

Name of party/parties requesting costs to be taxed:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                                    **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee/Appeal from District Court filing portion of fee ($5) | | | | $ |
| | | | TOTAL: | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

**Form 10**        *Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*        *Rev. 12/01/2025*